**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| 2999TC ACQUISITIONS, LLC f/k/a<br>MO 2999 TC, LLC, AND<br>TIMOTHY L. BARTON,<br><br>*Plaintiffs*,<br><br>v.<br><br>2999 TURTLE CREEK, LLC,<br>HNGH TURTLE CREEK, LLC,<br>HN GREEN HOLLOW CAPITAL<br>PARTNERS, LLC, MADISON REALTY<br>CAPITAL, LP, VIPIN NAMBIAR,<br>JAMES G. GLASGOW, JR.,<br>MARC ZEGEN, AND JOSHUA ZEGEN,<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | C.A. No. 3:20-CV-3229 |

**GREEN HOLLOW DEFENDANTS' MOTION TO DISMISS**
**UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... iii

INTRODUCTION .......... 1

PROPER MATERIALS FOR RULE 12(b)(6) MOTION .......... 2

BACKGROUND .......... 3

A. Plaintiffs borrowed $32.5 million to finance a hospitality project. .......... 3

B. Plaintiffs sought out investors, including the Green Hollow Parties. .......... 3

C. Lender sold a participation interest in the loan to HNGH, as Plaintiffs expressly authorized under the loan documents. .......... 4

D. Borrower filed suit in Texas state court to stop a foreclosure based on Borrower's failure to pay taxes, interest, and other debt service. .......... 5

E. After unfavorable rulings in state court, Plaintiffs filed this nearly identical case. .......... 6

F. After further unfavorable rulings, Plaintiffs abandoned the state lawsuit. .......... 6

ARGUMENT .......... 7

I. A complaint should be dismissed when it fails to state a plausible claim. .......... 7

II. Plaintiffs fail to state a federal trade secrets claim, requiring a complete dismissal. .......... 8

A. Plaintiffs have not plausibly pleaded a "trade secret." .......... 8

B. Plaintiffs have not plausibly pleaded a "misappropriation." .......... 11

1. Plaintiffs have not alleged acquisition through "improper means" by any Green Hollow Party because they expressly authorized the disclosure of the allegedly protected information. .......... 12

2. Plaintiffs have not alleged any Green Hollow Party misused or wrongfully disclosed the alleged trade secrets. .......... 13

III. Plaintiffs do not state a claim under the Texas Uniform Trade Secrets Act. .......... 15

IV. Plaintiffs have not stated any fraud claim. .......... 15

A. Plaintiffs have not alleged any reliance on a false representation, as necessary to support a fraud claim. ..... 16

B. Plaintiffs have not pleaded any basis for a "duty to disclose," as required to support a fraud-by-nondisclosure claim. ..... 18

V. Plaintiffs have not stated any plausible claim for tortious interference. ..... 19

A. Plaintiffs have not alleged interference with an existing contract, as required to support a claim for tortious interference with contract. ..... 19

B. Plaintiffs have not pleaded that any independently tortious or unlawful conduct proximately caused them injury, defeating any claim for tortious interference with business relations. ..... 20

VI. Plaintiffs have not stated a conspiracy claim. ..... 21

VII. Plaintiffs have not stated a claim for breach of contract. ..... 22

VIII. Plaintiffs also fail to state any valid declaratory judgment claim. ..... 22

A. The Participation Agreement is valid. ..... 23

B. Payments by HNGH do not "cure" Borrower's defaults. ..... 24

C. The Loan Documents foreclose Plaintiffs' "impossibility" theory ..... 25

CONCLUSION ..... 25

CERTIFICATE OF SERVICE ..... 27

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agar Corp. v. Electro Circuits Int'l*,
580 S.W.3d 136 (Tex. 2019).....21

*Am. Tobacco Co., Inc. v. Grinnell*,
951 S.W.2d 420 (Tex. 1997).....21

*Aperia Sols., Inc. v. OLB Grp., Inc.*,
No. 3:18-CV-03276, 2020 WL 4431945 (N.D. Tex. July 30, 2020).....21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).....7, 8, 9

*Avialae S De RL De CV v. Cummins Inc.*,
2020 WL 3965014 (W.D. Tex. July 13, 2020).....22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).....7, 21

*Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*,
572 S.W.3d 213 (Tex. 2019).....18, 19, 24

*Bradford v. Vento*,
48 S.W.3d 749 (Tex. 2001).....18

*Brown v. ASC Mortg./U.S. Bank Nat'l Ass'n*,
No. 4:15-CV-547, 2015 WL 5559441 (N.D. Tex. Sept. 18, 2015).....14, 17

*Celanese v. OneBeacon Am. Ins.*,
No. 3:15-CV-03822, 2016 WL 6496354 (N.D. Tex. May 20, 2016).....24

*Cockrell v. Republic Mortg. Ins. Co.*,
817 S.W.2d 106 (Tex. App.—Dallas 1991, no writ).....23

*Coinmach Corp. v. Aspenwood Apartment*,
417 S.W.3d 909 (Tex. 2013).....19, 20

*In re Document Techs. Litig.*,
275 F. Supp. 3d 454 (S.D.N.Y. 2017).....11

*Fernandez-Montes v. Allied Pilots Assoc.*,
987 F.2d 278 (5th Cir. 1993).....7

*Giostar Therapy, LLC v. Bioscience Ams. LLC*,
No. CV-18-02788, 2019 WL 7841723 (D. Ariz. Apr. 22, 2019) ....................12

*Global Integrated Bldg. Sys. v. Target Logistics, LLC*,
No. 06-2637, 2009 WL 259360 (S.D. Tex. Feb. 3, 2009) ....................16, 17

*Gov't Emps. Ins. Co. v. Nealey*,
262 F. Supp. 3d 153 (E.D. Pa. 2017) ....................11

*Harris v. Park Cities Volkswagen*,
No. 3:03-CV-0328, 2004 WL 76382 (N.D. Tex. Jan. 13, 2004) ....................17

*HT Res., Inc. v. Ralston*,
No. 1:17-350, 2017 WL 7921242 (W.D. Tex. Dec. 7, 2017) ....................9

*John Paul Mitchell Sys. v. Randalls Food Mkts., Inc.*,
17 S.W.3d 721 (Tex. App.—Austin 2000, pet. denied) ....................20

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P.*,
546 S.W.3d 648 (Tex. 2018) ....................15

*Kane v. Yancey*,
No. 15-1861, 2016 WL 922243 (S.D. Tex. Feb. 16, 2016) ....................21

*Marek Brother Sys., Inc. v. Enriquez*,
No. 3:19-CV-01082, 2019 WL 3322162 (N.D. Tex. July 24, 2019) ....................12

*Mason v. AmTrust Fin. Servs.*,
No. 19-CV-8364, 2020 WL 1330688 (S.D.N.Y. Mar. 23, 2020) ....................10

*Myan Mgmt. Grp., L.L.C. v. Adam Sparks Family Revocable Tr.*,
292 S.W.3d 750 (Tex. App.—Dallas 2009, no pet.) ....................22

*Norris v. Hearst Trust*,
500 F.3d 454 (5th Cir. 2007) ....................3

*Oyster Optics v. Infinera Corp.*,
No. 2:19-CV-257, 2020 WL 5800923 (E.D. Tex. Sept. 29, 2020) ....................16

*Phazr, Inc. v. Ramakrishna*,
No. 3:19-CV-01188, 2020 WL 5526554 (N.D. Tex. Sept. 14, 2020) ....................8, 9, 15

*Phuong Nguyen v. ABLe Commc'ns*,
No. 02-19-00069-CV, 2020 WL 2071757 (Tex. App.—Fort Worth Apr. 30, 2020, no pet.) ....................15

*Plaisance v. Schiller*,
No. 17-3741, 2019 WL 1205628 (S.D. Tex. Mar. 14, 2019) ....................18

*Prudential Ins. Co. v. Fin. Review Servs.*,
29 S.W.3d 74 (Tex. 2000)....................................................................................................19

*R2 Invs. LDC v. Phillips*,
401 F.3d 638 (5th Cir. 2005) ..............................................................................................8

*Richter v. Carnival Corp.*,
No. 3:18-CV-2172, 2019 WL 5894213 (N.D. Tex. Nov. 12, 2019) .......................8, 10, 17, 19

*Ruff v. Omnitrition Int'l, Inc.*,
No. 3:16-CV-2558, 2020 WL 5411745 (N.D. Tex. Sept. 9, 2020) ........................................20

*Schlumberger Tech. Corp. v. Swanson*,
959 S.W.2d 171 (Tex. 1997)...............................................................................................16

*SDN, Ltd. v. JV Road, L.P.*,
No. 03-08-00230-CV, 2010 WL 1170230 (Tex. App.—Austin Mar. 24, 2010,
no pet.) ...............................................................................................................................18

*SortiumUSA LLC v. Hunger*,
No. 3:11-CV-1656, 2013 WL 11730655 (N.D. Tex. Mar. 31, 2013).....................................10

*Stiel v. Heritage Numismatic Auctions, Inc.*,
816 F. App'x 888 (5th Cir. 2020) ........................................................................................3

*Summers v. PennyMac Corp.*,
No. 3:12-CV-01235, 2012 WL 5944943 (N.D. Tex. Nov. 28, 2012) ....................................23

*Transit Funding Assoc., LLC v. Cap. One Equip. Fin. Corp.*,
149 A.D.3d 23 (N.Y. 1st Dept. 2017)................................................................................24

*United States v. Herndon*,
No. 11-318, 2012 WL 4718622 (S.D. Tex. Aug. 8, 2012) ...................................................25

*Walker v. Beaumont Indep. Sch. Dist.*,
938 F.3d 724 (5th Cir. 2019) ..............................................................................................2

*Wells Fargo Nw. Bank, Nat'l. Ass'n. v. Varig-S.A.*,
No. 02 Civ. 6078, 2003 WL 21508341 (S.D.N.Y. June 27, 2003).........................................25

*Williams v. VMX Tech., Inc.*,
112 F.3d 175 (5th Cir. 1997) ..............................................................................................16

**Statutes**

18 U.S.C. § 1836...............................................................................................................8

18 U.S.C. § 1839.......................................................................................................8, 12, 13

TEX. CIV. PRAC. & REM. CODE § 134A.002....................................................................15

**Other Authorities**

FED. R. CIV. P. 9(b) ....................................................................................................16, 17

FED. R. CIV. P. 12(b)(6)........................................................................................... *passim*

TEX. DEP'T OF HEALTH SERVS. (Mar. 4, 2020), https://www.dshs.texas.gov/news/releases/2020/20200304.aspx............................................5

Defendants HNGH Turtle Creek, LLC ("HNGH"), HN Green Hollow Capital Partners, LLC ("Green Hollow"), Vipin Nambiar ("Nambiar"), and James G. Glasgow ("Glasgow") (collectively, the "Green Hollow Parties") move to dismiss the claims against them in Plaintiffs' Original Complaint ("Complaint") under Federal Rule of Civil Procedure 12(b)(6).

**INTRODUCTION**

This suit is a forum-shopping plaintiff's latest attempt to evade the consequences of its persistent defaults under a $32.5 million loan from 2999 Turtle Creek, LLC ("Lender"), following several rulings against the plaintiff in a virtually identical state-court suit. A recap of events disclosed in the Complaint and rulings in state court puts this latest maneuver in context.

Timothy Barton and his entity 2999TC Acquisitions, LLC ("Borrower") obtained the $32.5 million loan for construction of a hotel and residential project on Turtle Creek Boulevard. Borrower promised to pay interest and taxes on the land securing the loan, and Barton personally guaranteed the loan's repayment. But starting in February 2020, Borrower repeatedly defaulted by failing to pay property taxes, interest, or other debt service, and when the loan matured by October 1, 2020, Borrower failed to pay it off. Lender has sought to exercise its right to foreclose under the loan documents, and in the meantime, HNGH (which owns a subordinate participation interest in the loan) has been forced to make tax and interest payments to protect the collateral and preserve its rights. But Borrower has relentlessly pursued delay, including through meritless claims aimed to stave off a foreclosure. This suit is just the latest chapter in that story.

Borrower started by filing a lawsuit in Texas state court against HNGH and individuals associated with HNGH. When Lender later provided notice for a foreclosure sale, Borrower added Lender to the suit and sought an injunction to stop foreclosure. After an evidentiary hearing, the state court (Hon. Eric Moyé, presiding) rejected Borrower's arguments and denied its request for an injunction. Borrower then pursued other dilatory tactics, including failing to pay its counsel

(prompting them to withdraw), no-showing for depositions (leading to sanctions by the state court), and filing this case with essentially the same claims Borrower pursued for months unsuccessfully in state court (thus duplicating the burden and expense for Defendants). After another devastating state court ruling—which confirmed Borrower's numerous defaults and the millions of dollars in harm Defendants would suffer if foreclosure were enjoined for months—Borrower nonsuited the state-court suit to avoid an adverse, case-dispositive outcome.

There is no diversity jurisdiction here, so Plaintiffs concocted a federal question: Plaintiffs' sole jurisdictional hook is a claim that Defendants violated the federal Defend Trade Secrets Act. This claim does not withstand even cursory review. After all, numerous times, Plaintiffs willingly (in meetings with the "competitor" Green Hollow Parties, without securing a nondisclosure agreement) and publicly (in court filings) disclosed the "most important" of their alleged secrets—that Borrower and Barton are highly leveraged. In short, no trade secrets were disclosed. Further, there is no question the Green Hollow Parties were entitled to the information at issue under the terms of Borrower's loan agreements, which expressly authorized Lender to share the alleged trade-secret information with others, including the Green Hollow Parties.

Plaintiffs' gambit to avoid the consequences of their defaults under the loan documents should go no further. The failure of Plaintiffs' lone federal claim supports dismissal of the entire case, and even if the Court were to assess each state-law claim, it would find that Plaintiffs fail to state any viable claim against the Green Hollow Parties. Plaintiffs have thus failed to state any claim against the Green Hollow Parties, and the Court should dismiss the claims against them.

## PROPER MATERIALS FOR RULE 12(b)(6) MOTION

In ruling on this motion, the Court should consider the Complaint in its entirety, including materials attached to the Complaint as well as those referred to in the Complaint and central to Plaintiffs' claims. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). "And,

it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *see, e.g.*, *Stiel v. Heritage Numismatic Auctions, Inc.*, 816 F. App'x 888, 892 (5th Cir. 2020). The background below is based on the Complaint's contents and attachments and matters of public record.

## BACKGROUND

### A. Plaintiffs borrowed $32.5 million to finance a hospitality project.

Plaintiff Timothy Barton ("Barton"), acting through his entity 2999TC Acquisitions, LLC f/k/a MO 2999TC, LLC ("Borrower," collectively with Barton, "Plaintiffs"), obtained a $32.5 million loan in September 2019 from Defendant 2999 Turtle Creek, LLC ("Lender"), which is an affiliate of Defendant Madison Realty Capital, LP ("Madison"). (Compl. ¶¶2–5.) Plaintiffs used the loan to acquire land on Turtle Creek Boulevard in Dallas (the "Property") on which they hoped to build a hospitality project, including a Mandarin Oriental Hotel. (*Id.* ¶16–17.)

As part of the loan, Borrower executed a $32.5 million Secured Promissory Note ("Note"), and a Deed of Trust, Security Agreement, and Fixture Filing ("Deed of Trust," collectively with the Note, "Loan Documents"), which are secured by the Property. (*Id.* ¶17.) Barton also personally guaranteed the amounts due under the Loan Documents. (*Id.* ¶19.)

### B. Plaintiffs sought out investors, including the Green Hollow Parties.

Plaintiffs needed $100 million from investors to move forward with the hospitality project, and Defendants Marc and Josh Zegen (representatives of Lender) allegedly informed Plaintiffs that James Glasgow could be a "prospective investor." (*Id.* ¶¶18, 23.) Glasgow is the CEO of Green Hollow, which Plaintiffs admit "is a competing real estate investor." (*Id.* ¶¶9, 22.) At a meeting in November 2019, Josh Zegen allegedly "introduced Glasgow as a potential investor," but Glasgow is not alleged to have made any representation or statement before "Barton proceeded to present the entire pitch for the $100 million equity offering." (*Id.* ¶24.)

Plaintiffs allege they shared "confidential" information with Glasgow during the pitch, but they did not request a written non-disclosure agreement, nor do Plaintiffs allege that they obtained a verbal confidentiality agreement before Barton presented his "entire pitch." (*Id.*) Instead, Plaintiffs refer only to a vague "gentlemen's agreement" to keep information confidential; they do not allege when this agreement was allegedly formed or what its terms were. (*Id.*) Plaintiffs also allege that the most important information shared with Glasgow is that Barton is highly leveraged. (*Id.* ¶25; *see id.* ¶43 (Barton's "significant debt" is the specific "confidential information" Glasgow acquired); *id.* ¶61 (Barton's personal leverage is "especially" important information).) But these allegations throughout Plaintiffs' *public filing* show that Barton's highly leveraged position is not at all secret or confidential.

After the November meeting, Glasgow allegedly said "he would consider" investing in the project, but Plaintiffs "never received any further communications from Glasgow." (*Id.* ¶26, 33.) Later, through unidentified "mutual contacts," Plaintiffs were allegedly introduced to Vipin Nambiar, a previous business associate of Glasgow's, as another "potential investor." (*Id.* ¶¶9, 34.) Plaintiffs knew Nambiar was affiliated with entities that develop hospitality projects, including "properties developed by Plaintiffs' competitor[s]." (*Id.* ¶29.) Barton met with Nambiar and again shared allegedly confidential information. (*Id.*) As with Glasgow, Nambiar is not alleged to have made any representation to Barton before Barton disclosed the information. (*Id.* ¶¶34–35.) Rather, Barton allegedly told Nambiar that he "would need to execute a confidentiality agreement," but no such agreement was executed nor offered, and there is no allegation the parties reached any oral confidentiality agreement before Barton disclosed the alleged information to Nambiar. (*Id.*)

### C. Lender sold a participation interest in the loan to HNGH, as Plaintiffs expressly authorized under the loan documents.

Meanwhile, Lender was exploring the potential sale of a participation interest in the loan.

Borrower expressly granted Lender (in the Loan Documents) broad authority to sell such a participation interest to whomever Lender may select, on whatever terms and conditions Lender deems satisfactory, in its sole and absolute discretion, without Borrower's knowledge, input, or consent. (*Id.*, Ex. B §§ 40–41.). Borrower also authorized Lender to provide "financial and other information" about Borrower, Barton, and the Property to any party who purchased a participation interest in the loan or who expressed an interest in purchasing a participation. (*Id.*)

As Borrower agreed Lender could do, Lender entered into a Participation Agreement and sold a $7 million "junior subordinate participation interest" in the loan to HNGH, an entity affiliated with Glasgow and Nambiar. (*Id.*; Ex. C.)[1] HNGH's junior participation interest has lower priority for repayment, and in exchange for HNGH accepting this risk, the Participation Agreement gives HNGH a right to consent to major transactions involving the loan and to control disposition of collateral if Borrower defaults. (Ex. C §§ 5(b), 6–7.) But HNGH could lose these rights—and thus risk its entire investment—unless it pays protective advances, such as property taxes for the collateral and interest payments. (*Id.* §§ 6, 7(b), 7(e); Ex. A §§ 12, 17, 34.)

### D. Borrower filed suit in Texas state court to stop a foreclosure based on Borrower's failure to pay taxes, interest, and other debt service.

As Plaintiffs acknowledge, taxes for the Property were due by January 31, 2020 (well before COVID-19 reached Texas).[2] (Compl. ¶45.) Borrower defaulted by not paying the taxes by the due date and still had not paid the taxes in April. (*Id.* ¶47; Order of Nov. 5, 2020.) After HNGH contacted Borrower about this issue and was unable to get confirmation that Borrower would cure

[1] After HNGH entered into the Participation Agreement, Nambiar allegedly made statements about "owning" the loan, which were accurate based on HNGH's ownership stake. (*Id.* ¶44.) Nambiar also allegedly met with others who were intending to invest in the hospitality project, and those investors decided to back out "[s]hortly []after" March 4—when the "unprecedented" effects of the COVID pandemic began to materialize. (*Id.* ¶¶44–46.)

[2] Chris Van Deusen, DSHS Announces First Case of COVID-19 in Texas, TEX. DEP'T OF HEALTH SERVS. (Mar. 4, 2020), https://www.dshs.texas.gov/news/releases/2020/20200304.aspx.

the default by paying the taxes, HNGH acted on its rights under the Participation Agreement and made the tax payment. (Compl. ¶¶48, 50.) HNGH then sought to recoup this payment from Borrower along with interest due under the Note. (*Id.* ¶48.)

Shortly thereafter, Borrower filed suit in Texas state court against HNGH, Green Hollow, Nambiar, and William Hutchinson (who is a "Non-Part[y]" in this case despite his inclusion in the state suit). (*Id.* ¶¶8, 12; *see* DC-20-05864, 14th Dist. Ct., Dallas Cty., Tex.)[3] Borrower asserted various tort and contract claims, alleging that the defendants were wrongfully trying to take over developing the hospitality project. (Pl. Orig. Pet., Apr. 20, 2020.) While that lawsuit was moving forward, Lender provided notice for a foreclosure sale based on its rights under the Loan Documents due to Borrower's defaults. (Compl. ¶57; *see* Order of Nov. 5, 2020; Ex. B § 22(a)(ii).) Borrower then added Lender and Madison as defendants and sought injunctive relief to stop the foreclosure. (Compl. ¶¶57, 59; *see* Pl. 4th Am. Pet., July 31, 2020.)

**E. After unfavorable rulings in state court, Plaintiffs filed this nearly identical case.**

The state trial court rejected Borrower's arguments and denied its request for a temporary injunction. (Order of Aug. 20, 2020.) Borrower appealed and concurrently sought a writ of injunction from the Dallas Court of Appeals.[4] The appellate court temporarily stayed foreclosure to protect its jurisdiction to decide the temporary injunction appeal but granted Defendants' request for a bond to be recommended by Judge Moyé. (Orders of Aug. 28 and Oct. 8, 2020.)

**F. After further unfavorable rulings, Plaintiffs abandoned the state lawsuit.**

Meanwhile, Plaintiffs' delay tactics began to backfire. Borrower failed to appear at two depositions, resulting in a contempt finding and sanctions. (Order of Contempt, Oct. 15, 2020.)

---

[3]The state court public records are accessible at: https://courtsportal.dallascounty.org/DALLASPROD/ → "Smart Search" → "DC-20-05864".

[4] The interlocutory appeal was docketed as No. 05-20-00774-CV, and the writ proceeding was docketed as No. 05-20-00777-CV. The public records in both cases are accessible at: https://www.txcourts.gov/5thcoa/.

Then, having failed to pay its counsel, Borrower's counsel withdrew, requiring it to find new representation. (Mot. to Withdraw, Sept. 3, 2020; Order of Oct. 6, 2020.) The new counsel filed this lawsuit, bringing Plaintiffs' proceedings up to three.

Based on the substantial outstanding amount of Borrower's debt obligations, Judge Moyé recommended a $5.2 million bond to secure the stay in Borrower's original proceeding. (Order of Nov. 5, 2020.) Unpleased with this ruling, Borrower abandoned the state court case, filing a nonsuit in both the trial and appellate courts. (Nonsuit, Nov. 12, 2020; Notices, Nov. 13, 2020.)

This action is virtually identical to the unsuccessful state lawsuit. The allegations are the same. Plaintiffs merely added a claim under the federal Defend Trade Secrets Act to try to create federal jurisdiction. They also added Glasgow,[5] Marc Zegen, and Joshua Zegen as defendants, while omitting Hutchinson (despite still complaining about his conduct). (Compl. ¶¶9–12.)

## ARGUMENT

### I. A complaint should be dismissed when it fails to state a plausible claim.

Dismissal is proper when a complaint fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility requires a plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations are taken as true, and the facts are construed in the light most favorable to the plaintiff. *Fernandez-*

[5] Glasgow—who lives and works in New York and has not availed himself of this forum—joins in this motion subject to his separate motion to dismiss the claims against him for lack of personal jurisdiction. (Dkt. #9.)

*Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). But "naked assertions devoid of further factual enhancement," and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quotation omitted); *see R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions").

Here, Plaintiffs fail to state a plausible claim under the DTSA—and the failure of that lone federal claim removes any basis for the Court to exercise jurisdiction over this case. Further, in any event, Plaintiffs' assorted state-law claims also suffer from threshold defects that support dismissal of the entire lawsuit.

## II. Plaintiffs fail to state a federal trade secrets claim, requiring a complete dismissal.

To state a claim under the DTSA, Plaintiffs must allege (1) the existence of a trade secret, (2) misappropriation of that trade secret, and (3) use in interstate commerce. 18 U.S.C. § 1836(b)(1); *Phazr, Inc. v. Ramakrishna*, No. 3:19-CV-01188, 2020 WL 5526554, at *3 (N.D. Tex. Sept. 14, 2020). Because Plaintiffs fail to sufficiently allege either a trade secret or misappropriation, their DTSA claim should be dismissed.

### A. Plaintiffs have not plausibly pleaded a "trade secret."

As a threshold and dispositive matter, Plaintiffs' trade secret claims fail because they have not plausibly alleged any trade secret. A "trade secret" is information that (1) the owner has taken reasonable measures to keep secret, and (2) derives independent economic value from not being generally known or readily ascertainable through proper means. *See* 18 U.S.C. § 1839(3). By contrast, information that is publicly disclosed or generally known cannot be a trade secret. *Richter v. Carnival Corp.*, No. 3:18-CV-2172, 2019 WL 5894213, at *7 (N.D. Tex. Nov. 12, 2019) (citation omitted)). Here, Plaintiffs' allegations show that they did not take reasonable measures

to keep information regarding the project secret, nor have they alleged why that information has independent economic value. Far from providing prima facie support for their trade secret claims, Plaintiffs' pleading affirmatively shows that these claims must be dismissed.

*First*, Plaintiffs allege *no facts* showing that any of the vague categories of information related to the Project qualifies as a trade secret. As to the first requirement—reasonable measures to protect the information—Plaintiffs allege generically that they "made and continue to make reasonable efforts to maintain the secrecy of their Trade Secrets." (Compl. ¶¶64, 124.) This conclusory statement is insufficient. *See, e.g.*, *HT Res., Inc. v. Ralston*, No. 1:17-350, 2017 WL 7921242, at *7 (W.D. Tex. Dec. 7, 2017). The same deficiency befalls the economic-value requirement. Plaintiffs state only that the "Trade Secrets have independent economic value from not being generally known or readily ascertainable through proper means by another person who could obtain economic value from disclosure or use of the information." (*Id.* ¶¶63, 123.) Again, as a matter of law, these statements are too conclusory: Plaintiffs do not explain *how or why* the information has independent economic value, nor do they explain *what steps* they took to keep the information secret (beyond a deficient "gentlemen's agreement," discussed further below). As this Court stated recently, "Without that vital *how*, [Plaintiffs] cannot elevate [their] pleading from the conclusory to the plausible." *Phazr*, 2020 WL 5526554, at *4.

Plaintiffs' allegations regarding the existence of a trade secret are nothing more than a formulaic recitation of the elements of a trade secret misappropriation claim. *Iqbal*, 556 U.S. at 681. The allegations do not allege a claim that is plausible on its face, so dismissal under Rule 12(b)(6) is appropriate. *Id.*; FED. R. CIV. P. 12(b)(6).

*Second*, any factual allegations Plaintiffs *did* include in their pleading affirmatively show that Plaintiffs did not take reasonable measures to keep the information secret. Plaintiffs identify

Glasgow and Nambiar—who are affiliated with the Green Hollow entities—as Plaintiffs' "direct competi[tors]" in the hospitality development industry; nevertheless, Plaintiffs shared their claimed "secrets" with these competitors based on nothing more than an alleged oral "gentlemen's agreement" to keep them confidential. (Compl. ¶¶8–9, 22, 24–25, 29, 34–35.) What is more, nowhere do Plaintiffs allege that Glasgow or Nambiar committed to any confidentiality arrangement *before* Plaintiffs disclosed the information. (*Id.* ¶¶24–25, 34–35.) To top it off, Plaintiffs even told Nambiar that he would need to execute a formal confidentiality agreement, yet Plaintiffs disclosed the information without such an agreement and never followed through to request any written agreement. (*Id.* ¶35.)

Case law and common-sense confirm that these measures were insufficient to maintain the information's status as a "trade secret." *See Richter*, 2019 WL 5894213, *7 (dismissing a trade secret claim because the plaintiff failed to allege that "she maintained secrecy throughout th[e] process" of discussing an idea with others). Indeed, numerous courts have held that a plaintiff's failure to obtain a written confidentiality agreement defeated trade secret status under the circumstances. *See, e.g., Mason v. AmTrust Fin. Servs.*, No. 19-CV-8364, 2020 WL 1330688, at *2–3 (S.D.N.Y. Mar. 23, 2020) (holding plaintiff did not take reasonable measures where he did not obtain written confidentiality agreement formalizing oral assurances); *SortiumUSA LLC v. Hunger*, No. 3:11-CV-1656, 2013 WL 11730655, at *12 (N.D. Tex. Mar. 31, 2013) (applying similar Georgia law and granting a motion to dismiss based on plaintiff's failure to mark the information as confidential, require the defendant to execute a confidentiality agreement, and "its failure to plead any other steps to protect the secrecy"). The same is true here.

*Finally*, Plaintiffs' blatant, unredacted disclosures of the relevant information underscores the implausibility of Plaintiffs' alleged entitlement to trade secret protection. *See In re Document*

*Techs. Litig.*, 275 F. Supp. 3d 454, 462 (S.D.N.Y. 2017) (rejecting attempt to "twist[] the contours of trade secret law" in part by alleging that information pleaded in unredacted form was a trade secret); *Gov't Emps. Ins. Co. v. Nealey*, 262 F. Supp. 3d 153, 168 (E.D. Pa. 2017) (dismissing trade secret claims related to information in public filings). The crux of Plaintiffs' trade secret complaint is that the Green Hollow Parties allegedly exploited information concerning the extent of Plaintiffs' debt. (*E.g.*, Compl. ¶¶25, 34, 43–44, 61, 122.) But Plaintiffs have not alleged how the amount of their debt constitutes a trade secret—which is a dubious proposition—and even if the information was protected previously, Plaintiffs forfeited all *secrecy* (and all protection) by making the following statements, among others, in their pleading:

- "***Most importantly***, Barton confessed to Glasgow that *he had leveraged "everything he owned" in order to purchase the Land* and would be using part of the $100 million capital raise to recoup approximately *$12 million* of the funds he invested." (Compl. ¶25 (emphases added).)

- "Glasgow and Nambiar . . . acquired Plaintiffs' *confidential information* from their meetings with Barton. ***Specifically***, *knowing that Barton had already gone into significant debt to acquire the Land, Defendants knew 2999TC was running on a thin margin of liquidity*." (*Id.* ¶43 (emphases added).)

- "Plaintiffs 2999TC and Barton are the owners of trade secrets related to the Project, including but not limited to . . . *the amount of debt the Project would incur and which Plaintiffs had already incurred, including and* ***especially*** *the amount Plaintiff Barton had personally leveraged*." (*Id.* ¶61 (emphases added); *see also* Pl. 4th Am. Pet. ¶12.)

Because Plaintiffs have not plausibly alleged the existence of a trade secret, this Court should dismiss Plaintiffs' DTSA claim. *See Nealey*, 262 F. Supp. 3d at 168.

**B. Plaintiffs have not plausibly pleaded a "misappropriation."**

Even if Plaintiffs pleaded any trade secret (and they did not), this Court should still dismiss the trade secret claims because they have not plausibly alleged any misappropriation.

To plead misappropriation, Plaintiffs must plausibly allege that the Green Hollow Parties (1) acquired a trade secret by "improper means," or (2) disclosed or used a trade secret without

Plaintiffs' consent, knowing the information was acquired by "improper means" or under circumstances that required it to be kept secret. 18 U.S.C. § 1839(5); *see Marek Brother Sys., Inc. v. Enriquez*, No. 3:19-CV-01082, 2019 WL 3322162, at *3 (N.D. Tex. July 24, 2019). "Improper means" include misrepresentation or breach of a duty to maintain secrecy, but it categorically does *not include* "any other lawful means of acquisition." 18 U.S.C. § 1839(6)(A), (B). Thus, a party does not act by improper means if it is authorized to possess or access the information. *See Giostar Therapy, LLC v. Bioscience Ams. LLC*, No. CV-18-02788, 2019 WL 7841723, at *3 (D. Ariz. Apr. 22, 2019). Plaintiffs have not plausibly alleged any misappropriation here, so the Court should dismiss the trade secret claim.

**1. Plaintiffs have not alleged acquisition through "improper means" by any Green Hollow Party because they expressly authorized the disclosure of the allegedly protected information.**

Plaintiffs do not—and cannot—show that any Green Hollow Party acquired their information through improper means. Plaintiffs themselves authorized Lender to share the alleged trade secret information with any party who expressed any interest in purchasing a participation interest in the loan—a broad category that Plaintiffs acknowledge encompasses the Green Hollow Parties. (Ex. B § 40; *see* Compl. ¶22.)

Plaintiffs expressly authorized Lender to provide to "*any potential* . . . participant or investor . . . *all documents and information* which [Lender] *now has or may hereafter acquire relating to the Loan, Borrower, [Barton] . . . or the Property* which shall have been furnished by or on behalf of Borrower, [Barton] or any other party to the Loan." (Ex. B § 40 (emphasis added).) Plaintiffs' own allegations show that (1) each Green Hollow Party was a potential "participant or investor," and (2) all of the alleged trade secrets consist of information that Plaintiffs furnished to Lender "relating to the Loan, Borrower, [Barton] . . . or the Property." (Compl. ¶¶22–25, 29, 34–35, 61, 122.) Plaintiffs' consent for Lender to share this information with others, including the

Green Hollow Parties, provides a lawful—*not improper*—means for the Green Hollow Parties to acquire the information.

Further, aside from Plaintiffs' disclosure authorization, Plaintiffs' allegations do not support any plausible inference that a Green Hollow Party improperly acquired the information through a misrepresentation or breach of duty. Plaintiffs do not allege that Glasgow made *any* representation before Barton shared the information with them. (Compl. ¶¶23–24.) Likewise, Plaintiffs do not allege that Nambiar made any representation to Barton before Barton "shared confidential and proprietary information with Nambiar." (*Id.* ¶34.) Even accepting the truth of Plaintiffs' allegations concerning *later* statements by Glasgow and Nambiar, those statements do nothing to show that Glasgow or Nambiar (or the Green Hollow entities they represent) *acquired* the alleged trade secrets by making any misrepresentation.

**2. Plaintiffs have not alleged any Green Hollow Party misused or wrongfully disclosed the alleged trade secrets.**

Plaintiffs allege that the Green Hollow Parties misappropriated trade secrets by (1) using information Plaintiffs provided to "caus[e] the Investors to back out of the Project," and (2) "taking other actions to sabotage the Project by manufacturing defaults" under the Loan Documents. (Compl. ¶65; *see id.* ¶¶27, 44.)[6] These allegations do not support any plausible inference that the Green Hollow Parties misused or wrongfully disclosed Plaintiffs' alleged trade secrets. *See* 18 U.S.C. § 1839(5).

Plaintiffs cannot anchor any trade secrets claim in the Investors' decision to back out of the Project because that decision is not linked to any use or disclosure of a trade secret. Indeed, Plaintiffs do not allege that their "trade secrets" had anything to do with the Investors backing out;

[6] Underlying these allegations is the assumption that Plaintiffs' indebtedness is a "trade secret," which is wrong for the reasons discussed above. *See supra* Part II.A.

instead, they contend the Investors walked away after Nambiar told them "he 'owned' the Loan on the Project." (*Id.* ¶44.) A representation by Nambiar about an ownership stake in the loan is not only truthful based on HNGH's participation interest, but most importantly it does not involve any use or disclosure of Plaintiffs' alleged trade secrets, so it cannot support any trade secret claim. What is more, the information Plaintiffs say they shared with Glasgow and Nambiar was the sales pitch for soliciting investment in the Project. (*Id.* ¶¶24, 33–34.) There is no allegation that the content of the pitch to Glasgow and Nambiar was any different from the pitch Plaintiffs made to solicit the Investors, so there is nothing to support a plausible inference that Glasgow or Nambiar used or disclosed to the Investors any information that the Investors did not already know. Finally, Plaintiffs' own allegations show that when the Investors backed out—i.e., "shortly []after" an alleged March 4 meeting with Nambiar (*id.* ¶44)—the COVID-19 pandemic was causing "unprecedented governmental orders" and market disruption. (*Id.* ¶46.) The plausible inference from these facts is that the Investors backed out of the massive hotel project because of these unprecedented events, not anything to do with the Green Hollow Parties.

Plaintiffs' allegations about "manufactur[ed] defaults" under the Loan Documents do not support any claim for trade secret misappropriation, either. (*Id.* ¶65; *see id.* ¶27.) Whether defaults exist under the Loan Documents is disconnected from any use or disclosure of trade secrets. Rather, the existence of defaults turns solely on Plaintiffs' own actions and the interpretation of the Loan Document's plain terms—and Judge Moyé already concluded Plaintiffs breached those terms. (Order of Nov. 5, 2020.) Plaintiffs' allegations about defaults are (incorrect) legal conclusions based on their (flawed) reading of the Loan Documents; they are not factual allegations that could support any trade secret claim. *See infra* Part VII; *Brown v. ASC Mortg./U.S. Bank Nat'l Ass'n,* No. 4:15-CV-547, 2015 WL 5559441, at *2 (N.D. Tex. Sept. 18, 2015) ("Legal

conclusions and labels are not sufficient to state a plausible claim.”).

* * * * *

Because the DTSA claim is the sole basis for federal jurisdiction, and because that claim fails for the reasons above, it is “unnecessary” for the Court to analyze any of Plaintiffs’ state-law claims, and the entire case should be dismissed. *See Phazr*, 2020 WL 5526554, at *1 & n.3.

## III. Plaintiffs do not state a claim under the Texas Uniform Trade Secrets Act.

Plaintiffs’ state-law trade secret claims fail for the same reasons. Under the Texas Uniform Trade Secrets Act (“TUTSA”), Plaintiffs must plead (1) a trade secret, (2) acquisition of the trade secret by improper means, and (3) use of the trade secret without authorization. TEX. CIV. PRAC. & REM. CODE § 134A.002. TUTSA provides that acquisition by improper means is a misappropriation, so as under the DTSA, Plaintiffs must allege both the existence of a trade secret and its misappropriation. *See id.* § 134A.002(3). As explained above, however, Plaintiffs have failed on both accounts: (1) they have not plausibly alleged a trade secret because Plaintiffs did not take reasonable measures to protect the information and have not explained how it has independent economic value; and (2) they have not alleged misappropriation because Plaintiffs authorized disclosure of the information to prospective investors like the Green Hollow Parties and have not plausibly alleged that the Green Hollow Parties misused the information. Plaintiffs’ TUTSA claim should therefore be dismissed. *See, e.g.*, *Phuong Nguyen v. ABLe Commc’ns*, No. 02-19-00069-CV, 2020 WL 2071757, at *16–20 (Tex. App.—Fort Worth Apr. 30, 2020, no pet.) (dismissing TUTSA claim when plaintiffs failed to state prima facie case).

## IV. Plaintiffs have not stated any fraud claim.

To state a fraud claim, Plaintiffs must allege, among other things, that the Green Hollow Parties made a “material representation that was false,” and Plaintiffs “actually and justifiably relied upon the representation and suffered injury as a result.” *JPMorgan Chase Bank, N.A. v.*

*Orca Assets G.P.*, 546 S.W.3d 648, 653 (Tex. 2018). A promise must be definite to support a fraud claim; the claim fails if based on mere "vague assurances that no reasonable person would justifiably rely on." *Global Integrated Bldg. Sys. v. Target Logistics, LLC,* No. 06-2637, 2009 WL 259360, at *8 (S.D. Tex. Feb. 3, 2009) (citation omitted).

Fraud by nondisclosure is "a subcategory of fraud" that involves the same elements plus the existence of "a duty to disclose." *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). Thus, to state a fraud-by-nondisclosure claim, Plaintiffs must allege that a defendant was under duty to disclose, along with specific facts giving rise to such duty. *Oyster Optics v. Infinera Corp.*, No. 2:19-CV-257, 2020 WL 5800923, at *3 (E.D. Tex. Sept. 29, 2020).

Plaintiffs' fraud claims are also subject to FED. R. CIV. P. 9(b), which requires allegations describing "with particularity the circumstances constituting fraud." Plaintiffs must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. VMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). "[T]he who, what, when, and where must be laid out." *Id.* at 178.

The Complaint falls short under these requirements. Plaintiffs have not alleged sufficient misrepresentations or reliance. Nor have Plaintiffs pleaded any basis for a "duty to disclose," defeating any fraud-by-nondisclosure theory. The fraud claims should therefore be dismissed.

### A. Plaintiffs have not alleged any reliance on a false representation, as necessary to support a fraud claim.

Plaintiffs allege the following affirmative misrepresentations: (1) statements by various parties characterizing Glasgow and Nambiar as potential investors, (2) alleged oral promises by Nambiar and Glasgow to keep information confidential and use it to consider their investment, (3) Glasgow's alleged representation that "he would consider" making an investment, and (4) Nambiar's alleged "expressed interest about investing in the Project." (Compl. ¶¶81–82; *see*

*id.* ¶¶24–26, 34–35.) None of these supports a plausible fraud claim.

For starters, neither Glasgow nor Nambiar is alleged to have made any representation *before* Barton disclosed the alleged confidential information. This defeats Plaintiffs' ability to fulfill the reliance element of fraud—Plaintiffs cannot show that they relied on Glasgow or Nambiar's representations as inducement to make the disclosures. (*See id.*) Plaintiffs allege only that "Josh [Zegen] introduced Glasgow as a potential investor" before Barton made "the entire pitch." (*Id.* ¶24.) After the pitch, Glasgow allegedly said "he would consider $50 million in mezzanine funding." (*Id.* ¶26.) That noncommittal statement came too late for Barton to have actually relied on it as the basis for disclosure. Similarly, Nambiar is not alleged to have made any representation to Barton before he shared information with Nambiar. (*Id.* ¶34.) This same issue also defeats Plaintiffs' fraud claims to the extent they rely on alleged oral confidentiality agreements. (*Id.* ¶¶81–82.) Glasgow is not alleged to have made any agreement before Barton gave his pitch, and the same is true of Nambiar. (*Id.* ¶24.)

Nambiar's alleged "expressed interest about investing in the Project" cannot support a fraud claim for two reasons: timing and vagueness. *See Brown*, 965 S.W.2d at 503; (Compl. ¶¶34, 81.) This representation, like those discussed above, was allegedly made *after* Barton disclosed the information, foreclosing any reliance. As an additional problem, the representation itself is not actionable because it is too "vague and indefinite." *See Global Integrated*, 2009 WL 259360, at *8; *see also Harris v. Park Cities Volkswagen*, No. 3:03-CV-0328, 2004 WL 76382, at *3 (N.D. Tex. Jan. 13, 2004). Plaintiffs provide no details about what Nambiar said or how much or when he would invest. This vague and indefinite allegation "as a matter of law provides no foundation for a claim of fraud." *Global Integrated*, 2009 WL 259360, at *9. Plaintiffs' allegations fall far short of stating a fraud claim with particularity, as Rule 9(b) requires. *See Richter*, 2019 WL

5894213, at *6. Thus, Plaintiffs' fraud claim should be dismissed.

**B. Plaintiffs have not pleaded any basis for a "duty to disclose," as required to support a fraud-by-nondisclosure claim.**

Plaintiffs' fraud-by-nondisclosure claim also fails because Borrower did not—and could not—allege that any Green Hollow Party had a duty to make a disclosure. "As a general rule, a failure to disclose information does not constitute fraud unless there is a duty to disclose the information." *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001). Texas courts have held that a duty to disclose arises in limited circumstances: (1) a fiduciary or other special relationship; (2) new information makes a defendant's earlier representation misleading or untrue; (3) a defendant conveys a false impression by making a partial disclosure; or (4) a defendant who voluntarily discloses information has a duty to disclose the whole truth. *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 220 (Tex. 2019).

None of these circumstances are alleged here, and none conceivably apply. Plaintiffs have not alleged the existence of a fiduciary relationship between and the parties, and "[t]o impose even an informal fiduciary duty in a business transaction, a special relationship of trust and confidence must exist *prior to, and apart from*," the events that make the basis of the suit. *SDN, Ltd. v. JV Road, L.P.*, No. 03-08-00230-CV, 2010 WL 1170230, at *6 (Tex. App.—Austin Mar. 24, 2010, no pet.) (emphasis added). No such prior relationship existed here. (Compl. ¶¶23–24, 43.) Duties to disclose based on prior statements by a defendant also cannot apply, as any alleged representations concerning Glasgow and Nambiar as investors were made by third parties. *Cf. Plaisance v. Schiller*, No. 17-3741, 2019 WL 1205628, at *21 (S.D. Tex. Mar. 14, 2019) (holding in the securities law context that allegations failed to state any duty to correct allegedly misleading statements by third parties). Further, any representations allegedly made by Glasgow and Nambiar themselves came *after* Barton's disclosures and thus did not induce any reliance. *See supra*;

*Bombardier*, 572 S.W.3d at 220. Because no Green Hollow Party had any duty to disclose, Plaintiffs' fraud by nondisclosure claims should also be dismissed.

## V. Plaintiffs have not stated any plausible claim for tortious interference.

To state a claim for tortious interference with a contract, Plaintiffs must allege (1) an existing contract, (2) an intentional act of interference with the contract, (3) proximately causing injury, and (4) actual damages or loss. *Prudential Ins. Co. v. Fin. Review Servs.*, 29 S.W.3d 74, 77 (Tex. 2000). Tortious interference with prospective business relations requires (1) a reasonable probability Plaintiffs would have entered into a business relationship with a third party; (2) a defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused injury; and (5) Plaintiffs suffered actual damage or loss as a result. *Coinmach Corp. v. Aspenwood Apartment*, 417 S.W.3d 909, 923 (Tex. 2013).

Plaintiffs' allegations fail to state a plausible right to relief under these elements.

### A. Plaintiffs have not alleged interference with an existing contract, as required to support a claim for tortious interference with contract.

Plaintiffs allege interference with two "contracts": the Loan Documents and agreements with the Investors. (Compl. ¶¶113–14.) Plaintiffs did not plead facts to show any binding contract with the Investors, which alone defeats the tortious interference claim as to that alleged contract. (*Id.* ¶¶44, 114); *see, e.g.*, *Richter*, 2019 WL 5894213, at *5. As to the Loan Documents, Plaintiffs' claim fails because they did not plead any intentional interference or independently tortious or unlawful conduct. *See Prudential*, 29 S.W.3d at 77; *Coinmach*, 417 S.W.3d at 923.

Plaintiffs must plausibly allege that a Green Hollow Party willfully and intentionally interfered with the Loan Documents by "knowingly induc[ing] one of the contracting parties to

breach its obligations." *John Paul Mitchell Sys. v. Randalls Food Mkts., Inc.*, 17 S.W.3d 721, 730 (Tex. App.—Austin 2000, pet. denied). Plaintiffs have not met this requirement: they do not allege any conduct by a Green Hollow Party that knowingly induced Lender to breach the Loan Documents. (Compl. ¶113; *see id.* ¶¶77–78.) Instead, Plaintiffs' allegations show actions that HNGH rightfully took in its role as a loan participant to protect its investment by paying taxes and interest, and none of those actions breached or induced a breach of the Loan Documents.

**B. Plaintiffs have not pleaded that any independently tortious or unlawful conduct proximately caused them injury, defeating any claim for tortious interference with business relations.**

Plaintiffs' second tortious interference theory—which asserts interference related to the same alleged agreements—fails for similar reasons. To the extent Plaintiffs rely on alleged interference with the Loan Documents to support this claim, it fails because Plaintiffs merely repeat their (flawed) contract claim without alleging interference with a *prospective relationship*. (Compl. ¶118); *see Ruff v. Omnitrition Int'l, Inc.*, No. 3:16-CV-2558, 2020 WL 5411745, at *12–15 (N.D. Tex. Sept. 9, 2020) (holding that a claim for tortious interference with prospective business relations fails if no prospective relationship is alleged). Even if they alleged such a relationship, Plaintiffs' claim still fails because they have not alleged any tortious or unlawful conduct by any Green Hollow Party in relation to the Loan Documents, as explained throughout this motion. (Compl. ¶118); *see Coinmach*, 417 S.W.3d at 923. The same defect defeats Plaintiffs' claim as to the Investors. (Compl. ¶119); *see Coinmach*, 417 S.W.3d at 923.

Plaintiffs' allegations concerning the Investors also fail to state any viable tortious interference claim because Plaintiffs have not shown that any alleged action by the Green Hollow Parties proximately caused the Investors to back out. *See Coinmach*, 417 S.W.3d at 923 (listing proximate cause as an essential element). Plaintiffs allege that the Investors stepped away from the project "shortly" after March 4 and blame the Green Hollow Parties for this outcome. (Compl.

¶44.) *At that same time*, however, the COVID pandemic was wreaking havoc on the economy, causing governments to "shut[] down everything but 'essential businesses'" and sending "capital and lending markets across the United States crash[ing]." (*Id.* ¶¶45–46, 50.) Plaintiffs try to leverage these events as an excuse for their own actions, but they ignore the effects on the rest of the world. Plaintiffs have given no reason why any alleged act by a Green Hollow Party, rather than the effects of the COVID pandemic, was the plausible cause for their Investors' desertion. Conclusory allegations supporting nothing more than "mere possibility" do not satisfy Plaintiffs' pleading burden. (*Id.* ¶¶45–46); *see Aperia Sols., Inc. v. OLB Grp., Inc.*, No. 3:18-CV-03276, 2020 WL 4431945, at *2 (N.D. Tex. July 30, 2020).

## VI. Plaintiffs have not stated a conspiracy claim.

A civil conspiracy claim requires "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Agar Corp. v. Electro Circuits Int'l*, 580 S.W.3d 136, 141 (Tex. 2019). Plaintiffs' allegations do not fulfill these elements.

As a threshold matter, civil conspiracy is a derivative claim that must be dismissed if the Court dismisses the other tort claims. *See Kane v. Yancey*, No. 15-1861, 2016 WL 922243, at *5 (S.D. Tex. Feb. 16, 2016); *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 438 (Tex. 1997). As discussed above, Plaintiffs' tort claims fail, which, in turn, requires dismissal of this claim.

Plaintiffs also have not alleged facts plausibly explaining how a meeting of the minds occurred to commit any unlawful act. Plaintiffs' allegation about a meeting of the minds is nothing but a threadbare recitation of the element, devoid of the required factual support. (Compl. ¶107); *see Twombly*, 550 US at 555. Moreover, Plaintiffs have not alleged any plausible theory that a Green Hollow Party committed an unlawful, overt act. *See supra* Parts II–IV.

## VII. Plaintiffs have not stated a claim for breach of contract.

To state a breach-of-contract claim, Plaintiffs' allegations must show the existence of a valid contract. *See, e.g.*, *Myan Mgmt. Grp., L.L.C. v. Adam Sparks Family Revocable Tr.*, 292 S.W.3d 750, 754 (Tex. App.—Dallas 2009, no pet.). Plaintiffs have not met this basic element.

"A contract must be based on a valid consideration; that is, mutuality of obligation." *Avialae S De RL De CV v. Cummins Inc.*, 2020 WL 3965014, at *6 (W.D. Tex. July 13, 2020) (quoting *Plains Builders, Inc. v. Steel Source, Inc.*, 408 S.W.3d 596, 602 (Tex. App.—Amarillo 2013, no pet.)). "Consideration is a bargained-for exchange of promises or return performance and consists of benefits and detriments to the contracting parties." *Id.* (quotation omitted).

Here, Plaintiffs allege that they entered into oral contracts with Glasgow and Nambiar to maintain the confidentiality of information Barton shared. (Compl. ¶¶129–40.) Although Barton allegedly said the information should be kept confidential before he disclosed it, Plaintiffs do not allege that Glasgow or Nambiar responded with any promise to keep the information confidential *before* Barton made his "pitch." (*Id.* ¶¶23–24, 34.) Any later alleged agreement by Glasgow or Nambiar—such as a vague "gentlemen's agreement"—was not made *in exchange for* Barton's disclosure because disclosure already occurred. Because there was no bargained-for exchange, and thus no consideration, the contract claims fail. *See Cummins*, 2020 WL 3965014, at *6 (no contract claim when defendant did not make promise in exchange for plaintiff's promise).

## VIII. Plaintiffs also fail to state any valid declaratory judgment claim.

Plaintiffs' last three claims seek relief under the Declaratory Judgment Act. (Compl. ¶¶150–63). Each of the requested declarations concerns the meaning and effect of the Loan Documents, which Plaintiffs attached to the Complaint. (*Id.* & Ex. A–B.) The Court interprets the unambiguous Loan Documents as a matter of law, and the Loan Documents' terms preclude the relief Plaintiffs seek. The Court should therefore dismiss the declaratory judgment claims. *See*,

*e.g.*, *Summers v. PennyMac Corp.*, No. 3:12-CV-01235, 2012 WL 5944943, at *8 (N.D. Tex. Nov. 28, 2012) (dismissing a request for declaratory judgment under Rule 12(b)(6) because the declaration sought was "contradicted by the Note [and] Security Instrument").

**A. The Participation Agreement is valid.**

Plaintiffs seek declarations that the Participation Agreement (1) "was not permissible under the terms of Section 40 of the Deed of Trust," (2) is a breach of the duty of good faith and fair dealing, and (3) "is void as to each and every provision that provides HNGH with any rights of administration or control over the [Loan Documents], or any right [of] foreclosure on the Land." (Compl. ¶¶156–58.) The Loan Documents conclusively foreclose each of these requests.

First, Borrower explicitly authorized Lender to "sell and assign participation interests . . . to . . . persons, parties or investors . . . as may be selected by [Lender] in its sole and absolute discretion[] on terms and conditions satisfactory to [Lender] in its sole and absolute discretion." (Ex. B § 40.) Borrower also broadly waived any rights to notice or consent, including as to the sale of a participation interest. (*See id.* § 41.) The Participation Agreement thus fully complies with the Loan Documents, and it does *not* "materially alter[]" any of Plaintiffs' obligations. (Compl. ¶156.) Nothing in the Participation Agreement modifies the Note's terms or changes Plaintiffs' obligations or rights under the Loan Documents in any way. (*See* Ex. C.)

Second, the Participation Agreement could not breach any alleged duty of good faith and fair dealing because no such duty exists under the applicable law and, in any event, no good-faith violation results from doing precisely what the Loan Documents authorize. To start, Texas law does not "overlay an implied duty of good faith and fair dealing . . . in the lender-borrower relationship." *Cockrell v. Republic Mortg. Ins. Co.*, 817 S.W.2d 106, 116 (Tex. App.—Dallas 1991, no writ). This forecloses Plaintiffs' requested relief because Texas law governs the enforcement of "remedies against Borrower under th[e] Deed of Trust, the Note, and under the

other Security Documents with respect to the property[.]" (Ex. B § 54(a) (emphasis omitted).) in addition, even if any implied good-faith duty applied, it "cannot negate express provisions of the agreement, nor is it violated where the contract terms unambiguously afford [a party] the right to exercise its absolute discretion." *Transit Funding Assoc., LLC v. Cap. One Equip. Fin. Corp.*, 149 A.D.3d 23, 29 (N.Y. 1st Dept. 2017). Here, the Deed of Trust expressly permitted Lender, in its sole discretion, to enter into the Participation Agreement. (Ex. B § 40.)

Finally, Plaintiffs do not identify anything that could entitle them to a declaration that the Participation Agreement's terms are "void." (Compl. ¶158.) HNGH and Lender "have the right to contract as they see fit as long as their agreement does not violate the law or public policy." *Bombardier,* 572 S.W.3d at 230. Plaintiffs do not allege the Participation Agreement violates the law or public policy, nor could they. Thus, Plaintiffs have "not alleged facts giving rise to a plausible claim for declaratory judgment," and this claim should be dismissed. *See Celanese v. OneBeacon Am. Ins.*, No. 3:15-CV-03822, 2016 WL 6496354, at *3 (N.D. Tex. May 20, 2016).

**B. Payments by HNGH do not "cure" Borrower's defaults.**

Plaintiffs also seek a declaration that Borrower's defaults "were cured by HNGH's voluntary payment of such sums." (Compl. ¶152.) This request does not square with the plain terms of the Loan Documents and Participation Agreement. (Ex. A–C.)

Plaintiffs ignore that Borrower's default under the Loan Documents is a condition precedent to HNGH making payments under the Participation Agreement. (Ex. C § 7.) Only if Borrower defaults does HNGH get into a position to make any "tax payments [or] interest payments." (Compl. ¶152.) Any such payments by HNGH have no effect on the relationship between Borrower and Lender, nor do they cure Borrower's defaults. HNGH's payments merely preserve its rights under the Participation Agreement. Further, HNGH cannot, without Lender's express permission, allow for the "cure of the default with respect to the loan"—and this provision

applies regardless of whether HNGH has made any payments. (Ex. C § 7(d)(xiii).)

Plaintiffs have not stated any plausible basis to rewrite both the Participation Agreement and Borrower's obligations under the Loan Documents, so this claim should also be dismissed.

### C. The Loan Documents foreclose Plaintiffs' "impossibility" theory.

Plaintiffs' final claim seeks a declaration that the Loan Documents' purpose was "frustrated and performance rendered impossible by the shutdown orders arising from COVID-19." (Compl. ¶162.) Again, the Loan Documents preclude the requested declaration.

Borrower's obligations under the Note "are and shall at all times continue to be *absolute and unconditional in all respects*." (Ex. A § 13 (emphasis added).) Borrower also broadly waived defenses to the Note's enforcement, including "any principles or provisions of law, statutory or otherwise" that could permit "any legal or equitable discharge of its obligations." (*Id.* § 33; *see* Ex. B § 70(cc) (representing that the "Loan Documents are not subject to any . . . defense").) These provisions bar Plaintiffs' requested declaration. *See, e.g.*, *Wells Fargo Nw. Bank, Nat'l. Ass'n. v. Varig-S.A.*, No. 02 Civ. 6078, 2003 WL 21508341, at *3 (S.D.N.Y. June 27, 2003) (holding that a contractual waiver of defenses barred arguments based on "commercial impracticability and/or impossibility"); *United States v. Herndon*, No. 11-318, 2012 WL 4718622, at *9 (S.D. Tex. Aug. 8, 2012) (recognizing that waiver clauses requiring full payment "regardless of any defenses or rights of set-off or counterclaims" are enforced).

## CONCLUSION

The Green Hollow Parties respectfully request that the Court dismiss the claims against them in the Complaint under Federal Rule of Civil Procedure 12(b)(6). The Green Hollow Parties further request all other relief to which they may be entitled.

Dated: November 25, 2020

Respectfully Submitted,

*<u>/s/ David H. Harper</u>*
David H. Harper
Texas State Bar No. 09025540
*David.Harper@haynesboone.com*
Ben L. Mesches
Texas State Bar No. 24032737
*Ben.Mesches@haynesboone.com*
Jason N. Jordan
Texas State Bar No. 24078760
*Jason.Jordan@haynesboone.com*
**HAYNES AND BOONE, LLP**
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
(214) 651-5000 (phone)
(214) 651-5940 (fax)

Rusty J. O'Kane
State Bar No. 24088149
*Rusty.Okane@wickphillips.com*
Zachary C. Farrar
State Bar No. 24093418
*Zachary.Farrar@wickphillips.com*
**WICK PHILLIPS GOULD & MARIN LLP**
3131 McKinney Avenue, Suite 100
Dallas, Texas 75204
(214) 692-6200 (phone)
(214) 692-6255 (fax)

***Attorneys for Defendants HNGH Turtle Creek, LLC, HN Green Hollow Capital Partners, LLC, Vipin Nambiar, and James G. Glasgow***

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served upon counsel of record through the Court's ECF system on November 25, 2020.

G. Michael Gruber, Esq.
J. Brian Vanderwoude, Esq.
**DORSEY & WHITNEY LLP**
300 Crescent Court, Suite 400
Dallas, Texas 75201
*gruber.mike@dorsey.com*
*vanderwoude.brian@dorsey.com*

*/s/ David H. Harper*
David H. Harper