**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **2999TC ACQUISITIONS, LLC f/k/a MO 2999 TC, LLC, AND TIMOTHY L. BARTON** | § | |
| **Plaintiffs** | § | |
| **v.** | § | **Case No. 3:20-cv-3229** |
| **2999 TURTLE CREEK, LLC, HNGH TURTLE CREEK, LLC, HN GREEN HOLLOW CAPITAL PARTNERS, LLC, MADISON REALTY CAPITAL, LP, VIPIN NAMBIAR, JAMES G. GLASGOW, JR., MARC ZEGEN, AND JOSHUA ZEGEN** | § | |
| **Defendants.** | § | |

**PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND APPLICATION FOR PRELIMINARY INJUNCTION**

2999TC Acquisitions, LLC f/k/a MO 2999 TC, LLC ("***2999TC***") and Timothy L. Barton ("***Barton***" or "***Guarantor***") (together, "***Plaintiffs***") file this *Motion for Expedited Discovery* ("***Motion for Expedited Discovery***") *in Support of Emergency Motion for Temporary Restraining Order and Application for Preliminary Injunction* ("***Motion for TRO***") (Doc. 17) against 2999 Turtle Creek, LLC ("***Turtle Creek***" or "***Lender***"), HNGH Turtle Creek, LLC ("***HNGH***"), HN Green Hollow Capital Partners, LLC ("***Green Hollow***"), Madison Realty Capital, LP ("***Madison***"), Vipin Nambiar ("***Nambiar***"), James G. Glasgow, Jr. ("***Glasgow***"), Marc Zegen ("***M. Zegen***"), and Joshua Zegen ("***J. Zegen***") (collectively, "***Defendants***") and respectfully show as follows:

## I. SUMMARY

This Motion for Expedited Discovery arises from an emergency motion filed with this Court to prevent a foreclosure on real property scheduled for January 5, 2021, and Plaintiffs' immediate need for additional evidence to support their application for a preliminary injunction to enjoin all further foreclosure efforts while this lawsuit is pending. In fact, the party originally seeking to foreclose no longer even owns the subject loan, having recently assigned its interest in bad faith to Plaintiffs' competitor—an assignment that occurred *after* the foreclosure notice was sent. Now that the original lender has been made whole, Plaintiffs' competitor has ended up with 100% ownership of the loan and, without this Court's intervention, stands to gain 100% ownership of the property pursuant to a fraudulent scheme set in motion by the lender and competitor from the beginning. Moreover, the loan itself has been the subject of two different collateral assignments to banks, giving rise to legitimate questions surrounding whose rights this foreclosure is even seeking to enforce, and which party—if any—has sustained a legal injury that would entitle it to foreclosure. The fast-moving and ever-changing nature of this transaction requires expedited discovery regarding the facts and intentions surrounding the fraud and bad-faith of Defendants to reassure the Court that it may property enjoin all further foreclosure efforts until Plaintiffs' claims can be resolved on the merits.

## II. BACKGROUND FACTS

Plaintiffs are borrower and guarantor under a deed of trust and security agreement ("***Loan***") with Turtle Creek on an exclusive parcel of land in Dallas, Texas ("***Land***"), on which Plaintiffs intended to develop a luxury hotel ("***Project***").[1] Plaintiffs initially borrowed a portion of the funds required to purchase the Land ($32.5 million), with the subsequent goal of raising additional funds

[1] *See* ECF No. 19, *Appendix in Support of Plaintiff's Motion for TRO*, Ex. A ¶ 3 [APP001-002].

within 1-2 years after the Loan funds to complete the Project.[2] While attempting to raise these additional funds, Turtle Creek and its parent company Madison sold a "junior participation interest" ("***B Note***") in Plaintiffs' Loan for $7 million—approximately 20% of the Loan value.

Although the sale of a junior subordinate participation interest is relatively common among institutional lenders, this particular "junior subordinate participant" was not any ordinary institutional investor (*i.e.*, a party seeking to earn passive income as part of a larger investment portfolio). Through Madison, Turtle Creek knowingly sold this B Note to HNGH, a party who openly intended to compete with Plaintiffs and stage a hostile takeover of the Project for itself. For context, a lender's sale of a participation interest to a competitor of the borrower has been held to be a bad faith transaction under New York law.[3] Thus, as a competitor, transferee/purchaser HNGH was not a proper transferee entity under the Deed of Trust, which plainly contemplates institutional investors.[4]

Without Plaintiffs' knowledge, Turtle Creek entered into a secret agreement with HNGH ("***Participation Agreement***"), in which Turtle Creek gave significant rights of control to HNGH—effectively converting it from a "junior participant" to a "senior lender." These rights materially altered the terms of Plaintiffs' Loan with Turtle Creek and completely undermined the relationship Plaintiffs' *thought* they had with Turtle Creek and Madison.[5]

Before entering into this secret Participation Agreement, the principals of HNGH (Glasgow and Nambiar) each met with Barton separately and pretended to be interested in becoming equity investors in the Project, inducing Barton to disclose confidential information about the Project that

[2] *See* ECF No. 19, Ex. A ¶¶ 4-5 [APP002].
[3] The Loan is governed by New York law. ECF No. 19, Ex. A-1 ¶ 16 [APP020]; *see Empresas Cablevision, S.A.B. de C.V. v. JPMorgan Chase Bank, N.A.*, 381 Fed. Appx. 117, 118 (2d Cir. 2010).
[4] *See* ECF No. 19, Ex. A-2 § 40 [APP057-058].
[5] *See* ECF No. 19, Ex. A ¶¶ 22, 33 [APP006, 008].

he would never have disclosed otherwise.[6] Despite their verbal agreements to keep this information confidential and to refrain from competing with the Project, Glasgow and Nambiar did just that.[7]

In the Participation Agreement, HNGH acquired exclusive rights to communicate with Borrower in the event of any default, the right to veto Lender's sale of the Loan to any party HNGH did not approve of, and the right to foreclose on the Land.[8] In the process, Madison cut a deal for itself and agreed to finance the Project for HNGH once it obtained control, and even agreed to indemnify HNGH for any legal issues that might arise from the Participation Agreement.[9] In sum, this deal was so far from a commercially reasonable "junior subordinate participation interest" that it is implausible for Madison or HNGH to argue otherwise. In fact, the Participation Agreement itself is proof that Turtle Creek and Madison took affirmative action to destroy the benefit of the bargain contemplated under the original Loan.

While the Participation Agreement was being negotiated, Madison entered into an agreement with Axos Bank whereby Madison assigned the Loan to Axos Bank in exchange for its own loan of $17.850 million ("***Axos Assignment***").[10] The Axos Assignment was executed on December 31, 2019, but for whatever reason, it appears that Axos Bank would not fund its loan to Madison until the Participation Agreement with HNGH was executed.[11]

As described in Plaintiffs' Original Complaint (Doc. 1) and in the Motion for Temporary Restraining Order (Docs. 17 & 18), after entering into the Participation Agreement, HNGH intentionally interfered with Plaintiffs' investors, draining Plaintiffs' liquidity, and then

[6] *See* ECF No. 19, Ex. A ¶¶ 6-14, 18-19 [APP002-006].
[7] *See id.*
[8] *See* ECF No. 19, Ex. A-10 §§ 7, 8(d) [APP113-117].
[9] *See id.*, at § 7(e) [APP115-116], Ex. A-12 [APP130-155].
[10] *See* ECF No. 19, Ex. D [APP374-378].
[11] *See* ECF No. 19, Ex. A-26 [APP338-351].

manufactured various defaults under the Loan in order to trigger the many control provisions in its favor.[12] Plaintiffs did not discover that Glasgow and Nambiar had been behind HNGH all along until bringing suit to obtain the Participation Agreement, which Turtle Creek and Madison had previously refused to provide.[13]

In consummation of Turtle Creek and Madison's bad-faith effort to enable HNGH to take over the Project, on December 8, 2020 (after posting the foreclosure), Turtle Creek assigned *all* of its remaining 80% interest in the Loan to HNGH ("***HNGH Assignment***"), who is now the sole servicer of the Loan.[14] Without action by this Court, Plaintiffs are entirely at the mercy of HNGH, a party whose sole goal is to foreclose on the Land so it can develop the property itself.

Although the Loan had been previously assigned to Axos Bank in the Axos Assignment,[15] to achieve the HNGH Assignment, HNGH appears to have borrowed the balance of the loan amount from Happy State Bank,[16] a banking institution that has oddly inserted itself into this lawsuit despite the bad-faith nature of the entire HNGH Assignment and the litigation surrounding the collateral (typically red flags for lenders).[17] It is unclear what effects the Axos Assignment and HNGH Assignment have on each other, whether the Loan is currently collateralizing multiple loans, and which party even has the right to pursue foreclosure at present.

Plaintiffs now seek to halt the pending foreclosure on January 5, 2021, and any further foreclosure efforts by Turtle Creek, HNHG, or any subsequent assignee, until this dispute is resolved. Toward that end, Madison, Turtle Creek, Glasgow, Nambiar, Green Hollow, HNGH, Axos Bank, and now, Happy State Bank, are all in possession of communications and other critical

---

[12] *See* ECF No. 18, *Brief in Support of Plaintiff's Motion for TRO*, ¶¶ 25-35.
[13] *See* ECF No. 19, Ex. A ¶ 36 [APP009].
[14] *See* ECF No. 19, Ex. A-27 [APP352-357]; Ex. E [APP379-383].
[15] *See* ECF No. 19, Ex. D [APP374-378].
[16] *See* ECF No. 19, Ex. F [APP384-389].
[17] *See* ECF No. 19, Ex. A ¶ 42 [APP010].

evidence that will support Plaintiffs' Application for Preliminary Injunction, which must be obtained through expedited discovery.

## III. ARGUMENTS & AUTHORITIES

A district court has broad discretion in all discovery matters and may order expedited discovery upon a showing of good cause. *See* FED. R. CIV. P. 26(D)(1); *Moore v. CITGO Red. & Chemicals Co., L.P.*, 735 F.3d 309, 315 (5th Cir. 2013). Expedited discovery may be appropriate in cases involving a pending request for preliminary injunction. *See Intel Corp. v. Rais*, 2019 U.S. Dist. LEXIS 4932, at *18 (W.D. Tex. Jan. 10, 2019) (citing *El Pollo Loco, S.A. de C.v. v. El Pollo Loco, Inc.*, 344 F. Supp. 2d 986 (S.D. Tex. 2004)).

In evaluating requests for expedited discovery, courts apply a reasonableness or good cause standard, considering the totality of circumstances. *Id.* Under this standard, courts "consider the reasonableness of the request in light of the entire record to date and all of the surrounding circumstances." *Legacy of Life, Inc. v. American Donor Services, Inc.*, No. SA-06-CA-0802-XR, 2006 WL 8435983, at *1 (W.D. Tex. Oct. 10, 2006). Factors considered in determining reasonableness include: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Id.*; *Rais*, 2019 U.S. Dist. LEXIS 4932, at *18-19.

Good cause exists for ordering the reasonable expedited discovery requested by Plaintiffs. As a preliminary matter, the Loan is governed under the laws of New York.[18] Under New York law, every contract contains the implied covenant of good faith and fair dealing, which "embraces the pledge that neither party will do anything which will have the effect of destroying

---

[18] *See* ECF No. 19, Ex. A-1 ¶ 16 [APP020].

or injuring the right of the other party to receive the fruits of the contract." *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 773 N.E.2d 496, 500 (N.Y. 2002). This duty includes "any promises which a reasonable person in the position of the promise would be justified in understanding were included" in the contract. *Id.* at 501.

Here, Madison induced Barton and 2999TC to enter into the Loan by promising to find equity investors for the Project and by securing a first right of refusal on the construction loan for the subsequent development.[19] By all outward appearances, Plaintiffs were justified in believing that Madison intended for the Project to be successful and that Madison intended for all parties involved in the Loan (Madison, Turtle Creek, 2999TC, and Barton) to receive the fruits of the Loan through the completion of the Project.[20] Instead, almost immediately after the September 2019 closing on the Loan (if not before), Madison was secretly working with Plaintiffs' competitors to secure a vehicle for these competitors to take over the Project. Regardless of any alleged defaults by Plaintiffs under the Loan, Madison and Turtle Creek's negotiations with HNGH and its principals began at least four months (or more) before the first alleged default.[21] Tellingly, these negotiations focused heavily on the prospect of foreclosure by HNGH and its projected returns following foreclosure—clearly reflecting HNGH's obvious intentions for entering the Participation Agreement and Madison's knowing consent.[22]

Under the facts of this case, the factors courts consider when granting expedited discovery weigh decidedly in Plaintiffs' favor. *See Legacy of Life*, 2006 WL 8435983, at *1. First, a preliminary injunction is pending. Second, the discovery requests (described below) are narrowly

[19] *See* ECF No. 19, Ex. A ¶ 5 [APP002].
[20] *See id.*
[21] *See* ECF No. 19, Ex. A-4 [APP092] (Oct. 24, 2019 Email from Glasgow to Nambiar about B Note offer from Madison); *but see* ECF No. 19, Ex. A-13 [APP156-159] (first alleged default not until Apr. 1, 2020).
[22] *See* ECF No. 19, Ex. A-22 [APP322-327].

tailored to discover the Defendants' intent in entering into the Participation Agreement, and the intent of nonparties Axos Bank and Happy State Bank in entering into their respective Assignments. Third, the purpose for requesting the expedited discovery is to better enable the Court to evaluate the parties' interests and the respective chances for success on the merits, and to establish that maintaining the status quo is the proper course of action until the case can be decided on its merits. Fourth, the burden on Defendants in producing this material is merely shifting up the timeframe by a few weeks versus "regular" discovery that would have been propounded on these parties following all Defendants' answers in January.

In sum, the Participation Agreement and Assignment constitute bad faith under New York law. If allowed to proceed, the foreclosure will reward Defendants for their bad faith, theft of trade secrets, and other tortious conduct and completely extinguish all possibility of relief for Plaintiffs.

## IV. REQUESTED DISCOVERY

In order to reassure the Court that it is justified in preserving the status quo through by issuing a preliminary injunction, Plaintiffs request that the Court grant the following expedited discovery.

### A. Depositions

Plaintiffs request that they be permitted to schedule the depositions of Glasgow, Nambiar, Josh Zegen, and a corporate representative of Happy State Bank in Dallas, Texas, or to be taken virtually, during the week of January 4-8, 2021, or any other date that is agreeable between the parties before a hearing on the preliminary injunction.

**B. Written Discovery**

Plaintiffs further request that they be able to immediately serve the document requests below, and that Defendants be ordered to fully comply with the document requests within five days of being served.

The expedited discovery that Plaintiffs request is reasonable in scope and narrowly tailored to obtain relevant evidence for Plaintiffs' Application for Preliminary Injunction. Specifically, Plaintiffs seek the following categories of documents from Defendants:

1. All documents, communications, and materials that discuss or refer to the Land, the Loan, or the Project in any manner.
2. All documents, communications, and materials that pertain to the B Note purchase or the Participation Agreement in any manner, including any amendments to the Participation Agreement.
3. All documents, communications, and materials that pertain to the Assignment that occurred on December 8, 2020.
4. All documents, communications, and materials that pertain to any prior loans, investments, or other transactions involving Madison, on the one hand, and Green Hollow, Nambiar, Glasgow, and/or HN Capital Finance, LLC, on the other hand.
5. (From HNGH and Green Hollow) A copy of the company's corporate formation and governance documents.

Plaintiffs also seek the following documents from Madison:

1. All documents, communications, and materials that pertain to Turtle Creek's collateral assignment of the Loan Documents to Axos Bank on December 31, 2019.
2. In addition to the assignment identified above, all other documents and communications with Axos Bank pertaining to any other assignments or transactions regarding the Land, Loan, or Project in any manner.

Plaintiffs also seek the following documents from Happy State Bank:

1. A copy of the Letter Loan Agreement, Promissory Note, and any other "Loan Documents" as defined in the Collateral Transfer of Note and Lien between Happy State Bank and HNGH dated December 4, 2020.

2. All documents and materials that discuss or refer to the Collateral Transfer of Note and Lien or any "Loan Documents," as defined therein, including all communications between Happy State Bank and any Defendant in this lawsuit.

3. All documents and materials that reflect or refer to the due diligence process that Happy State Bank undertook before entering into the "Loan Documents," as defined in the Collateral Transfer of Note and Lien, including appraisals, title searches, and all communications.

4. All documents and materials that discuss or refer to Plaintiff Timothy Barton in any manner.

Plaintiffs also seek the following documents from Axos Bank:

1. A copy of the Loan and Security Agreement, and any other documents comprising the "Loan Agreement" as defined in the Notice of Collateral Assignment of Deed of Trust and Loan Documents between Turtle Creek and Axos Bank, dated December 31, 2019.

2. All documents and materials that discuss or refer to the Notice of Collateral Assignment of Deed of Trust and Loan Documents or any "Loan Documents," as defined therein, including all communications between Axos Bank and any Defendants in this lawsuit.

## V. CONCLUSION

Plaintiffs ask the Court to grant their Motion for Expedited Discovery and order Defendants to comply with the enumerated requests within five days of service. Dated: December 22, 2020.

Respectfully submitted,

*/s/ G. Michael Gruber*
**G. Michael Gruber, Esq.**
Texas Bar No. 08555400
gruber.mike@dorsey.com
**J. Brian Vanderwoude, Esq.**
Texas Bar No. 24047558
vanderwoude.brian@dorsey.com

**DORSEY & WHITNEY LLP**
300 Crescent Court, Suite 400
Dallas, Texas 75201
(214) 981-9900 Phone
(214) 981-9901 Facsimile

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2020, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

*/s/ G. Michael Gruber*
G. Michael Gruber, Esq.