**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| 2999TC ACQUISITIONS, LLC f/k/a MO 2999 TC, LLC, AND TIMOTHY L. BARTON, | § | |
| *Plaintiffs*, | § | |
| v. | § | C.A. No. 3:20-CV-3229 |
| 2999 TURTLE CREEK, LLC, HNGH TURTLE CREEK, LLC, HN GREEN HOLLOW CAPITAL PARTNERS, LLC, MADISON REALTY CAPITAL, LP, VIPIN NAMBIAR, JAMES G. GLASGOW, JR., MARC ZEGEN, AND JOSHUA ZEGEN, | § | |
| *Defendants*. | § | |

**GREEN HOLLOW DEFENDANTS' RESPONSE AND BRIEF IN SUPPORT TO PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

Rusty J. O'Kane
Texas Bar No. 24088149
*rusty.okane@wickphillips.com*
Zachary C. Farrar
Texas Bar No. 24093418
*zachary.farrar@wickphillips.com*

**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 100
Dallas, Texas 75204
Tel. (214) 692-6200
Fax. (214) 692-6255

**ATTORNEYS FOR DEFENDANTS HNGH TURTLE CREEK, LLC, HN GREEN HOLLOW CAPITAL PARTNERS, LLC, VIPIN NAMBIAR, AND JAMES G. GLASGOW**

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... iii

LIST OF APPENDICES ..... v

I. INTRODUCTION ..... 1

II. BRIEF FACTUAL CORRECTION ..... 4

A. It is undisputed that Borrower defaulted under the Loan Documents. ..... 5

B. The state court judge appropriately denied the application for temporary injunction because there is no likelihood of success on the merits and there is no risk of irreparable harm. ..... 7

III. ARGUMENTS AND AUTHORITIES ..... 8

A. Plaintiffs' entire basis for a TRO rests on state law causes of action that have already been litigated in a forum where Plaintiffs failed to show a substantial likelihood of success on the merits. ..... 10

B. For the reasons outlined and more fully briefed in their Motion to Dismiss, Plaintiffs have not and cannot show they are substantially likely to succeed on the merits of their claims. ..... 10

1. Plaintiffs are not likely to succeed on the merits of their good faith and fair dealing claim. ..... 11

2. Plaintiffs are not likely to succeed on the merits of their claim for fraud. ..... 12

3. Plaintiffs are not likely to succeed on the merits of their claim for tortious interference. ..... 14

4. Plaintiffs are not likely to succeed on the merits of their claim for conspiracy. ..... 15

C. Plaintiffs' 11th hour "emergency" undermines their conclusory assertion that there is a substantial threat that irreparable harm will result if the injunction is not granted. ..... 16

D. Plaintiffs' bad faith litigation conduct and unclean hands negates awarding them extraordinary equitable relief. ..... 16

IV. PRAYER FOR RELIEF ..... 18

CERTIFICATE OF SERVICE ..... 19

# TABLE OF AUTHORITIES

**Cases**

*Agar Corp. v. Electro Circuits Int'l*,
580 S.W.3d 136 (Tex. 2019)........................................................................................ 15

*Alpha Adventure Ranch at Nocona, LLC v. Warrior Golf Mgmt., LLC*,
02-19-00030-CV, 2019 WL 6768123 (Tex. App.—Fort Worth Dec. 12, 2019, no pet.)......... 10

*Apple Barrel Prods., Inc. v. Beard*,
730 F.2d 384 (5th Cir. 1984) .......................................................................................... 9

*Branch Banking & Tr. Co. v. TCI Luna Ventures*,
No. 05-12-00653-CV, 2013 WL 1456651 (Tex. App.—Dallas Apr. 9, 2013,
no pet.) (op. on reh'g) ..................................................................................................... 10

*Byrum v. Landreth*,
566 F.3d 442 (5th Cir. 2009) .......................................................................................... 9

*Coldwell Banker Assocs. v. Ryan Equity Partners Ltd.*,
181 S.W.3d 879 (Tex. App.–Dallas 2006, no pet.).......................................................... 13

*Empresas Cablevision, S.A.B. de C.V. v. JPMorgan Chase Bank, N.A.*,
680 F. Supp. 2d 625 (S.D.N.Y.)............................................................................... 11, 12

*Enter. Int'l, Inc. v. Corporation Estatal Petrolera Ecuatoriana*,
762 F.2d 464 (5th Cir. 1985) .......................................................................................... 9

*Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*,
51 S.W.3d 573 (Tex.2001)............................................................................................... 13

*Fed. Land Bank Ass'n v. Sloane*,
825 S.W.2d 439 (Tex.1991)............................................................................................. 13

*Forest Oil Corp. v. McAllen*,
268 S.W.3d 60- (Tex. 2008) ............................................................................................ 14

*Haase v. Glazner*,
62 S.W.3d 795 (Tex.2001)............................................................................................... 13

*Holland Am. Ins. Co. v. Succession of Roy*,
777 F.2d 992 (5th Cir. 1985) .......................................................................................... 9

*John Paul Mitchell Sys. v. Randalls Food Mkts., Inc.*,
17 S.W.3d 721 (Tex. App.—Austin 2000, pet. denied).................................................... 15

*Keystone Driller Co. v. General Excavator Co.*,
290 U.S. 240 (1933)......................................................................................................... 17

*Landry's Seafood Inn & Oyster Bar-Kemah, Inc. v. Wiggins*,
919 S.W.2d 924 (Tex. App.—Houston [14th Dist.] 1996, no pet. .......................................... 18

*Mississippi Power and Light Co. v. United Gas Pipeline*,
760 F.2d 618 (5th Cir. 1985) .......................................................................................... 9, 10

*PCI Transp. Inc. v. Fort Worth & W.R.R. Co.*,
418 F.3d 535 (5th Cir. 2005) ................................................................................................ 9

*Perdomo v. Mortgage Elec. Registration Sys. Inc.,*
3:15-CV-2075-N-BK, 2015 WL 9487864 (N.D. Tex. Oct. 29, 2015) .................................... 15

*Prime Income Asset Mgmt. Inc. v. One Dallas Ctr. Associates LP*,
358 Fed. Appx. 569 (5th Cir. 2009)..................................................................................... 13, 14

*Sare Lee Household & Pers. Care UK Ltd. v. Almay, Inc.*,
No. 92 CIV. 2042 (KTD), 1992 WL 309572 (S.D.N.Y. Oct. 9, 1992) ................................... 18

*Schlumberger Tech. Corp. v. Swanson*,
959 S.W.2d 171 (Tex. 1997)............................................................................................... 13

*Suver v. Pratt, CIV.A.*,
C-10-99, 2010 WL 1371552 (S.D. Tex. Apr. 6, 2010)........................................................... 18

**Statutes**

TEX. BUS. & COM. CODE § 27.01(a)(1)(B), (a)(2)(D)............................................................ 13

## LIST OF APPENDICES[1]

In addition to the Appendices attached to Plaintiffs' Motion for Temporary Restraining Order and Application for Preliminary Injunction and Brief in Support, the Green Hollow Parties hereby attach the following additional Appendices for the Court's review and consideration:

| | |
|---|---|
| **APPENDIX A** | Findings of Fact and Recommendations, dated November 5, 2020 |
| **APPENDIX B** | Order Denying Plaintiff's Application for Temporary Injunction, dated August 20, 2020 |
| **APPENDIX C** | Correspondence regarding real estate tax default, dated March 24, 2020 |
| **APPENDIX D** | Correspondence regarding notice of default, dated July 6, 2020 |
| **APPENDIX E** | Correspondence regarding notice of default, dated August 10, 2020 |
| **APPENDIX F** | Complete Hearing Transcript on Plaintiff's Supplemental Application for TRO, Temporary Injunction, and Permanent Injunction, dated August 3, 2020 |

[1] The Appendices are cited herein as "APP" to identify specific pages where the references can be located. Note that the APP citations are in the lower righthand corner of the PDF, but do not correspond to the PDF page number because of the cover sheet included with the appendix.

Defendants HNGH Turtle Creek, LLC ("HNGH"), HN Green Hollow Capital Partners, LLC ("Green Hollow"), Vipin Nambiar ("Nambiar"), and James G. Glasgow ("Glasgow")[2] (collectively, the "Green Hollow Parties") hereby file their Response to Plaintiffs 2999TC Acquisitions, LLC's ("Borrower" or "2999TC") and Timothy Barton's ("Barton") (together, "Plaintiffs") Motion for Temporary Restraining Order and Application for Preliminary Injunction and Brief in Support (together, the "Motion"), and in support thereof would show the Court as follows:

## I.
## INTRODUCTION

Plaintiffs' request for a TRO is deeply and facially flawed with respect to the heavy burden imposed on applicants for injunctive relief. This is now Plaintiffs' fourth bite at the apple in a third forum—again trying to stop a properly noticed foreclosure sale despite the undisputed fact that Borrower defaulted ***several times*** under a Secured Promissory Note ("Note"), and a Deed of Trust, Security Agreement, and Fixture Filing ("Deed of Trust," collectively with the Note, "Loan Documents"), which have never been cured. The Loan Documents are secured by 2.47 acres of land located at 2999 Turtle Creek, Dallas, Texas (the "Property"). Plaintiffs' arguments are nothing new—they have been making these same factually inaccurate and legally defective arguments since April 2020 and there is no basis to grant the extraordinary remedy of injunctive relief. Moreover, by waiting until weeks after the foreclosure notice was first posted in November, Plaintiffs reveal their true motive—a staged emergency to create a costly diversion designed to burden the Defendants rather than vindicate any legitimate right.

[2] Glasgow hereby incorporates his Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(2) and makes this Response subject to his Motion to Dismiss and does not intend to waive personal jurisdiction.

As an initial matter, Plaintiffs ask this Court to "immediately suspend a pending foreclosure sale . . . for, at least, the following reasons: (1) the Loan is not in default and (2) is over-collateralized, such that there is no harm, pending, threatened, or otherwise. Motion, p. 1. To be clear, the value of the Property has nothing to do with lender's right to enforce its foreclosure remedies where a loan is in default (and has been in default since February 1). Separately, though, Plaintiffs (through their counsel) have already admitted, in a prior hearing on the same exact issues, that Borrower is, in fact, in default under the loan:

> THE COURT: Is your client prepared to make -- I assume that there is some amount that you acknowledge that is due and owing and is past due, correct?
>
> MS. BRANDON: That's -- That is correct, Your Honor.

**Appendix F**, TRO Trans. 16:5-10 (App. 67).

At the same August 3 hearing on a TRO, Plaintiffs also admitted (through counsel) that they never paid the taxes that were due and had not made any payment since February 1, 2020:

> THE COURT: That wasn't what I asked you. No payments have been made since February 1st; is that right?
>
> MS. BRANDON: That's -- That's correct.

**Appendix F**, TRO Trans. 21:18-21 (App. 72).

Plaintiffs also admit in their Motion itself that the Loan Documents are in default. *See* Motion, ¶ 25, sub-heading D (stating that, "Madison and HNGH then conspired ***to cause Plaintiff***

***to default under the Loan***, so that HNGH Could Acquire the Project, which Madison Would Finance") (emphasis added). In other words, Borrower admits that it is in default; it simply blames the Defendants for its failure to pay. The simple fact is that Borrower borrowed money from lender. Borrower failed to pay lender under the terms of the Loan Documents. Now Borrower has filed a lawsuit alleging that lender and the Green Hollow Parties somehow conspired to cause Borrower not to fulfill its contractual obligations.

Every single one of Plaintiffs' claims fails, first, because ***Plaintiffs have no trade secrets***. Barton admits that he and Lender were meeting with investors and he was openly discussing his plans for the Property. *See* Barton Decl., ¶¶ 6-14, Doc. 19-1 at 3-5. Plaintiffs' "proprietary" techniques and methods are based on standards promulgated by industry and regulatory bodies, including standard information required by lenders before loaning $32,500,000 for a development project. Even if they were not, Barton has a history of detailing his development plans at length to anyone who will listen. He even admits in his declaration that he disclosed his construction plans, investment strategy, and identities of investors—all of which is required to a lender, anyway—without requiring anyone to sign a non-disclosure or confidentiality agreement. In other words, Barton claims that his purported trade secrets were so confidential that he did nothing to maintain their secrecy. Barton's failure to secure his manufactured "trade secrets" is fatal to his claim.

Setting aside these fundamental factual flaws, each of Plaintiffs' causes of action is also legally infirm. Plaintiffs do not even seek a TRO on their federal cause of action, which is already subject to dismissal under Rule 12(b)(6). Instead, Plaintiffs seek a TRO based only on their claims for (1) breach of good faith and faith dealing; (2) fraud; (3) tortious interference; and (4) conspiracy—all of which are state court causes that Plaintiffs have already failed to prove a substantial likelihood of success in another court.

Plaintiffs' Motion is insufficient because: (1) the Barton Declaration is based, in part, "upon information and belief," provides inadequate detail regarding the basis for his verification, is speculative, and purports to verify hyperbolic allegations and legal conclusions, not factual statements; (2) Plaintiffs have not shown a substantial likelihood of success on the merits of a federal cause of action such that this Court would have jurisdiction to issue a TRO; (3) the balance of hardships weighs heavily in favor of denying a TRO, particularly where *Defendants* have been significantly damaged while defending against Borrower's meritless arguments since April; and (4) the public interest is disserved by precluding a lender from exercising its contractual right to foreclose on defaulted property. The Green Hollow Parties, therefore, respectfully request that this Court deny Plaintiffs' Motion.

## II. BRIEF FACTUAL CORRECTION

Rather than painstakingly discuss the myriad factual inaccuracies in the Motion (of which there are many), the Green Hollow Parties incorporate by reference the factual background in their Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6), Doc. 10, as well as the November 5, 2020 Findings of Fact entered by The Honorable Judge Eric Moye, 14th District Court, Dallas County, following an evidentiary hearing on the same issues as those presented by the Motion. *See* Findings and Conclusions, attached hereto as **Appendix A** at p. 5, ¶ 4 (App. 006) (noting that, "the evidence admitted in this case is that (i) the face value of the Note is $32,500,000, (ii) the Note is fully matured an unpaid, and (iii) interest has been accruing on the Note at the default rate of 24% ***since February 2020, when the borrower first went into default***.") (emphasis added).

**A. It is undisputed that Borrower defaulted under the Loan Documents.**

Lost in the dozens of pages of Plaintiffs' Motion is the undisputed fact that these issues have already been decided by a Texas state court judge. Plaintiffs' claims do not arise under any federal statute and Plaintiffs have failed to plead claims for which relief could be granted. *See* Motion to Dismiss, Doc. 10. Specifically, Judge Moye held two evidentiary hearings. First, Judge Moye denied Borrower's application for temporary injunction on August 20, 2020, because Plaintiffs were unable to show a substantial likelihood of success on the merits of the ***same claims*** alleged here. *See* Order Denying Plaintiff's Application for Temporary Injunction, attached hereto as **Appendix B** (App. 011). Second, he issued findings and recommendations on November 5, 2020, which were requested by the Dallas Court of Appeals. **Appendix A** (App. 002-009). In making his findings, Judge Moye specifically found that, "Plaintiff has been in default since February 1, 2020, and has not made any payments under the Note or Deed of Trust since that time. The Court finds there is no good cause for the default and Lender is entitled to exercise the rights identified in the Note and Deed of Trust." **Appendix A** (App. 008, ¶ 7).

On or about September 18, 2019, Borrower executed the Deed of Trust and Note in favor of 2999 Turtle Creek, LLC ("Lender"), an affiliate of Madison Realty Capital ("Madison"). **Appendix A** (App. 008, ¶¶ 1-4). On February 1, 2020, Borrower defaulted on the Deed of Trust and Note, but somehow concocted theories to initially sue junior participants under the Loan Documents, including HNGH.[3] *See* Compl. Ex. B §§ 40–41; *see also* Cause No. DC-20-05864,

[3] Borrower also sued other non-signatories to the Loan Documents, including HN Green Hollow Capital Partners, LLC, Vipin Nambiar, and William Hutchinson (together with HNGH, "Green Hollow Parties" or "Participants"). In the instant federal complaint, Borrower has simply replaced Hutchinson with James Glasgow. HNGH was not a signatory to the Loan Documents, but rather held a junior participation interest in Borrower's Loan with Lender pursuant to a Participation Agreement. *See* Doc. 19-2 at 143-147. On or about December 7, 2020, Lender assigned the entirety of its interest in the Loan Documents to HNGH Turtle Creek, giving HNGH the exclusive right to foreclose on the Property. Motion, ¶ 39.

14th Dist. Ct., Dallas Cty., Tex.[4] Under the Participation Agreement, Lender assigned a participation interest in the Loan and Deed of Trust to HNGH in exchange for, among other things, HNGH's payment of $7,000,000.00 to Lender. *See* Compl., Ex. C, p. 3, § 2; Doc. 19-1 at 120. The Participation Agreement had no impact on Plaintiffs' rights or obligations under the Loan Documents. Instead, the Participation Agreement simply permitted HNGH to take certain actions on behalf of Lender in the event Borrower defaults on the Note and HNGH fulfills its own obligations to the Lender. *See* Compl., Ex. C, p 7-11 § 7; Doc. 19-1 at 124-128.

Borrower defaulted on the Loan Documents on February 1, 2020, when it failed to pay property taxes. *See* March 24 Notice of Default, attached hereto as **Appendix C** (App. 014-016); *see also* Compl., ¶ 45. Borrower defaulted again on July 1, 2020, and again on August 3, 2020, when it failed to make the required interest payments under the Loan Documents. *See* July 6 and August 10 Notices of Foreclosure Sale, attached hereto as **Appendix D** (App. 18-37) **and E** (App. 39-50), respectively.

Further, and perhaps more importantly, Borrower did not dispute that as of August 3, 2020, it was, in fact, in default under the Loan:

> THE COURT: Is your client prepared to make -- I assume that there is some amount that you acknowledge that is due and owing and is past due, correct?
>
> MS. BRANDON: That's -- That is correct, Your Honor.

**Appendix F**, TRO Transcript, 16:5-10 (App. 67); *see also* 21:18-21 (App. 72)

---

[4] The state court public records are accessible at: https://courtsportal.dallascounty.org/DALLASPROD/ → "Smart Search" → "DC-20-05864".

To date, Borrower has not paid the taxes on the Property or made a single interest payment. After HNGH contacted Borrower about this issue and was unable to get confirmation that Borrower would cure the default by paying the taxes, HNGH acted on its rights under the Participation Agreement and made the tax payment. Doc. 1 at 15, 17 (Compl., ¶¶ 48, 50). HNGH then sought to recoup this payment and interest due under the Note. *Id.* ¶ 48.

**B. The state court judge appropriately denied the application for temporary injunction because there is no likelihood of success on the merits and there is no risk of irreparable harm.**

Plaintiffs assert 17 different causes of action in this lawsuit, but ***only one*** cause of action (Misappropriation of Trade Secrets under Defense of Trade Secrets Act) purports to confer federal question jurisdiction on the Court. There is no diversity jurisdiction, and the Misappropriation claim is subject to dismissal. *See* Motion to Dismiss, Doc. 10. While Plaintiffs only assert a single federal question cause of action, their TRO application argues they have a likelihood of success on the merits for the ***non-federal*** causes of action (*e.g.*, breach of covenant of good faith and fair dealing, fraud, conspiracy, and tortious interference). These questions have already been decided and they were unable to show a likelihood of success on the merits. Importantly, though, Plaintiffs make no mention whatsoever that they will prevail on the cause of action that would confer jurisdiction on this Court to enter the TRO in the first place. *See* Motion, generally.

Borrower proceeded with an Application for Temporary Injunction on August 19, 2020, asking Judge Moye to enjoin the foreclosure sale based on the same claims. *See* Findings and Conclusions, **Appendix B** (App. 011). The undisputed evidence presented at the temporary injunction hearing revealed that Borrower was still in default under the Loan Documents, Borrower failed to cure its defaults, and the foreclosure notice was properly sent. *See* **Appendix A**, p. 7-8 (App. 008-009). Accordingly, the trial court denied the Application for Temporary Injunction on August 20, 2020. **Appendix B** (App. 011).

This action is virtually identical to the unsuccessful state lawsuit. The allegations are the same. Plaintiffs merely added a claim under the federal Defend Trade Secrets Act to try to manufacture federal jurisdiction—but they fail to show a substantial likelihood of success on the merits of the federal cause of action.[5] If Plaintiffs cannot succeed on the Motion to Dismiss (Doc. 10), the Court would not have any basis to exercise jurisdiction.

There is no dispute that (1) Borrower owed real property taxes on the Property securing the Loan; (2) Borrower failed to pay its taxes when due on January 31, 2020; (3) such failure was an immediate and automatic default under the Loan Documents governing the Loan; (4) HNGH, on behalf of Lender, paid $345,907.84 in taxes as a protective advance pursuant to the Lender's rights in the Loan Documents in April 2020—which payment was within Lender's rights, and thus within the rights assignable by Lender; (5) Borrower defaulted again on July 1, 2020, and again on August 3, 2020, when it failed to make the required interest payments under the Loan Documents; and (6) the Note matured on October 1, 2020, and Borrower failed to pay the amounts owed under the Note, including principal or interest, and therefore defaulted under the Loan Documents again. To date, Borrower has failed to make a single payment under the Loan Documents.

## III.
## ARGUMENTS AND AUTHORITIES

The decision to grant or deny a temporary injunction is within the trial court's sound discretion and can be reversed on appeal only if it represents a clear abuse of discretion. *Apple Barrel Prods., Inc. v. Beard*, 730 F.2d 384, 386 (5th Cir. 1984). Issuing a temporary restraining

[5] Plaintiffs also added Glasgow, Marc Zegen, and Joshua Zegen as defendants, while omitting Hutchinson (despite still complaining about his conduct). Compl., Doc. 1 at 3-4, ¶¶ 9–12. Glasgow—who lives and works in New York and has not availed himself of this forum—joins in this motion subject to his separate motion to dismiss the claims against him for lack of personal jurisdiction. (Dkt. #9.)

order or a preliminary injunction is an "extraordinary and drastic remedy." *Enter. Int'l, Inc. v. Corporation Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985) (internal quotation omitted). There are four prerequisites for the extraordinary relief of preliminary injunction or temporary restraining order:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009) (internal quotation omitted). The party seeking such relief must satisfy the burden of proving each of the four elements before a temporary restraining order or preliminary injunction can be granted. *Mississippi Power and Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985); *PCI Transp. Inc. v. Fort Worth & W.R.R. Co*., 418 F.3d 535, 545 (5th Cir. 2005).

Because a preliminary injunction is considered an "extraordinary and drastic remedy," it is not granted routinely, "but only when the movant, by a clear showing, carries the burden of persuasion." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985). The decision to grant or deny preliminary injunctive relief is left to the sound discretion of the district court. *Mississippi Power & Light Co.*, 760 F.2d at 621. In fact, the decision to grant a preliminary injunction is treated as the exception rather than the rule. *Mississippi Power & Light*, 760 F.2d at 621. The Court here should not be the exception. In their Motion, Plaintiffs recognize and recite the requirements for injunctive relief, but fail to prove all of the elements required. They simply make conclusory allegations to argue that they will likely prevail on the merits, but do not identify any factual or legal basis for their likelihood of success, the balancing of the equities in a case they have dragged on for nearly a year, or how this injunction would serve the public interest.

**A. Plaintiffs' entire basis for a TRO rests on state law causes of action that have already been litigated in a forum where Plaintiffs failed to show a substantial likelihood of success on the merits.**

As noted above, these issues have been extensively litigated for the last eight (8) months in another forum where Borrower made these same frivolous arguments. The state trial court rejected Borrower's arguments and denied its request for a temporary injunction. Order of Aug. 20, 2020. As Plaintiffs acknowledge, Borrower defaulted by not paying the taxes by the due date and still—to date—has not paid the taxes. *Id.* ¶47; *see* Findings and Conclusions, **Appendix A** at p. 5, ¶ 4 (App. 6) (noting that, "the evidence admitted in this case is that (i) the face value of the Note is $32,500,000, (ii) the Note is fully matured an unpaid, and (iii) interest has been accruing on the Note at the default rate of 24% ***since February 2020, when the borrower first went into default***.") (emphasis added). For the same reasons found by Judge Moye, this Court should not be persuaded by Plaintiffs' desperate ploy to avoid the consequences of their default and prevent the Green Hollow Parties from exercising their rights under the Loan Documents.

**B. For the reasons outlined and more fully briefed in their Motion to Dismiss, Plaintiffs have not and cannot show they are substantially likely to succeed on the merits of their claims.**

With regard to a foreclosure, the party seeking the injunction must establish a probable right to recovery based on a lienholder's ***wrongful attempt*** to foreclose. *Alpha Adventure Ranch at Nocona, LLC v. Warrior Golf Mgmt., LLC*, 02-19-00030-CV, 2019 WL 6768123, at *2 (Tex. App.—Fort Worth Dec. 12, 2019, no pet.) (citing *Branch Banking & Tr. Co. v. TCI Luna Ventures*, No. 05-12-00653-CV, 2013 WL 1456651, at *5 (Tex. App.—Dallas Apr. 9, 2013, no pet.) (op. on reh'g)) ("Because BB & T demonstrated that TCI Luna did not establish a probable right to recover on its wrongful foreclosure claims, the temporary injunction order is not supportable on this basis."). In Tim Barton's entire Declaration attached to the Motion, he never once shows that the Loan Documents are not in default. He admits that the taxes weren't paid and the records attached

hereto reveal that Borrower defaulted ***numerous times*** and has never made any defaulted interest payment. *See* Doc. 19-1 at 2-12.

Setting aside Plaintiffs' fundamental factual flaws, each of Plaintiffs' causes of action is also legally infirm. Plaintiffs do not even seek a TRO on their federal cause of action, which is already subject to dismissal under Rule 12(b)(6). Instead, Plaintiffs seek a TRO based only on their claims for (1) breach of good faith and faith dealing; (2) fraud; (3) tortious interference; and (4) conspiracy—all of which are likewise subject to the Green Hollow Parties' Motion to Dismiss. Accordingly, the Green Hollow Parties hereby incorporate by reference the arguments and contentions outlined in their Motion to Dismiss as if fully set forth herein. Briefly, however, the Green Hollow Parties point out the following specific flaws with Plaintiffs' Motion for TRO.

**1. Plaintiffs are not likely to succeed on the merits of their good faith and fair dealing claim.**

To support their argument for good faith and fair dealing, Plaintiffs rely on *Empresas Cablevision*. *Empresas Cablevision, S.A.B. de C.V. v. JPMorgan Chase Bank, N.A.*, 680 F. Supp. 2d 625, 631–32 (S.D.N.Y.), *aff'd and remanded*, 381 F. App'x 117 (2d Cir. 2010). Here, Plaintiffs' reliance on *Empresas Cablevision* is misplaced because Plaintiffs fail to describe how the present case constitutes a forbidden assignment—the crux of the *Empresas Cablevision* decision. *See* Doc. 18 at 21.

First, Borrower explicitly authorized Lender to "sell and assign participation interests . . . to . . . persons, parties or investors . . . as may be selected by [Lender] in its sole and absolute discretion[] on terms and conditions satisfactory to [Lender] in its sole and absolute discretion." Compl., Ex. B § 40. Borrower also broadly waived any rights to notice or consent, including as to the sale of a participation interest. *See id.* § 41. The Participation Agreement thus fully complies with the Loan Documents, and it does *not* "materially alter[]" any of Plaintiffs' obligations.

Compl., ¶156. In contrast to the facts in *Empresas*, nothing in the Participation Agreement modifies the Note's terms or changes Plaintiffs' obligations or rights under the Loan Documents in any way. *See* Doc. 19-1 at 124-128.

Further, Defendants did not make "material changes" to any agreement. *See* Motion, p. 18. Borrower's obligations never changed at any point. Under the Participation Agreement, Lender assigned a participation interest in the Loan and Deed of Trust to HNGH in exchange for, among other things, HNGH's payment of $7,000,000.00 to Lender. *See* Compl., Ex. C, p. 3, § 2; Doc. 19-1 at 120. The Participation Agreement has no impact on Relator's/Borrower's rights under the Loan. Instead, the Participation Agreement simply permits HNGH to take certain actions on behalf of the Lender in the event Borrower defaults on the Loan and HNGH fulfills its own obligations to the Lender. *Id*.

Plaintiffs were fully aware of the assignment but did not contest the assignment until Defendants moved to enforce their default rights. Because Plaintiffs never told Madison that Madison could not sell any interest in the loan to Defendants—and affirmatively consented to such assignment—there was no forbidden assignment. Thus, *Empresas Cablevision* is inapplicable and Plaintiffs' motion should be denied. Plaintiffs' argument that the assignment was made without their consent fails for identical reasons (*i.e.*, Plaintiffs were aware of the assignment and failed to object until Defendants sought to enforce their default rights).

**2. Plaintiffs are not likely to succeed on the merits of their claim for fraud.**

Plaintiffs allege the following affirmative misrepresentations: (1) statements by various parties characterizing Glasgow and Nambiar as potential investors, (2) alleged oral promises by Nambiar and Glasgow to keep information confidential and use it to consider their investment, (3) Glasgow's alleged representation that "he would consider" making an investment, and

(4) Nambiar's alleged "expressed interest about investing in the Project." Compl. ¶¶81–82; *see also* ¶¶24–26, 34–35. None of these supports a plausible fraud claim.

In addition to the numerous flaws in Plaintiffs' claim pointed out in the Rule 12(b)(6) Motion to Dismiss, Plaintiffs cannot show justifiable reliance as a matter of law. Prime also argues that the district court was incorrect to find that its fraud and negligent misrepresentation claims failed because disclaimers in the Agreement negated any reliance.[6] Under Texas law, contracting parties may create contractual provisions that disclaim reliance. *See Prime Income Asset Mgmt. Inc. v. One Dallas Ctr. Associates LP*, 358 Fed. Appx. 569, 572 (5th Cir. 2009). "The contract and the circumstances surrounding its formation determines whether the disclaimer of reliance is binding." *Id*. (citing *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 179-180 (Tex. 1997). The Texas Supreme Court has found a clear and specific intent to disclaim reliance when "sophisticated parties, represented by competent legal counsel, included an emphatic particularized disclaimer of reliance in the contract." *Id*. (citing *Schlumberger*, 959 S.W.2d at 180).

In *Prime Income*, the Fifth Circuit recognized that where there was a multimillion dollar arm's length transaction for the sale of a downtown Dallas commercial building between sophisticated parties, both represented by attorneys, the borrower's alleged reliance on misrepresentations was unreasonable. *Prime Income Asset Mgmt. Inc.*, 358 Fed. Appx. at 572 (citing *Forest Oil Corp. v. McAllen*, 268 S.W.3d 60-61 (Tex. 2008)). The Court held that "[g]iven the disclaimers and taking into account the nature of the transaction and the totality of the circumstances surrounding the Agreement, we agree with the district court that the justifiable

[6] Each of the separate fraud-related claims brought by Prime share in common the requirement that the plaintiff must prove justifiable reliance on the representations made by the defendant. *See* TEX. BUS. & COM. CODE § 27.01(a)(1)(B), (a)(2)(D) (statutory fraud); *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex.2001) (fraud); *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex.2001) (fraudulent inducement); *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex.1991) (negligent misrepresentation); *Coldwell Banker Assocs. v. Ryan Equity Partners Ltd.*, 181 S.W.3d 879, 888 (Tex. App.–Dallas 2006, no pet.) (statutory fraud).

reliance element common to all of the fraud-related claims has been negated as a matter of law." *Prime Income Asset Mgmt. Inc.*, 358 Fed. Appx. at 572.

In this case, Plaintiffs admit they are sophisticated real estate developers. See Barton Decl., ¶ 12 ("as an experienced real estate developer . . ."); ¶ 16 ("from my 30 years in the industry, I understand . . ."). Importantly, the Deed of Trust specifically disclaimed Borrower's reliance on any oral or written modifications or other changes to any of the Loan Documents:

SECTION 59. **Entire Agreement.**

The Note, this Deed of Trust and the Other Security Documents constitute the entire understanding and agreement between Borrower and Beneficiary with respect to the transactions arising in connection with the Debt (as such term is defined in the Note) and supersede all prior written or oral understandings and agreements between Borrower and Beneficiary with respect thereto. Borrower hereby acknowledges that, except as incorporated in writing in the Note, this Deed of Trust and the Other Security Documents, there are not, and were not, and no persons are or were authorized by Beneficiary to make any representations, understandings, stipulations, agreements or promises, oral or written, with respect to the transaction which is the subject of the Note, this Deed of Trust and the Other Security Documents.

**3. Plaintiffs are not likely to succeed on the merits of their claim for tortious interference.**

Again, the Green Hollow Parties incorporate by reference their Motion to Dismiss. Plaintiffs' request for a TRO based on their claim for tortious interference is not supported by a single case or factual citation that would warrant the extraordinary remedy of injunctive relief.

Plaintiffs must plausibly show evidence that a Green Hollow Party ***willfully and intentionally interfered*** with the Loan Documents by "knowingly induc[ing] one of the contracting parties to breach its obligations." *John Paul Mitchell Sys. v. Randalls Food Mkts., Inc.*, 17 S.W.3d 721, 730 (Tex. App.—Austin 2000, pet. denied). Plaintiffs have not met this requirement: they do not even allege in their Complaint any conduct by a Green Hollow Party that knowingly induced Lender to breach the Loan Documents, let alone show substantial likelihood of success in their Motion. *See* Compl. ¶113; ¶¶ 77–78. They have not shown that Nambiar,

Glasgow, or any other individual engaged in any willful or intentional conduct other than HNGH Turtle Creek purchasing a junior participation interest in the Note.

Plaintiffs' tortious interference claim relies on their flawed theory that the Participation Agreement or assignment of the Loan Documents was somehow improper, even where Borrower specifically consented to it. Motion, p. 21 ("At a minimum, Defendants consciously desired to dissuade outside investors from supporting the Project so that Defendants could attempt to create the event of default that, as they claim, would give them control over the Project."). Plaintiffs' theory does not even make sense. Plaintiffs' claim that the Green Hollow Parties wrongfully interfered with Loan Documents by attempting to proceed with a foreclosure or by signing an agreement to act as a junior participant in the Loan is meritless. Accordingly, for the reasons stated in the Motion to Dismiss, this claim should be dismissed with prejudice and the TRO should be denied. *See Perdomo v. Mortgage Elec. Registration Sys. Inc.*, 3:15-CV-2075-N-BK, 2015 WL 9487864, at *4 (N.D. Tex. Oct. 29, 2015), report and recommendation adopted, 3:15-CV-02075-N-BK, 2015 WL 9478182 (N.D. Tex. Dec. 29, 2015).

**4. Plaintiffs are not likely to succeed on the merits of their claim for conspiracy.**

A civil conspiracy claim requires "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Agar Corp. v. Electro Circuits Int'l*, 580 S.W.3d 136, 141 (Tex. 2019). Plaintiffs' Motion does not even attempt to make a good faith argument at fulfilling these elements. Plaintiffs' recite the elements and then offer nothing more than a conclusory statement that the "tortious interference, fraud, and breach of implied covenant of good faith and fair dealing are only samples of the various unlawful, overt acts that Defendants completed, which caused Plaintiffs' proximate ***damages***." Motion, p. 22 (emphasis added). Notably, Plaintiffs admit that their relief is damages. With respect to conspiracy, though, Plaintiffs

do not even identify the evidence to support a meeting of the minds or what the specific object was to be accomplished. The conspiracy claim is equally frivolous and is insufficient to support a TRO.

**C. Plaintiffs' 11th hour "emergency" undermines their conclusory assertion that there is a substantial threat that irreparable harm will result if the injunction is not granted.**

The Court should also question Plaintiffs dilatory motives for delaying until two days before Christmas to seek a preliminary injunction to stop a foreclosure scheduled for January 5, 2021. Plaintiffs were fully aware and acknowledge that the foreclosure notice was posted on November 20, 2020. Motion, ¶ 39. In fact, Plaintiffs voluntarily non-suited their state court cases on or about November 13, 2020, after the Court of Appeals mandated a $5.2 million bond to preserve the appellate court's jurisdiction. Plaintiffs' own conduct opened the door to the foreclosure. Thus, Plaintiffs should not have been surprised when Lender provided notice of their intent to foreclose on November 20, 2020. Under the circumstances, Plaintiffs could have and should have filed their motion and request for injunctive relief soon after the notice was posted, rather than manufacturing an "emergency" by waiting to the eleventh hour to file their Motion. Plaintiffs' decision to wait until the eleventh hour undermines their conclusory assertion that there is a substantial threat that irreparable harm will result if the injunction is not granted.

**D. Plaintiffs' bad faith litigation conduct and unclean hands negates awarding them extraordinary equitable relief.**

Plaintiffs ask this Court to award them equitable relief and enjoin a properly noticed foreclosure. But Plaintiffs are not entitled to equitable relief because Plaintiffs have unclean hands. "It is one of the fundamental principles upon which equity jurisprudence is founded, that…[a complainant] must come into court with clean hands." *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933).

Here, HNGH is seeking for foreclose on property securing a $32.5 million Loan and Deed of Trust, both of which have long been in default. Plaintiffs first defaulted under the Loan and

Deed of Trust in February 2020 when 2999TC Acquisitions failed and refused to pay property taxes due on the property. Plaintiffs further defaulted on the Loan and Deed of Trust in the following months by failing to pay interest owed. Moreover, the Loan fully matured on October 1, 2020, and all amounts owed under the Loan became due and owing. But Plaintiffs have paid no monies under the Loan. Instead, Plaintiffs have received a free ride with respect to the Loan and Deed of Trust for more than eight months.

Plaintiffs have blatantly breached the Loan and Deed of Trust by making zero payments towards the $32.5 million (not including interest) owed. Yet despite Plaintiffs' undisputed defaults and refusal to pay the amounts owed under the Loan and Deed of Trust, Plaintiffs ask this Court to enjoin a foreclosure on the property securing the Loan and Deed of Trust. In other words, Plaintiffs will not pay the amounts owed under the Loan and Deed of Trust, nor will Plaintiffs relinquish the property securing the Loan and Deed of Trust such that the Green Hollow Defendants may be made whole. If Plaintiffs had it their way, Plaintiffs would not have to pay the $32.5 million (excluding interest) that Plaintiffs voluntarily obligated themselves to pay and Plaintiffs would keep the underlying property.

One of the primary arguments to justify issuance of a TRO is a balancing of the hardships between the Parties. Because Plaintiffs have not shown that they have a right to prevent the foreclosure, they have failed to show that the denial of an injunction will cause an injury that would outweigh the potential harm an injunction would cause the Defendants. *See Suver v. Pratt*, CIV.A. C-10-99, 2010 WL 1371552, at *1 (S.D. Tex. Apr. 6, 2010). The harm of granting a TRO where this matter has been pending for nearly a year significantly outweighs the harm to a Borrower who has been in default since February 1, 2020 and has not made a single payment since then. The longer this drags on, the more significant the harm to *Defendants*, particularly where they must

continue defending against Borrower's meritless arguments and were required to make protective advances under the Participation Agreement.

Plaintiffs ignore that the Green Hollow Defendants have suffered significant harm due to Plaintiffs' failure and refusal to honor their obligations under the Loan and Deed of Trust. Plaintiffs' defaults under the Loan and Deed of Trust reveal that Plaintiffs have unclean hands and, therefore, are precluded from being entitled to equitable relief by way of injunctive relief. *See Sare Lee Household & Pers. Care UK Ltd. v. Almay, Inc.,* No. 92 CIV. 2042 (KTD), 1992 WL 309572, at *4 (S.D.N.Y. Oct. 9, 1992), *aff'd sub nom. Sara Lee Household v. Almay, Inc.*, 992 F.2d 320 (2d Cir. 1993) (concluding movant "still has 'unclean hands' and is not entitled to equitable relief" when "there has been no 'cure' of the [movant's] default [under the license agreement] even to this day."); *see also Landry's Seafood Inn & Oyster Bar-Kemah, Inc. v. Wiggins*, 919 S.W.2d 924, 927-78 (Tex. App.—Houston [14th Dist.] 1996, no pet.) (affirming trial court's denial of application for temporary injunction when movant knew it was in default but waited several months to seek equitable relief, because "[movant] must come to the court with clean hands and must have acted promptly to enforce its rights.") (citations omitted).

Accordingly, Plaintiff's application for temporary restraining order should be denied in its entirety.

## IV.
## PRAYER FOR RELIEF

WHEREFORE, the Green Hollow Parties respectfully request that the Court deny Plaintiffs' Emergency Motion for Temporary Restraining Order and Application for Preliminary Injunction. The Green Hollow Parties further request that they be granted all other relief, at law and in equity, to which they may be justly entitled.

Respectfully submitted,

*/s/ Rusty J. O'Kane*

Rusty J. O'Kane
Texas Bar No. 24088149
rusty.okane@wickphillips.com
Zachary C. Farrar
Texas Bar No. 24093418
zachary.farrar@wickphillips.com

**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 100
Dallas, Texas 75204
Tel. (214) 692-6200
Fax. (214) 692-6255

**ATTORNEYS FOR DEFENDANTS HNGH TURTLE CREEK, LLC, HN GREEN HOLLOW CAPITAL PARTNERS, LLC, VIPIN NAMBIAR, AND JAMES G. GLASGOW**

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure, the undersigned attorney of record certifies that a copy of the foregoing instrument was served upon all counsel of record via ECF on this the December 29, 2020.

*/s/ Rusty J. O'Kane*
Rusty J. O'Kane