**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| 2999TC ACQUISITIONS, LLC f/k/a<br>MO 2999 TC, LLC, AND<br>TIMOTHY L. BARTON,<br><br>*Plaintiffs*,<br><br>v.<br><br>2999 TURTLE CREEK, LLC,<br>HNGH TURTLE CREEK, LLC,<br>HN GREEN HOLLOW CAPITAL<br>PARTNERS, LLC, MADISON REALTY<br>CAPITAL, LP, VIPIN NAMBIAR,<br>JAMES G. GLASGOW, JR.,<br>MARC ZEGEN, AND JOSHUA ZEGEN,<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | C.A. No. 3:20-CV-3229 |

**APPENDIX IN SUPPORT OF GREEN HOLLOW DEFENDANTS' RESPONSE TO PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

Defendants HNGH Turtle Creek, LLC ("HNGH"), HN Green Hollow Capital Partners, LLC ("Green Hollow"), Vipin Nambiar ("Nambiar"), and James G. Glasgow ("Glasgow") (collectively, the "Green Hollow Parties") offer the following evidence in support of their Response to Plaintiffs' Emergency Motion for Temporary Restraining Order:

| DESIGNATION | DESCRIPTION | APP RANGE |
|---|---|---|
| **APPENDIX A** | Findings of Fact and Recommendations, dated November 5, 2020 | APP.001 – APP.009 |
| **APPENDIX B** | Order Denying Plaintiff's Application for Temporary Injunction, dated August 20, 2020 | APP.010 – APP.012 |
| **APPENDIX C** | Correspondence regarding real estate tax default, dated March 24, 2020 | APP.013 – APP.016 |
| **APPENDIX D** | Correspondence regarding notice of default, dated July 6, 2020 | App.017 – APP.037 |

| | | |
|---|---|---|
| **APPENDIX E** | Correspondence regarding notice of default, dated August 10, 2020 | APP.038 – APP.050 |
| **APPENDIX F** | Complete Hearing Transcript on Plaintiff's Supplemental Application for TRO, Temporary Injunction, and Permanent Injunction, dated August 3, 2020 | APP.051 – APP.082 |

Dated: December 29, 2020

Respectfully submitted,

*/s/ Rusty J. O'Kane*
Rusty J. O'Kane
Texas Bar No. 24088149
rusty.okane@wickphillips.com
Zachary C. Farrar
Texas Bar No. 24093418
zachary.farrar@wickphillips.com

**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 100
Dallas, Texas 75204
Tel. (214) 692-6200
Fax. (214) 692-6255

**ATTORNEYS FOR DEFENDANTS HNGH TURTLE CREEK, LLC and VIPIN NAMBIAR**

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure, the undersigned attorney of record certifies that a copy of the foregoing instrument was served upon all counsel of record via ECF on this the December 29, 2020.

*/s/ Rusty J. O'Kane*
Rusty J. O'Kane

# APPENDIX A

**CAUSE NO. DC-20-05864**

| | | |
|---|---|---|
| **2999TC ACQUISITIONS, LLC F/K/A MO 2999TC, LLC,** | § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **HNGH TURTLE CREEK, LLC, WILLIAM L. HUTCHINSON, VIPIN NAMBIAR, HN GREEN HOLLOW CAPITAL PARTNERS, LLC, 2999 TURTLE CREEK, LLC, and MADISON REALTY CAPITAL, LP,** | § | **14th JUDICIAL DISTRICT** |
| | § | |
| **Defendants.** | § | **DALLAS COUNTY, TEXAS** |

## FINDINGS OF FACT AND RECOMMENDATIONS

On October 8, 2020, the Court of Appeals for the Fifth District of Texas at Dallas entered its Order in Case No. 05-20-00777-CV, In re 2999TC Acquisitions, LLC, f/k/a MO 2999TC, LLC. In the Order, the Court of Appeals Ordered that this Court "issue, within thirty (30) days of this Order, written findings and recommendations concerning the appropriate amount of security for an injunction, and FURTHER ORDER the trial court to file such findings and recommendations with this Court within that thirty (30) day period." Upon consideration of the Order, the pleadings and evidence filed and entered herein, and the Court's file in this case, the Court makes the following Findings of Fact and Recommendations:[1]

[1] To the extent any Finding of Fact is determined to be a Recommendation, then said Finding of Fact should be so construed and is adopted herein as a Recommendation without regard to the headings set forth herein, and vice versa.

**FINDINGS OF FACT**

1. Plaintiff initiated this lawsuit on or about April 20, 2020, by filing its Original Petition, alleging monetary claims against three of the GH Parties.[2]

2. On July 31, 2020, Plaintiff amended its Petition, and in its Fourth Amended Verified Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction (the "Fourth Amended Petition") alleged monetary and declaratory claims, and sought injunctive relief to prevent a non-judicial foreclosure sale.[3]

3. Following a hearing on August 3, 2020, the Court entered a Temporary Restraining Order, enjoining the then-noticed August foreclosure sale.[4]

4. On August 19, the Court held a hearing on Plaintiff's application for temporary injunction (the "Temporary Injunction Hearing"), at which the evidence admitted included that (i) the face value of the Note made by Plaintiff in favor of Defendant 2999 Turtle Creek LLC was $32,500,000.00,[5] (ii) the Note was at that time in default for Plaintiff's failure to make payments for taxes or interest,[6] and (iii) the Note would matured on or before October 1, 2020,[7] and the Note is now matured.

---

2 *See* Plaintiff's Original Petition and Request for Disclosures.

3 *See* Plaintiff's Fourth Amended Petition, Relator's Appendix A.

4 *See* Temporary Restraining Order.

5 *See* Transcript of August 19, 2020 hearing, Volume IV, Exhibit 2 (Secured Promissory Note).

6 *See* Transcript of August 3, 2020 hearing, Volume 1, p. 17 ("[THE COURT]: Are you saying that the Defendant paid -- one of the Defendants paid property taxes in 2019? MS. BRANDON: Yes."); *id.*, p. at 23 ("THE COURT: Is your client prepared to make -- I assume that there is some amount that you acknowledge that is due and owing and is past due, correct? MS. BRANDON: That's -- That is correct, Your Honor.").

7 *See* Transcript of August 19, 2020 hearing, Volume IV, Exhibit 2 (Secured Promissory Note).

5. The day following the Temporary Injunction Hearing the Court entered its Order denying the application.[8]

6. On August 27, 2020, Plaintiff appealed the Order Denying Plaintiff's Application for Temporary Restraining Order by filing its Notice of Appeal,[9] and thereby initiating Case No. 05-20-00774-CV, *2999TC Acquisitions, LLC, f/k/a MO 2999TC, LLC v. HNGH Turtle Creek, LLC, et al.*, in the Court of Appeals for the Fifth District at Dallas.[10]

7. Also on August 27, 2020, Plaintiff initiated an original proceeding styled as Case No. 05-20-00777-CV, *In re 2999TC Acquisitions, LLC, f/k/a MO 2999TC, LLC*, in the Court of Appeals for the Fifth District at Dallas (the "Mandamus Proceeding").[11] Plaintiff subsequently filed an Application for Temporary Injunction in the Mandamus Proceeding.[12]

8. On August 28, 2020, the Court of Appeals entered its Order in which it stayed the foreclosure sale of the property subject to this lawsuit pending resolution of the Mandamus.[13]

9. On October 8, 2020, the Court of Appeals entered an Order in the Mandamus Proceeding that this Court "issue, within thirty (30) days of this Order, written findings and recommendations concerning the appropriate amount of security for an injunction, and FURTHER ORDER the trial court to file such findings and recommendations with this Court within that thirty (30) day period."

---

8 *See* Order Denying Plaintiff's Application for Temporary Restraining Order.

9 *See* Notice of Appeal.

10 *See* Notice of Appeal.

11 *See* Mandamus Petition for Writ of Injunction.

12 *See* Motion for Emergency Stay.

13 *See* Order, dated August 28, 2020.

## RECOMMENDATIONS

1. Courts of Appeals are empowered to issue writs of injunction which are necessary to enforce their jurisdiction.[14] The Court of Appeals for the Fifth District at Dallas has held that principals of equity require a bond to be placed in support of such a statutory injunction[15]

2. Where, an injunction prevents a lender from exercising its rights of foreclosure, the lender entitled to protection from potential loss as a result of the injunction.[16]

---

14 *See* TEX. GOV'T CODE § 22.221(a) ("Each court of appeals or a justice of a court of appeals may issue a writ of mandamus and all other writs necessary to enforce the jurisdiction of the court.").

15 *See In re Shields*, 190 S.W.3d 717, 720 (Tex. App.—Dallas 2005, no pet.) ("Although Ameriquest contends we have no jurisdiction to grant the injunctive relief requested by relators and that relators have 'provided no grounds for the [C]ourt to set the amount of bond or other security,' we conclude this Court may set a bond or other security in conjunction with the granting of injunctive relief."); *Irving Bank & Tr. Co. v. Second Land Corp.*, 544 S.W.2d 684, 689 (Tex. Civ. App.—Dallas 1976, writ ref'd n.r.e.) ("We do have authority, however, under Tex.Rev.Civ.Stat.Ann. art. 1823 (Vernon 1964) to issue our own temporary injunction pending appeal if such a writ is necessary to protect our jurisdiction."); *see also Gen. Tel. Co. of Sw. v. City of Garland*, 522 S.W.2d 732, 734 (Tex. Civ. App.—Dallas 1975, no writ) ("It will not be a supersedeas bond as defined by Texas Rules of Civil Procedure 364, but a bond we require as a condition of granting the stay."); *accord Reyes v. Atkins*, 619 S.W.2d 26, 28 (Tex. Civ. App.—Fort Worth 1981, no writ); *Sonny Arnold, Inc. v. Sentry Sav. Ass'n*, 602 S.W.2d 90, 93 (Tex. Civ. App.—Amarillo 1980, no writ); *Carpenter v. Hausman*, 601 S.W.2d 88, 89 (Tex. Civ. App.—San Antonio 1980, no writ); *Riverdrive Mall, Inc. v. Larwin Mortg. Inv'rs*, 515 S.W.2d 2, 4 (Tex. Civ. App.—San Antonio 1974, writ ref'd n.r.c.); *Pendleton Green Associates v. Anchor Sav. Bank*, 520 S.W.2d 579, 582 (Tex. Civ. App.—Corpus Christi 1975, no writ).

16 *See Riverdrive Mall*, 515 S.W.2d at 4 ("We have effectively prevented respondents from exercising the right granted under the deed of trust to foreclose upon the described property after the note became delinquent. Thus, if it should be found that the trial court did not abuse its discretion in denying the temporary injunction, respondents will have been wrongfully deprived of such valuable right for a period of at least two months. We cannot conceive of any equitable reason why respondents are not entitled to be protected for such potential loss"); *Sonny Arnold, Inc.*, 602 S.W.2d at 93 ("Nevertheless, we concluded that to protect against any inequity, a bond sufficient to cover the differential between the quoted interest rates would be required.").

3. In determining the amount of a statutory bond issued to prevent a foreclosure, Courts have considered both the total amount due on the note and the interest payment,[17] in two cases setting bonds of approximately 11% and 15% of the value of the note.[18]

4. The evidence admitted in this case is that (i) the face value of the Note is $32,500,000.00, (ii) the Note is fully matured and unpaid, and (iii) interest has been accruing on the Note at the default rate 24% since February 2020, when the borrower first went into default.

5. The appropriate amount for security for an injunction in the Court of Appeals is $5,200,000.00, representing 10% of the face value of the now mature $32,500,000.00 Note, plus approximately three months of interest at the default rate,[19] such amount being subject to revision upward should the expedited appeal not be resolved within three months hereof.

Signed: 5 Nov. 2020

HONORABLE JUDGE PRESIDING

---

17 *See Reyes*, 619 S.W.2d at 28 ("Respondents in oral submission attacked the sufficiency of and sought increase of the $5,000.00 bond now posted. Relators' monthly payment to Respondents under the promissory note is $428.37, thus the bond protects Respondents' interests to March of 1982 in that the April 1981 payment was rejected pursuant to attempted acceleration of the note. The total amount due under the promissory note is $44,743.82. We deem the bond to be sufficient."); *Carpenter*, 601 S.W.2d at 90 (Tex. Civ. App.—San Antonio 1980, no writ) (finding bond amount of $20,000.00 adequate for where the total amount due was $137,000.00); *cf.* TEX. R. APP. P. 24.2(a)(2)(A) (setting bond for suspension of enforcement for final judgments for real property as the value of the property interest's rent or revenue); *Mudd v. Mudd*, 665 S.W.2d 128, 129-30 (Tex. App.-San Antonio 1983, no writ) ("Therefore, the bond should be in a sum at least the amount of the judgment plus an estimated amount of interest which will probably accrue during the appeal at the rate prescribed in the judgment, plus the estimated amount of the costs.); *Kennesaw Life & Acc. Ins. Co. v. Streetman*, 644 S.W.2d 915, 917 (Tex. App.—Austin 1983, writ ref'd n.r.e.) ("We are of the view that both the result reached by the Court in Cooper and the reasoning employed by it were correct, and that Rule 364, as elucidated by this reasoning, requires that this Court order appellant to file an amended bond sufficient to cover the amount of the judgment and all the post-judgment interest that will accrue pending disposition of the cause on appeal.")

18 *See Reyes*, 619 S.W.2d at 28; *Carpenter*, 601 S.W.2d at 9.

19 Ten percent of face value *plus* three months of approximate default interest, or 3,250,0000 + (3*650,000) = $5,200,000.00.

**CAUSE NO. DC-20-05864**

| | | |
|---|---|---|
| **2999TC ACQUISITIONS LLC et al., Plaintiff** | § | **IN THE DISTRICT COURT** |
| | § | |
| **vs.** | § | **14th JUDICIAL DISTRICT** |
| **HNGH TURTLE CREEK, LLC et al. Defendants** | § | |
| | § | **DALLAS COUNTY, TEXAS** |

**SUPPLEMENTAL FINDINGS AND CONCLUSIONS**

In accordance with the Dallas Court of Appeals Order entered October 8, 2020 in matter *In Re 2999TC Acquisitions, et al* Cause No. 05-50-00777-CV this Court hereby files Supplemental Findings and Conclusions as follows:

### *A. Findings of Fact*

1. On or about September 18, 2019, Plaintiff executed a certain Deed of Trust, Security Agreement, and Fixture Filing ("Deed of Trust") for the benefit of Lender.

2. On or about September 17, 2019, Plaintiff executed a $32,500,000.00 Secured Promissory Note in favor of Lender ("Note").

3. The Deed of Trust and Note are secured by 2.47 acres of land located at 2999 Turtle Creek, Dallas, Texas ("Land").

4. The Note matured on October 1, 2020.

5. Plaintiff has not paid the amounts owed under the Note, including principal or interest, and has therefore defaulted under the Note.

6. Plaintiff has defaulted under the Deed of Trust for failure to pay the Note and other amounts owed under the Deed of Trust, including property taxes.

7. Plaintiff has been in default since February 1, 2020, and has not made any payments under the Note or Deed of Trust since that time. The Court finds there is no good cause for the default and Lender is entitled to exercise the rights identified in the Note and Deed of Trust.

8. The Court entered a Temporary Restraining Order enjoining Lender from foreclosing on the Land, which serves as collateral for the Deed of Trust and Note, via a foreclosure sale in August 2020.

9. Pursuant to the Temporary Restraining Order, Plaintiff tendered a $25,000 bond.

10. The Temporary Restraining Order expired by its own terms on August 17, 2020.

11. The Court held an evidentiary hearing on August 19, 2020, wherein it considered Plaintiff's and Defendants' evidence and exhibits, as well as testimony from Plaintiff's principal, Timothy Barton.

12. The Court considered the evidence and found that Plaintiff did not show a probable right to recover on its causes of action that would entitle it to obtain injunctive relief, and Plaintiff did not demonstrate a probable, imminent, and irreparable injury in the interim.

13. The Court denied Plaintiff's application for a Temporary Injunction by order dated August 20, 2020.

14. With each month that passes that Lender is prohibited from foreclosing on the Land, Lender and HNGH suffer significant monetary harm, which should be protected by way of sufficient bond posted by Plaintiff.

15. Because Plaintiff is in default under the Deed of Trust and the Note, Plaintiff is obligated to make certain payments to Lender, including, without limitation, monthly nominal interest payments accruing at $11,194.44 per day (or a total of $347,027.64 per month), monthly default interest payments accruing at $10,583.68 per day (or a total of $328,094.08 per month), among other payments. But Plaintiff fails and refuses to make such payments to Lender, including monthly interest payments, despite such payments being due and owing.

16. Due to Plaintiff's defaults, to date, Plaintiff owes $37,735,708.00 on the Note, which amount includes principal and interest, and which amount continues to accrue.

# APPENDIX B

CAUSE NO. DC-20-05864

| | | |
|---|---|---|
| 2999TC Acquisitions, LLC f/k/a MO 2999TC, LLC, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | 14TH JUDICIAL DISTRICT |
| HNGH Turtle Creek, LLC, William L. Hutchinson, Vipin Nambiar, HN Green Hollow Capital Partners, LLC, 2999 Turtle Creek, LLC, and Madison Realty Capital, LP | § | |
| | § | |
| *Defendants*. | § | DALLAS COUNTY, TEXAS |

**ORDER DENYING PLAINTIFF'S APPLICATION FOR TEMPORARY INJUNCTION**

On August 19, 2020, the Court heard and considered Plaintiff 2999TC Acquisitions, LLC f/k/a MO 2999TC, LLC's ("Plaintiff") Application for Temporary Injunction ("TI Application"), as contained in Plaintiff's Fourth Amended Verified Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction. The parties appeared in person, through their authorized representatives and counsel, at the hearing on the TI Application, and the Court took evidence and heard argument of the parties. Upon consideration of the TI Application, the evidence admitted at the hearing, the arguments of counsel, and the pleadings and evidence on file in this case, the Court finds that the TI Application should be and is hereby DENIED.

It if therefore ORDERED, ADJUDGED and DECREED that Plaintiff's TI Application is DENIED.

20 August 2020 [signature]

Signed this ______ day of August, 2020.

______________________________
JUDGE PRESIDING

# APPENDIX C

2999 Turtle Creek LLC
c/o Madison Realty Capital
520 Madison Avenue, Suite 3501
New York, NY 10022

March 24, 2020

**VIA FEDEX**
MO 2999TC, LLC
13901 Midway Road, Suite 102-243
Dallas, Texas 75244

Re: MO 2999TC, LLC ("**Borrower**") with
2999 Turtle Creek LLC ("**Lender**")
Property: 2999 Turtle Creek, Dallas, TX 75219 (the "**Property**")

Dear Sir/Madam:

As you know Lender is the current holder of that certain Secured Promissory Note dated September 20, 2019, in the amount of $32,500,000.00 (the "**Note**") secured by that certain Deed of Trust, Security Agreement and Fixture Filing dated September 20, 2019 (the "**Security Agreement**" together with the Note, the "**Loan**") encumbering the Property. Reference is further made to that certain Guaranty dated September 20, 2019, given by Timothy Lynch Barton (the "**Guarantor**"), for the benefit of Lender (the "**Guaranty**", together with the Loan and all documents executed in connection with the aforementioned instruments, are hereinafter referred to as the "**Loan Documents**").

Please be advised that a certain Event of Default exist under the Loan Documents for, among other things, failure to pay the real estate taxes in connection with the Property due on February 1, 2020 (the "**R.E. Tax Default**").

Please be further advised that if Borrower does not cure the R.E. Tax Default by April 1, 2020, Lender will consider seeking its rights and remedies under the Loan Documents, including, without limitation, making a protective advance.

Nothing stated herein shall be deemed or constitute a waiver or release of any of the terms or provisions of the Loan Documents or of your defaults thereunder, or constitute a waiver, release or an estoppel of any of Lender' rights or remedies under the Loan Documents, in law and/or in equity, including, without limitation, any action to foreclose the Loan Documents, all of which rights and remedies are specifically reserved herein.

No forbearance, delay or inaction by the Lender in the consequential exercise of its rights and remedies, and no continuing performance by the Lender or the Borrower under the Loan Documents: (a) shall constitute: (i) a modification or an alteration of the terms, conditions or covenants of the Loan Documents, all of which remain in full force and effect; or (ii) a waiver, release or limitation upon the Lender 's exercise of any of its rights and remedies thereunc[...] of which are hereby expressly reserved; or (b) shall relieve or release the Borrower [...] Guarantor in any way from any of its respective duties, obligations, covenants or agre[...]

EXHIBIT
HNGH - 2

under the Note, Mortgage or any other Loan Documents or from the consequences of the breach described above or any other Events of Default, as defined in the Mortgage, that may be declared thereunder. The Lender is not obligated to waive the breach described above or any Event of Default or defaults, whether now existing but not yet declared or which may occur after the date of this letter.

We remind you, furthermore, that nothing in this letter or in any ongoing or future discussions or negotiations between Lender, on the one hand, and the Borrower and any entity which Lender have extended credit to and in which Borrower has a controlling interest (each a "Credit Party" and collectively "Credit Parties"), on the other hand, nor any delay on the part of the Lender in exercising any of its rights and remedies under the Loan Documents and/or applicable law, shall directly or indirectly: (i) create any obligation to forbear from taking any enforcement action, or to make any further extensions of credit, (ii) constitute a consent to or waiver of any past, present or future default or Event of Default or other violation of any provisions of the Loan Documents, (iii) amend, modify or operate as a waiver of any provision of any Loan Document or any right, power, privilege or remedy of the Lender thereunder or under applicable law or constitute an agreement to forbear or to restructure the loans and other obligations of the Credit Parties under the Loan Documents (the "Obligations") in any respect or otherwise modify the capital structure of any or all of the Credit Parties, or (iv) constitute a course of dealing or other basis for altering any rights or obligations of the Lender under the Loan Documents, or any Obligations of the Borrower or any other Credit Party under the Loan Documents or any other contract or instrument. Nothing contained in this letter shall confer on the Borrower or any other Credit Party or Person any right to notice or cure periods with respect to any default or Event of Default under the Loan Documents.

This letter confirms that the Lender had not waived the Borrower's designated breach under the Loan Documents and the Lender expressly reserve all of its rights, powers, privileges and remedies under the Loan Documents and/or applicable law, including, without limitation, its right at any time, as applicable, (i) to commence any legal or other action to collect any or all of the Obligations from the Borrower, the other Credit Parties, and any other person liable therefore and/or any collateral securing the Obligations (the "Collateral"), (ii) to foreclose or otherwise realize on any or all of the Collateral and/or as appropriate, set-off or apply to the payment of any or all of the Obligations, any or all of the Collateral, (iii) to take any other enforcement action or otherwise exercise any or all rights and remedies provided for by any or all of the Loan Documents or applicable law, and (iv) to reject any forbearance, financial restructuring or other proposal made by or on behalf of the Borrower, any other Credit Party or any creditor or equity holder. The Lender may exercise its rights, powers, privileges and remedies, including those set forth in clauses (i) through (iv) above at any time in its sole and absolute discretion without further notice. No oral representations or course of dealing on the part of the Lender or any of its officers, employees or agents, and no failure or delay by the Lender with respect to the exercise of any right, power, privilege or remedy under any of the Loan Documents or applicable law shall operate as a waiver thereof, and the single or partial exercise of any such right, power, privilege or remedy shall not preclude any later exercise of any other right, power, privilege or remedy. Except as specified herein, this letter does not attempt to summarize all (i) existing misrepresentations, breaches, defaults and Events of Default existing under the Loan Documents and (ii) rights and remedies of the Lender under the Loan Documents. Accordingly, this letter is not, and shall not be deemed to be, a waiver of, or consent to, any misrepresentation, breach, default or Event of Default now existing or hereafter arising under the Loan Documents.

Please be guided accordingly.

Sincerely,
**2999 Turtle Creek LLC**

Name: SHOSHANA CARMEL
Title: AUTHORIZED SIGNATORY

cc: Kriss & Feuerstein LLP (via email)

Timothy Lynch Barton (via FEDEX)
13901 Midway Road, Suite 102-243
Dallas, Texas 75244

McMurry Law, PLLC (via FEDEX & email)
508 W. Lookout Drive, Suite 14-74
Richardson, Texas 75080
Attn: Vance McMurry, Esq.
vance@mcmurrylegal.com

HNGH Turtle Creek, LLC (via FEDEX)
c/o HN Green Hollow Capital Partners LLC
600 5th Avenue, 2nd Flr.
New York, NY 10020
Attn: Jim Glasgow

# APPENDIX D

WINSTEAD

Austin | Charlotte | Dallas | Fort Worth | Houston | San Antonio | The Woodlands

July 6, 2020

2728 N. Harwood Street
Suite 500
Dallas, Texas 75201

214.745.5400 OFFICE
214.745.5390 FAX
winstead.com

Direct Dial: 214-745-5126
jrwhite@winstead.com

MO 2999TC, LLC
13901 Midway Road, Suite 102-243
Dallas, Texas 75244

VIA FEDEX AND CERTIFIED MAIL
RETURN RECEIPT REQUESTED
No. 9314 7699 0430 0072 9130 21

Re: Indebtedness ("Indebtedness" or "Loan") evidenced by Secured Promissory Note ("Note") dated September 20, 2019 in the principal amount of $32,500,000.00, executed by MO 2999TC, LLC, a Delaware limited liability company ("Borrower"), payable to the order of 2999 TURTLE CREEK LLC, a Delaware limited liability company ("Lender"), and secured by that certain Deed of Trust, Security Agreement and Fixture Filing (the "Deed of Trust"), dated September 20, 2019, recorded Document Number 201900253450 in the Real Property Records, Dallas County, Texas, covering certain land and certain improvements located thereon, in Dallas, Dallas County, Texas and certain personal property described under Deed of Trust (collectively, "Mortgaged Property")

Ladies and Gentlemen:

This firm represents Lender, the current owner and holder of the Note and beneficiary under the Deed of Trust.

Borrower has failed to make payments due and owing under the Note and Deed of Trust, and, after notice thereof and failure to cure same within the periods allowed under the Note and Deed of Trust, there is now one or more Events of Default under the terms of the Note and Deed of Trust. In addition, Borrower previously received notice of Lender's intent to accelerate the entire unpaid balance of the Note and institute foreclosure proceedings under the Deed of Trust on the Mortgaged Property if Borrower failed to pay, within the time period specified in such prior notice, all amounts then due and owing under the terms of the Note and Deed of Trust, including attorneys' fees and expenses as therein provided.

Borrower is hereby notified that because of Borrower's failure to pay such sums as required, the entire Indebtedness evidenced by the Note and other amounts evidenced and/or secured by the Deed of Trust, including the outstanding principal balance of and all accrued but unpaid interest on the Note and other amounts evidenced by the Deed of Trust, have been accelerated and such Indebtedness (subject to any limitation on interest to the maximum lawful amount), and the additional expenses previously incurred by Lender in connection with enforcing its rights and remedies under the Note and Deed of Trust are thus fully matured and currently due and payable.

Demand is hereby made for immediate payment in full of the entire unpaid principal balance of the Note, plus (to the extent of the maximum lawful amount) accrued and unpaid interest thereon and any and all other sums secured by the Deed of Trust and the other collection costs and attorneys' fees incurred by Lender in connection therewith.

The amount of the outstanding principal balance of, and all accrued but unpaid interest on, the Note, can be obtained by contacting Lender's responsible officer, Shoshana Carmel, at 520 Madison Ave., Ste. 3501, New York, New York 10022, (646) 442-4208. You are also liable for trustee's fees, attorneys' fees, and such other sums, costs and expenses as are incurred by Lender in connection with the collection of the indebtedness evidenced by the Note and the foreclosure as provided in the Note and the Deed of Trust, if and to the extent allowed under applicable law. In the event the Mortgaged Property secured by the Deed of Trust is sold at foreclosure for an amount insufficient to satisfy the entire unpaid balance of principal and accrued interest, trustee's fees, attorneys' fees, and expenses incurred in connection with the foreclosure, Borrower will be liable for the deficiency.

This letter is also a demand for Borrower to comply with the provisions of the Deed of Trust and that certain Assignment of Rents and Leases (the "Assignment") dated September 20, 2019, executed by Borrower for the benefit of Lender with respect to the "Rents" received from the Mortgaged Property covered by the Deed of Trust and Assignment.

By copy hereof, Lender hereby advises TIMOTHY LYNCH BARTON, as guarantor obligated to pay all or any portion of the indebtedness evidenced by the Note and Deed of Trust, of such default and acceleration of such indebtedness and this letter constitutes formal demand on such guarantor to pay all of such Indebtedness pursuant to the terms of guaranty agreements relating thereto.

Enclosed is a copy of a Notice of Foreclosure Sale ("Notice") pertaining to the Deed of Trust and the real and personal property ("Mortgaged Property") described in such Notice. The Notice will be or has been posted on or before Tuesday, July 14, 2020 at the courthouse door of Dallas County, Texas, and a copy of the Notice will be or has been filed in the office of the County Clerk of Dallas County, Texas. The foreclosure sale specified in the Notice will take place as specified in the Notice, as authorized by the Deed of Trust and/or applicable law. Regardless of any prior Notices of Foreclosure Sale providing any other dates to the contrary (which such prior notices, if any, are expressly superceded hereby), you are hereby advised that such Mortgaged Property will be sold as provided in the Notice.

The Mortgaged Property will be sold to the highest bidder for cash and in accordance with the requirements of the Deed of Trust and applicable law. Please refer to the Notice for additional information regarding the sale. In the event of any inconsistency between the Notice and anything contained herein, the Notice will govern.

Enclosed is a copy of the Appointment of Substitute Trustees With Removal of Trustee and Instructions to Substitute Trustees ("Appointment") executed by Lender with respect to the Deed of Trust and the Mortgaged Property, which Appointment, among other things, gives

written notice of the defaults referenced herein and instructs the Substitute Trustees (as defined in the Appointment) to foreclose on the Deed of Trust against the Mortgaged Property as provided in the Notice (as defined below). Pursuant to the Deed of Trust, the Appointment will be concurrently filed by Substitute Trustees in the Real Property Records of Dallas County, Texas.

Notwithstanding the foregoing, to the extent that any party obligated under the Note and/or Deed of Trust has been discharged or dismissed by, or is subject to the protection or proceedings of, or has been discharged by, a bankruptcy court acting under the United States Bankruptcy Code, such party is advised that this letter and the Notice are transmitted to such party for compliance with the applicable state law requirements and informational purposes only and is not intended to violate any automatic stay or to constitute a demand for payment or an attempt to collect on any such indebtedness evidenced by the Note and Deed of Trust that may be subject to the automatic stay or may have been discharged.

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

If you have any questions or comments, do not hesitate to have your counsel contact the undersigned at the direct dial telephone number referred to above.

Sincerely,

WINSTEAD PC

By: ______________________
J. Richard White

cc: Timothy Lynch Barton (w/encl.) Certified Mail, Return Receipt Requested No. 9314 7699 0430 0072 9313 60
Elizabeth C. Brandon, Esq. (w/encl.)
Jerold Feuerstein, Esq. (via email, w/encl.)
Mr. Vipin Nambir (via email, w/encl.)
Mr. Scott Leitman (via email, w/encl.)
Mr. Jim Glasgow (via email, w/encl.)
Rusty J. O'Kane (via email, w/encl.)

JUL 2020
ORIGINAL FILED
JOHN F. WARREN
COUNTY CLERK
DALLAS COUNTY, TEXAS
DEPUTY

070120
60901-14

# NOTICE OF FORECLOSURE SALE

STATE OF TEXAS §
§ KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF DALLAS §

WHEREAS, MO 2999TC, LLC, a Delaware limited liability company ("Mortgagor"), executed and delivered to MICHAEL B. MASSEY (the "Original Trustee") for the benefit of 2999 TURTLE CREEK LLC, a Delaware limited liability company ("Mortgagee"), whose street address is 520 Madison Avenue, Suite 3501, New York, New York 10022, that certain Deed of Trust, Security Agreement and Fixture Filing (as same may have been heretofore assigned, transferred, amended, modified, extended, renewed and/or restated (the "Deed of Trust"), dated September 20, 2019, recorded as Document Number 201900253450 in the Real Property Records, Dallas County, Texas, to secure that certain Secured Promissory Note (as same may have been assigned, amended, modified, extended, renewed, restated and/or replaced, the "Note") dated of even date with the Deed of Trust, in the principal sum of $32,500,000.00, executed by Mortgagor and payable to Mortgagee, and all other indebtedness, liabilities, and obligations (collectively, the "Indebtedness") described in the Note and Deed of Trust and all other documents evidencing, securing or governing the Indebtedness (collectively, the "Loan Documents"); and

WHEREAS, to secure the Indebtedness, the Deed of Trust created a lien on, among other things, certain land (the "Land") situated in Dallas County, Texas, as more particularly described on Exhibit A hereto, and a lien and security interest in favor of Mortgagee in certain other collateral located on or related to the Land as more particularly described on Exhibit B hereto (collectively, the "Other Collateral") (the Land and the Other Collateral being herein collectively called the "Mortgaged Property"); and

WHEREAS, a default has occurred in the payment of the Indebtedness and same has not been cured as of the date hereof and the Indebtedness has been accelerated and is now wholly due and payable; and

WHEREAS, Mortgagee has made demand upon Mortgagor to pay to Mortgagee the Indebtedness now due, but such Indebtedness has not been paid; and

WHEREAS, pursuant to and in accordance with the authority of Section 51.0075(c) of the Texas Property Code and the Deed of Trust, Mortgagee has appointed J. Richard White, Brian T. Morris, Amanda Grainger, and Sherry Baldwin, each with a street address of 500 Winstead Building, 2728 N. Harwood Street, Dallas, Texas 75201, individually and severally, and not jointly (collectively, the "Substitute Trustees" or, severally, a "Substitute Trustee"), each of whom may act alone, without the necessity of the joinder of the other Substitute Trustees, as the substitute trustee in the place and stead of and to succeed to all of the rights, titles, estates, powers, privileges and authorities granted in the Deed of Trust to the Original Trustee, and any previously appointed substitute trustee(s); and

WHEREAS, Mortgagee, as the beneficiary under the Deed of Trust, has instructed the Substitute Trustees, or any one of them, acting alone without the necessity of the joinder of the

other Substitute Trustees, to post, file and mail, or cause to be posted, filed and mailed, appropriate notice and to sell the Mortgaged Property to satisfy, in whole or in part, the unpaid Indebtedness; and

WHEREAS, the Mortgaged Property will be sold "as-is" without any expressed or implied warranties, except as to warranties of title, and at the purchaser's own risk (and not as a consumer) pursuant to Section 51.009 of the Texas Property Code.

NOW, THEREFORE, NOTICE IS HEREBY GIVEN that on Tuesday, August 4, 2020, no earlier than 10:00 a.m., or no later than three hours after that time, the Substitute Trustees, or any one of them, acting alone without the necessity of the joinder of the other Substitute Trustees, will commence the sale of all or a portion of the Mortgaged Property, in parcels or as a whole, at public auction to the highest bidder for cash, pursuant to the Deed of Trust and applicable law; such sale will be held at the following designated area: the area outside on the north side of the George Allen Courts Building facing Commerce Street below the overhang, located at 600 Commerce Street, Dallas, Texas 75202; SUBJECT, HOWEVER, to all liens, exceptions to title, easements, restrictions, and encumbrances affecting any of the Mortgaged Property or title thereto which have equal or superior priority to the lien and security interest created by the Deed of Trust. The Substitute Trustee's sale will occur between the earliest time to begin the sale as specified above and 4:00 p.m.

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving, or within the last nine (9) months have served, on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

IN WITNESS WHEREOF, the Substitute Trustee has signed this notice as of July 6, 2020.

[The remainder of this page is intentionally left blank.]

**SUBSTITUTE TRUSTEE:**

Name: J. Richard White

STATE OF TEXAS §
§
COUNTY OF DALALS §

This instrument was ACKNOWLEDGED before me on July 6, 2020, by J. RICHARD WHITE, in the capacity therein stated.

[SEAL]

LISA A. KING
Notary Public, State of Texas
Comm. Expires 10-04-2022
Notary ID 131749241

My Commission Expires:
10-04-2022

Notary Public in and for the State of Texas

Lisa A. King
Printed Name of Notary Public

Notary ID Number 131749241

06-29-20
60901-14

EXHIBIT A

Land

BEING a tract of land situated in the James A. Sylvester Survey Abstract No. 1383, and the John Grisby Survey, Abstract No. 495, City of Dallas Block No. A/1031, Texas and being all of Lot 4, Block A/1031, of TURTLE CREEK OFFICE ADDITION, an Addition to the City of Dallas, Texas, according to the plat thereof recorded in Volume 2003162, Page 48, Deed Records, Dallas County, Texas.

EXHIBIT B

Other Collateral

1. All buildings, structures, fixtures, additions, enlargements, extensions modifications, repairs, replacements and improvements now or hereafter located on the Mortgaged Property (hereinafter, collectively, the "**Improvements**");

2. All easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights, and development rights, as well as any and all inclusionary air rights certificates, floor area compensation rights, and/or density bonuses which may have been or may otherwise be created by, through or in connection with the Mortgaged Property and/or any portion of the Mortgaged Property in accordance with any inclusionary housing or other program regulated by the applicable local city and/or state or any other applicable municipal or governmental authority, all rights to oil, gas, minerals, coal and other substances of any kind or character, to the extent Mortgagor has such rights, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the Mortgaged Property and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road, highway, alley or avenue, opened, vacated or proposed, in front of or adjoining the Mortgaged Property, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtsey and rights of curtsey, property, possession, claim and demand whatsoever, both at law and in equity, of Mortgagor of, in and to the Mortgaged Property and the Improvements and every part and parcel thereof, with the appurtenances thereto.

3. Subject to the second (2nd) paragraph of Section 9 of the Deed of Trust, all machinery, furniture, furnishings, equipment, computer software and hardware, fixtures (including, without limitation, all heating, air conditioning, plumbing, lighting, communications and elevator fixtures) and other property of every kind and nature, whether tangible or intangible, whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Mortgaged Property and the Improvements, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Mortgaged Property and the Improvements and all building equipment, materials and supplies of any nature whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Mortgaged Property and the Improvements, or appurtenant thereto, or usable in connection with the present or future operation, enjoyment and occupancy of the Mortgaged Property and the Improvements (hereinafter collectively referred to as the "**Equipment**"), including any leases of any of the foregoing, any deposits existing at any time in connection with any of the foregoing, and the proceeds of any sale or transfer of the foregoing, and the right, title and interest of Mortgagor in and to any of the Equipment that may be subject to any

"security interests", as defined in the Uniform Commercial Code, as adopted and enacted by the State or States where any of the Mortgaged Property is located (the "**UCC**").

4. All awards or payments, including interest thereon, that may heretofore and hereafter be made with respect to the Mortgaged Property and the Improvements, whether from the exercise of the right of eminent domain or condemnation (including, without limitation, any transfer made in lieu of or in anticipation of the exercise of said rights), or for a change of grade, or for any other injury to or decrease in the value of the Mortgaged Property and the Improvements.

5. All leases and other agreements or arrangements heretofore or hereafter entered into affecting the use, enjoyment or occupancy of, or the conduct of any activity upon or in, the Mortgaged Property and the Improvements, including any extensions, renewals, modifications or amendments thereof (hereinafter collectively referred to as the "**Leases**") and all rents, rent equivalents, moneys payable as damages or in lieu of rent or rent equivalents, royalties (including, without limitation, and all rents, revenues, bonus money, royalties, rights, and benefits accruing to Mortgagor under all present and future oil, gas and mineral leases on any parts of the land (to the extent Mortgagor has such rights) and the Improvements), income, fees, receivables, receipts, revenues, deposits (including, without limitation, security, utility and other deposits), accounts, cash, issues, profits, charges for services rendered, and other payment and consideration of whatever form or nature received by or paid to or for the account of or benefit of Mortgagor or its agents or employees from any and all sources arising from or attributable to the Mortgaged Property and the Improvements (hereinafter collectively referred to as the "**Rents**") together with all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Indebtedness.

6. All proceeds of and any unearned premiums on any insurance policies covering the Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Mortgaged Property.

7. The right, in the name and on behalf of Mortgagor, to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to commence any action or proceeding to protect the interest of Mortgagee in the Mortgaged Property; all accounts, escrows, documents, instruments, investment property, chattel paper, claims, deposits and general intangibles, as the foregoing terms are defined in the UCC, and all franchises, trade names, trademarks, symbols, service marks, books, records, plans, specifications, designs, drawings, permits, consents, licenses, management agreements, contract rights (including, without limitation, any contract with any architect or engineer or with any other provider of goods or services for or in connection with any construction, repair, or other work upon the Mortgaged Property), approvals, actions, refunds of real estate taxes and assessments (and any other governmental impositions related to the Mortgaged Property), and causes of action that now or hereafter relate to, are derived from or are used in connection with the Mortgaged Property, or the use, operation, maintenance, occupancy or enjoyment thereof or the conduct of any business or activities thereon (hereinafter collectively referred to as the "**Intangibles**").

8. All contracts, permits, development rights, plans, specifications, blueprints, and tax abatements.

9. All proceeds, products, offspring, rents and profits from any of the foregoing, including, without limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution, or replacement of any of the foregoing.

*VG-364-2020-202000168289*

**Dallas County**
**John F. Warren**
**Dallas County Clerk**

**Instrument Number:** 202000168289

Real Property Recordings

Recorded On: July 06, 2020 12:42 PM

Number of Pages: 10

**" Examined and Charged as Follows: "**

Total Recording: $58.00

*********** **THIS PAGE IS PART OF THE INSTRUMENT** ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY because of color or race is invalid and unenforceable under federal law.

**File Information:**

| | |
|---|---|
| Document Number: | 202000168289 |
| Receipt Number: | 20200706000989 |
| Recorded Date/Time: | July 06, 2020 12:42 PM |
| User: | Kamesha W |
| Station: | CC47 |

**Record and Return To:**

SHERRY BALDWIN
2728 N HARDWOOD

DALLAS TX 75201

COUNTY COURT OF DALLAS COUNTY, TEXAS

**STATE OF TEXAS**
**Dallas County**
**I hereby certify that this Instrument was filed in the File Number sequence on the date/time printed hereon, and was duly recorded in the Official Records of Dallas County, Texas**

John F. Warren
Dallas County Clerk
Dallas County, TX

06-29-20
60901-14

When Recorded, Return To:

Winstead PC
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Attention: J. Richard White, Esq.

# APPOINTMENT OF SUBSTITUTE TRUSTEES WITH REMOVAL OF TRUSTEE AND INSTRUCTIONS TO SUBSTITUTE TRUSTEES

This APPOINTMENT OF SUBSTITUTE TRUSTEES WITH REMOVAL OF TRUSTEE AND INSTRUCTIONS TO SUBSTITUTE TRUSTEES ("Appointment") is dated as of June 29, 2020, and executed by 2999 TURTLE CREEK LLC, a Delaware limited liability company ("Mortgagee"), whose street address is set forth on the signature page hereof.

WHEREAS, MO 2999TC, LLC, a Delaware limited liability company (the "Mortgagor"), executed that certain Deed of Trust, Security Agreement and Fixture Filing (as same may have been heretofore assigned, transferred, amended, modified, extended, renewed and/or restated the "Deed of Trust"), dated September 20, 2019, recorded as Document Number 201900253450 in the Real Property Records, Dallas County, Texas, to MICHAEL B. MASSEY, as trustee (the "Original Trustee"), for the benefit of Mortgagee pertaining to certain land ("Land") located in Dallas County, Texas, more particularly described in Exhibit A attached hereto and incorporated herein by reference, and certain other collateral ("Other Collateral") more particularly described in Exhibit B attached hereto and incorporated herein by reference (the Land and Other Collateral is herein referred to as the "Mortgaged Property") to secure payment of that certain Secured Promissory Note (as same may have been assigned, amended, modified, extended, renewed, restated and/or replaced, the "Note") dated of even date with the Deed of Trust in the original principal amount of $32,500,000.00, executed by Mortgagor and payable to Mortgagee, and all other indebtedness, liabilities and obligations (collectively, the "Indebtedness") described in the Note and Deed of Trust;

WHEREAS, pursuant to the authority of Section 51.0075(c) of the Texas Property Code ("Substitute Trustee Statute"), Mortgagee is authorized to appoint a substitute trustee or multiple substitute trustees to act instead of the Original Trustee, and any previously appointed substitute trustee(s), without any formality other than the removal of the Original Trustee, and all previously appointed substitute trustee(s), and appointment of the substitute trustee(s) by written instrument; and

WHEREAS, the Deed of Trust specifically provides that the appointment of the substitute trustee must be in writing and must be recorded in the Real Property Records of the aforesaid county in which the Mortgaged Property is located; and

WHEREAS, pursuant to the terms and provisions of the Substitute Trustee Statute and the Deed of Trust, the Mortgagee has determined to remove, without cause, the Original Trustee, and any previously appointed substitute trustee, and to appoint J. Richard White, Brian T. Morris, Amanda Grainger, and Sherry Baldwin, each with a street address of 500 Winstead Building, 2728 N. Harwood Street, Dallas, Texas 75201, individually and severally, and not jointly (collectively, the "Substitute Trustees" or severally, a "Substitute Trustee"), each of whom may act alone, without the necessity of the joinder of the other Substitute Trustees, as the substitute trustee, in the place and stead of and to succeed to all of the rights, titles, estates, powers, privileges and authorities granted in the Deed of Trust to the Original Trustee; and

WHEREAS, a default has occurred in the payment of the Indebtedness and same has not been cured as of the date hereof and the Indebtedness has been accelerated and is now wholly due and payable; and

WHEREAS, Mortgagee hereby requests any of the Substitute Trustees, acting alone, without the necessity of the joinder of the other Substitute Trustees, to sell the Mortgaged Property so as to satisfy the portion of the Indebtedness now due and payable and which may become due and payable on or before the date of such foreclosure sale.

NOW, THEREFORE, Mortgagee, the beneficiary under the Deed of Trust, does hereby (i) remove, and declare to be removed, without cause, the Original Trustee, and any previously appointed substitute trustee(s), and (ii) under and by virtue of the Substitute Trustee Statute and the Deed of Trust, name, designate and appoint, the Substitute Trustees to be the substitute trustees under the Deed of Trust and to act, individually and severally, without the necessity of a joinder of the other Substitute Trustees, under and by virtue of the Deed of Trust and applicable law and to succeed to and become vested with all of the estate and title of the Original Trustee, and any previously appointed substitute trustee(s), under the Deed of Trust in and to the Mortgaged Property, and with all the rights, powers, privileges, and authorities vested in the Original Trustee, and any previously appointed substitute trustee(s), by the terms and conditions of the Deed of Trust and applicable law, and (iii) instruct the Substitute Trustees, each acting alone without the necessity of the joinder of the other Substitute Trustees, to sell the Mortgaged Property, in parcels or in whole, so as to satisfy the Indebtedness which is now due and payable and which may become due and payable on or before the date of such foreclosure sale, pursuant to the terms and provisions of the Deed of Trust and applicable law.

IN WITNESS WHEREOF, Mortgagee has signed this Appointment.

[The remainder of this page is intentionally left blank.]

Street Address:

520 Madison Avenue, Suite 3501
New York, New York 10022

**MORTGAGEE:**

2999 TURTLE CREEK LLC,
a Delaware limited liability company

By: [signature]
Name: Brian Shatz
Title: Authorized Signatory

STATE OF New York §
§
COUNTY OF Suffolk §

This instrument was ACKNOWLEDGED before me on June 30, 2020, by Brian Shatz, the authorized signatory of 2999 TURTLE CREEK LLC, a Delaware limited liability company, on behalf of said limited liability company.

[S E A L]

Jeanne Broderson
NOTARY PUBLIC, STATE OF NEW YORK
No. 02BR6168112
Qualified in New York County
Commission Expires ~~June 4, 201~~ October 29, 2023

[signature]
Notary Public, State of New York

My Commission Expires:

October 29, 2023

Jeanne Broderson
Printed Name of Notary Public

Notary ID #: 02BR6168112

EXHIBIT A – Land
EXHIBIT B – Other Collateral

EXHIBIT A

Land

The description of the Land follows this cover page.

06-29-20
60901-14

EXHIBIT A

Land

BEING a tract of land situated in the James A. Sylvester Survey Abstract No. 1383, and the John Grisby Survey, Abstract No. 495, City of Dallas Block No. A/1031, Texas and being all of Lot 4, Block A/1031, of TURTLE CREEK OFFICE ADDITION, an Addition to the City of Dallas, Texas, according to the plat thereof recorded in Volume 2003162, Page 48, Deed Records, Dallas County, Texas.

EXHIBIT B

Other Collateral

The description of the Other Collateral follows this cover page.

OTHER COLLATERAL

1. All buildings, structures, fixtures, additions, enlargements, extensions modifications, repairs, replacements and improvements now or hereafter located on the Mortgaged Property (hereinafter, collectively, the **"Improvements");**

2. All easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights, and development rights, as well as any and all inclusionary air rights certificates, floor area compensation rights, and/or density bonuses which may have been or may otherwise be created by, through or in connection with the Mortgaged Property and/or any portion of the Mortgaged Property in accordance with any inclusionary housing or other program regulated by the applicable local city and/or state or any other applicable municipal or governmental authority, all rights to oil, gas, minerals, coal and other substances of any kind or character, to the extent Mortgagor has such rights, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the Mortgaged Property and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road, highway, alley or avenue, opened, vacated or proposed, in front of or adjoining the Mortgaged Property, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtsey and rights of curtsey, property, possession, claim and demand whatsoever, both at law and in equity, of Mortgagor of, in and to the Mortgaged Property and the Improvements and every part and parcel thereof, with the appurtenances thereto.

3. Subject to the second (2nd) paragraph of Section 9 of the Deed of Trust, all machinery, furniture, furnishings, equipment, computer software and hardware, fixtures (including, without limitation, all heating, air conditioning, plumbing, lighting, communications and elevator fixtures) and other property of every kind and nature, whether tangible or intangible, whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Mortgaged Property and the Improvements, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Mortgaged Property and the Improvements and all building equipment, materials and supplies of any nature whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Mortgaged Property and the Improvements, or appurtenant thereto, or usable in connection with the present or future operation, enjoyment and occupancy of the Mortgaged Property and the Improvements (hereinafter collectively referred to as the **"Equipment"),** including any leases of any of the foregoing, any deposits existing at any time in connection with any of the foregoing, and the proceeds of any sale or transfer of the foregoing, and the right, title and interest of Mortgagor in and to any of the Equipment that may be subject to any "security interests", as defined in the Uniform Commercial Code, as adopted and enacted by the State or States where any of the Mortgaged Property is located (the **"UCC").**

4. All awards or payments, including interest thereon, that may heretofore and hereafter be made with respect to the Mortgaged Property and the Improvements, whether from the

exercise of the right of eminent domain or condemnation (including, without limitation, any transfer made in lieu of or in anticipation of the exercise of said rights), or for a change of grade, or for any other injury to or decrease in the value of the Mortgaged Property and the Improvements.

5. All leases and other agreements or arrangements heretofore or hereafter entered into affecting the use, enjoyment or occupancy of, or the conduct of any activity upon or in, the Mortgaged Property and the Improvements, including any extensions, renewals, modifications or amendments thereof (hereinafter collectively referred to as the **"Leases")** and all rents, rent equivalents, moneys payable as damages or in lieu of rent or rent equivalents, royalties (including, without limitation, and all rents, revenues, bonus money, royalties, rights, and benefits accruing to Mortgagor under all present and future oil, gas and mineral leases on any parts of the land (to the extent Mortgagor has such rights) and the Improvements), income, fees, receivables, receipts, revenues, deposits (including, without limitation, security, utility and other deposits), accounts, cash, issues, profits, charges for services rendered, and other payment and consideration of whatever form or nature received by or paid to or for the account of or benefit of Mortgagor or its agents or employees from any and all sources arising from or attributable to the Mortgaged Property and the Improvements (hereinafter collectively referred to as the **"Rents")** together with all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Indebtedness.

6. All proceeds of and any unearned premiums on any insurance policies covering the Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Mortgaged Property.

7. The right, in the name and on behalf of Mortgagor, to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to commence any action or proceeding to protect the interest of Mortgagee in the Mortgaged Property; all accounts, escrows, documents, instruments, investment property, chattel paper, claims, deposits and general intangibles, as the foregoing terms are defined in the UCC, and all franchises, trade names, trademarks, symbols, service marks, books, records, plans, specifications, designs, drawings, permits, consents, licenses, management agreements, contract rights (including, without limitation, any contract with any architect or engineer or with any other provider of goods or services for or in connection with any construction, repair, or other work upon the Mortgaged Property), approvals, actions, refunds of real estate taxes and assessments (and any other governmental impositions related to the Mortgaged Property), and causes of action that now or hereafter relate to, are derived from or are used in connection with the Mortgaged Property, or the use, operation, maintenance, occupancy or enjoyment thereof or the conduct of any business or activities thereon (hereinafter collectively referred to as the **"Intangibles").**

8. All contracts, permits, development rights, plans, specifications, blueprints, and tax abatements.

9. All proceeds, products, offspring, rents and profits from any of the foregoing, including, without limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution, or replacement of any of the foregoing.

# APPENDIX E

HOGE & GAMEROS, L.L.P.

ATTORNEYS & COUNSELORS

4514 Cole Avenue, Suite 1500
Dallas, Texas 75205
Phone: 214-765-6002
Fax: 214-292-8556

CHARLES W. GAMEROS, JR., P.C.
Email: BGameros@LegalTexas.com

August 10, 2020

**VIA CERTIFIED MAIL NO.**
**7013-0600-0002-0599-6631**
**RETURN RECEIPT REQUESTED**
**AND REGULAR MAIL**
MO 2999TC, LLC
13901 Midway Road, Suite 102-243
Dallas, Texas 75244

**NOTICE OF FORECLOSURE SALE**

Re: **Secured Promissory Note and Deed of Trust, Security Agreement and Fixture Filing**

Dear Madam(s) or Sir(s):

This firm represents 2999 TURTLE CREEK LLC, a Delaware limited liability company, ("Lender") in connection with the subject matter of this letter and this letter is written on Lender's behalf.

Reference is hereby made to that certain indebtedness (the "Indebtedness") evidenced by Secured Promissory Note ("Note") dated September 20, 2019 in the principal amount of $32,500,000.00, executed by MO 2999TC, LLC, a Delaware limited liability company ("Borrower"), payable to the order of Lender, and secured by that certain Deed of Trust, Security Agreement and Fixture Filing (the "Deed of Trust"), dated September 20, 2019, recorded Document Number 2019-00253450 in the Real Property Records, Dallas County, Texas, covering that certain land and those certain improvements located thereon, in Dallas, Dallas County, Texas, and that certain personal property described under the Deed of Trust (collectively, the "Mortgaged Property"). Lender is the current owner and holder of the Note and beneficiary under the Deed of Trust.

Further reference is made to the Lender's notice of default and intent to accelerate, and notice of foreclosure and acceleration, received by Borrower previously.

Borrower has failed to make payments due and owing under the Note and Deed of Trust, and, after notice thereof and failure to cure same within the periods allowed under the Note and Deed of Trust, there is now one or more Events of Default under the terms of the Note and Deed of Trust. In addition, Borrower previously received notice of Lender's intent to accelerate the entire unpaid balance of the Note and institute foreclosure proceedings under the Deed of Trust on the Mortgaged Property if Borrower failed to pay, within the time period specified in such prior notice, all amounts then due and owing under the terms of the Note and Deed of Trust, including attorneys' fees and expenses as therein provided. Borrower waived any and all rights of presentment, protest, notice of protest, demand, notice of dishonor, notice of nonpayment, notice of intent to accelerate, notice of acceleration and all other notices in the Note and Deed of Trust.

Borrower is hereby notified that because of Borrower's failure to pay such sums as required, the entire Indebtedness evidenced by the Note and other amounts evidenced and/or secured by the Deed of Trust, including the outstanding principal balance of and all accrued but unpaid interest on the Note and other amounts evidenced by the Deed of Trust, have been accelerated and such Indebtedness (subject to any limitation on interest to the maximum lawful amount), and the additional expenses previously incurred by Lender in connection with enforcing its rights and remedies under the Note and Deed of Trust are thus fully matured and currently due and payable.

Demand is hereby made for immediate payment in full of the entire unpaid principal balance of the Note, plus (to the extent of the maximum lawful amount) accrued and unpaid interest thereon and any and all other sums secured by the Deed of Trust and the other collection costs and attorneys' fees incurred by Lender in connection therewith.

The amount of the outstanding principal balance of, and all accrued but unpaid interest on, the Note (the "Past-Due Amount"), can be obtained by contacting Lender's responsible officer, Shoshana Carmel, at 520 Madison Ave., Ste. 3501, New York, New York 10022, (646) 442-4208. You are also liable for trustee's fees, attorneys' fees, and such other sums, costs and expenses as are incurred by Lender in connection with the collection of the indebtedness evidenced by the Note and the foreclosure as provided in the Note and the Deed of Trust, if and to the extent allowed under applicable law. In the event the Mortgaged Property secured by the Deed of Trust is sold at foreclosure for an amount insufficient to satisfy the entire unpaid balance of principal and accrued interest, trustee's fees, attorneys' fees, and expenses incurred in connection with the foreclosure, Borrower will be liable for the deficiency.

This letter is also a demand for Borrower to comply with the provisions of the Deed of Trust and that certain Assignment of Rents and Leases (the "Assignment") dated September 20, 2019, executed by Borrower for the benefit of Lender with respect to the "Rents" received from the Mortgaged Prope1iy covered by the Deed of Trust and Assignment.

By copy hereof, Lender hereby advises TIMOTHY LYNCH BARTON, who is copied herewith, as guarantor obligated to pay all or any portion of the indebtedness evidenced by the Note and Deed of Trust, of such default and acceleration of such indebtedness and this letter constitutes formal demand on such guarantor to pay all of such Indebtedness pursuant to the terms of guaranty agreements relating thereto.

Enclosed for your reference is a copy of a Notice of Foreclosure Sale ("Notice") pertaining to the Deed of Trust and the real and personal property ("Mortgaged Property") described in such Notice. The Notice will be or has been posted at the courthouse door of Dallas County, Texas, and a copy of the Notice will be or has been filed in the office of the County Clerk of Dallas County, Texas. The foreclosure sale specified in the Notice will take place as specified in the Notice, as authorized by the Deed of Trust and/or applicable law. Regardless of any prior Notices of Foreclosure Sale providing any other dates to the contrary (which such prior notices, if any, are expressly superceded hereby), you are hereby advised that such Mortgaged Property will be sold as provided in the Notice.

The Mortgaged Property will be sold to the highest bidder for cash and in accordance with the requirements of the Deed of Trust and applicable law. Please refer to the Notice for additional information regarding the sale. In the event of any inconsistency between the Notice and anything contained herein, the Notice will govern.

Enclosed is a copy of the Appointment of Substitute Trustees With Removal of Trustee and Instructions to Substitute Trustees ("Appointment") executed by Lender with respect to the Deed of Trust and the Mortgaged Property, which Appointment, among other things, gives written notice of the defaults referenced herein and instructs the Substitute Trustees (as defined in the Appointment) to foreclose on the Deed of Trust against the Mortgaged Property as provided in the Notice (as defined below). Pursuant to the Deed of Trust, the Appointment will be concurrently filed by the Substitute Trustees in the Real Property Records of Dallas County, Texas.

Notwithstanding the foregoing, to the extent that any party obligated under the Note and/or Deed of Trust has been discharged or dismissed by, or is subject to the protection or proceedings of, or has been discharged by, a bankruptcy court acting under the United States Bankruptcy Code, such party is advised that this letter and the Notice are transmitted to such party for compliance with the applicable state law requirements and informational purposes only and is not intended to violate any automatic stay or to constitute a demand for payment or an attempt to collect on any such indebtedness evidenced by the Note and Deed of Trust that may be subject to the automatic stay or may have been discharged.

Nothing herein is intended as, or shall constitute or be construed as (i) an election of remedies or a waiver of any rights or remedies that the Lender may have under the terms of any of the Note, Deed of Trust, or other indebtedness documents, (ii) a waiver or modification of the terms of the Note, Deed of Trust, or other indebtedness documents or of any of the Lender's rights or remedies thereunder, (iii) a waiver by Lender of any defaults under the Note, Deed of Trust, or other indebtedness documents (whether or not known to the Lender, described herein, or currently existing or occurring hereafter); or (iv) a warranty or representation or agreement that Lender will amend or modify the existing terms of the Indebtedness, or that Lender will take or forbear from taking any action with respect to the Indebtedness. Lender's delivery of this letter shall not entitle Borrower to any further notices or demands.

Lender reserves the right to pursue legal action and any other remedies provided for in the Note, Deed of Trust, or other indebtedness documents and/or by the laws of any state regardless of whether or not you dispute the validity of the Past-Due Amount or any portion thereof as hereinbefore described.

Please finally be advised that this office may deemed to be a debt collector, that this letter is an attempt to collect the indebtedness described above and herein, and that any information obtained will be used for purposes of collecting that indebtedness. This letter is being sent to you in accordance with state and federal law.

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

If you have any questions, please consult your legal counsel.

Sincerely,

Douglas Wade Carvell, P.C.

copy: Timothy Lynch Barton (with enclosures)
(via CMRRR No. 7013-0600-0002-0599-6648)
Vance McMurry, Esq. (with enclosures) (*via Regular Mail*)
Elizabeth C. Brandon, Esq. (with enclosures) (*via Regular Mail*)
Rusty J. O'Kane (with enclosures) (*via Regular Mail*)

# NOTICE OF FORECLOSURE SALE

State of Texas §
§
County of Dallas §

WHEREAS, MO 2999TC, LLC, a Delaware limited liability company ("Mortgagor"), executed and delivered to MICHAEL B. MASSEY (the "Original Trustee") for the benefit of 2999 TURTLE CREEK LLC, a Delaware limited liability company ("Mortgagee"), whose street address is 520 Madison Avenue, Suite 3501, New York, New York 10022, that certain Deed of Trust, Security Agreement and Fixture Filing (as same may have been heretofore assigned, transferred, amended, modified, extended, renewed and/or restated (the "Deed of Trust"), dated September 20, 2019, recorded as Document Number 201900253450 in the Real Property Records, Dallas County, Texas, to secure that certain Secured Promissory Note (as same may have been assigned, amended, modified, extended, renewed, restated and/or replaced, the "Note") dated of even date with the Deed of Trust, in the principal sum of $32,500,000.00, executed by Mortgagor and payable to Mortgagee, and all other indebtedness, liabilities, and obligations (collectively, the "Indebtedness") described in the Note and Deed of Trust and all other documents evidencing, securing or governing the Indebtedness (collectively, the "Loan Documents"); and

WHEREAS, to secure the Indebtedness, the Deed of Trust created a lien on, among other things, certain land (the "Land") situated in Dallas County, Texas, as more particularly described on Exhibit A hereto, and a lien and security interest in favor of Mortgagee in certain other collateral located on or related to the Land as more particularly described on Exhibit B hereto (collectively, the "Other Collateral") (the Land and the Other Collateral being herein collectively called the "Mortgaged Property"); and

WHEREAS, a default has occurred in the payment of the Indebtedness and same has not been cured as of the date hereof and the Indebtedness has been accelerated and is now wholly due and payable; and

WHEREAS, Mortgagee has made demand upon Mortgagor to pay to Mortgagee the Indebtedness now due, but such Indebtedness has not been paid; and

WHEREAS, pursuant to and in accordance with the authority of Section 51.0075(c) of the Texas Property Code and the Deed of Trust, Mortgagee has appointed Douglas Wade Carvell, 6116 North Central Expressway, Suite 1400, Dallas, Texas 75206 (the "Substitute Trustee"), as the substitute trustee in the place and stead of and to succeed to all of the rights, titles, estates, powers, privileges and authorities granted in the Deed of Trust to the Original Trustee, and any previously appointed substitute trustee(s); and

WHEREAS, Mortgagee, as the beneficiary under the Deed of Trust, has instructed the Substitute Trustees, or any one of them, acting alone without the necessity of the joinder of the appropriate notice and to sell the Mortgaged Property to satisfy, in whole or in part, the unpaid Indebtedness; and

WHEREAS, the Mortgaged Property will be sold "as-is" without any expressed or implied warranties, except as to warranties of title, and at the purchaser's own risk (and not as a consumer) pursuant to Section 51.009 of the Texas Property Code.

NOW, THEREFORE, NOTICE IS HEREBY GIVEN that on Tuesday, September 1, 2020, no earlier than 10:00 a.m., or no later than three hours after that time, the Substitute Trustee will commence the sale of all or a portion of the Mortgaged Property, in parcels or as a whole, at public auction to the highest bidder for cash, "AS IS," pursuant to the Deed of Trust and applicable law; such sale will be held at the following designated area: the area outside on the north side of the George Allen Courts Building facing Commerce Street below the overhang, located at 600 Commerce Street, Dallas, Texas 75202; SUBJECT, HOWEVER, to all liens, exceptions to title, easements, restrictions, and encumbrances affecting any of the Mortgaged Property or title thereto which have equal or superior priority to the lien and security interest created by the Deed of Trust. The Substitute Trustee's sale will occur between the earliest time to begin the sale as specified above and 4:00 p.m. There will be no warranty relating to title, possession, or quiet enjoyment or the like for the property included in the sale. Lender may bid by credit against the indebtedness secured by the Deed of Trust. The Substitute Trustee conducting the Foreclosure Sale may, at his or her option, postpone the sale for a reasonable time to permit the highest bidder (if other than Lender) to produce cash to pay the purchase price bid, and the sale may be resumed if the bidder fails to produce cash to pay the purchase price within such time period, provided in any event the sale shall be concluded no later than 4:00 p.m. local time.

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving, or within the last nine (9) months have served, on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

IN WITNESS WHEREOF, the Substitute Trustee has signed this notice as of August 6, 2020.

[The remainder of this page is intentionally left blank.]

______________________________
**Substitute Trustee**

State of Texas §
§
County of Dallas §

This instrument was acknowledged before me on August 6, 2020 by Douglas Wade Carvell in the capacity therein stated.

DAVID L. BARRETT
My Notary ID # 124533781
Expires May 14, 2023

______________________________
Notary Public in and for the State of Texas

My commission expires:

______________________

# EXHIBIT "A"

## Property Description

BEING a tract of land situated in the James A. Sylvester Survey Abstract No. 1383, and the John Grisby Survey, Abstract No. 495, City of Dallas Block No. All 031, Texas and being all of Lot 4, Block A/1031, of TURTLE CREEK OFFICE ADDITION, an Addition to the City of Dallas, Texas, according to the plat thereof recorded in Volume 2003162, Page 48, Deed Records, Dallas County, Texas.

# EXHIBIT "B"

## Other Collateral

1. All buildings, structures, fixtures, additions, enlargements, extensions modifications, repairs, replacements and improvements now or hereafter located on the Mortgaged Property (hereinafter, collectively, the "Improvements");

2. All easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights, and development rights, as well as any and all inclusionary air rights certificates, floor area compensation rights, and/or density bonuses which may have been or may otherwise be created by, through or in connection with the Mortgaged Property and/or any portion of the Mortgaged Property in accordance with any inclusionary housing or other program regulated by the applicable local city and/or state or any other applicable municipal or governmental authority, all rights to oil, gas, minerals, coal and other substances of any kind or character, to the extent Mortgagor has such rights, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the Mortgaged Property and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road, highway, alley or avenue, opened, vacated or proposed, in front of or adjoining the Mortgaged Property, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtsey and rights of curtsey, property, possession, claim and demand whatsoever, both at law and in equity, of Mortgagor of, in and to the Mortgaged Property and the Improvements and every part and parcel thereof, with the appurtenances thereto.

3. Subject to the second (2nd) paragraph of Section 9 of the Deed of Trust, all machinery, furniture, :furnishings, equipment, computer software and hardware, fixtures (including, without limitation, all heating, air conditioning, plumbing, lighting, communications and elevator fixtures) and other property of every kind and nature, whether tangible or intangible, whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Mortgaged Property and the Improvements, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Mortgaged Property and the Improvements and all building equipment, materials and supplies of any nature whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Mortgaged Property and the Improvements, or appurtenant thereto, or usable in connection with the present or future operation, enjoyment and occupancy of the Mortgaged Property and the Improvements (hereinafter collectively referred to as the "Equipment"), including any leases of any of the foregoing, any deposits existing at any time in connection with any of the foregoing, and the proceeds of any sale or transfer of the foregoing, and the right, title and interest of Mortgagor in and to any of the Equipment that may be subject to any by the State or States where any of the Mortgaged Property is located (the "UCC").

4. All awards or payments, including interest thereon, that may heretofore and hereafter be made with respect to the Mortgaged Property and the Improvements, whether from the

exercise of the right of eminent domain or condemnation (including, without limitation, any transfer made in lieu of or in anticipation of the exercise of said rights), or for a change of grade, or for any other injury to or decrease in the value of the Mortgaged Property and the Improvements.

5. All leases and other agreements or arrangements heretofore or hereafter entered into affecting the use, enjoyment or occupancy of, or the conduct of any activity upon or in, the Mortgaged Property and the Improvements, including any extensions, renewals, modifications or amendments thereof (hereinafter collectively referred to as the "Leases") and all rents, rent equivalents, moneys payable as damages or in lieu of rent or rent equivalents, royalties (including, without limitation, and all rents, revenues, bonus money, royalties, rights, and benefits accruing to Mortgagor under all present and future oil, gas and mineral leases on any parts of the land (to the extent Mortgagor has such rights) and the Improvements), income, fees, receivables, receipts, revenues, deposits (including, without limitation, security, utility and other deposits), accounts, cash, issues, profits, charges for services rendered, and other payment and consideration of whatever form or nature received by or paid to or for the account of or benefit of Mortgagor or its agents or employees from any and all sources arising from or attributable to the Mortgaged Property and the Improvements (hereinafter collectively referred to as the "Rents") together with all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Indebtedness.

6. All proceeds of and any unearned premiums on any insurance policies covering the Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Mortgaged Property.

7. The right, in the name and on behalf of Mortgagor, to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to commence any action or proceeding to protect the interest of Mortgagee in the Mortgaged Property; all accounts, escrows, documents, instruments, investment property, chattel paper, claims, deposits and general intangibles, as the foregoing terms are defined in the UCC, and all franchises, trade names, trademarks, symbols, service marks, books, records, plans, specifications, designs, drawings, permits, consents, licenses, management agreements, contract rights (including, without limitation, any contract with any architect or engineer or with any other provider of goods or services for or in connection with any construction, repair, or other work upon the Mortgaged Property), approvals, actions, refunds of real estate taxes and assessments (and any other governmental impositions related to the Mortgaged Property), and causes of action that now or hereafter relate to, are derived from or are used in connection with the Mortgaged Property, or the use, operation, maintenance, occupancy or enjoyment thereof or the conduct of any business or activities thereon (hereinafter collectively referred to as the "Intangibles").

8. All contracts, permits, development rights, plans, specifications, blueprints, and tax abatements.

9. All proceeds, products, offspring, rents and profits from any of the foregoing, including, without limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution, or replacement of any of the foregoing.

**Dallas County**
**John F. Warren**
**Dallas County Clerk**

---

**Instrument Number:** 202000206703

eRecording - Real Property

Recorded On: August 10, 2020 09:48 AM

Number of Pages: 8

---

**" Examined and Charged as Follows: "**

Total Recording: $50.00

---

*********** **THIS PAGE IS PART OF THE INSTRUMENT** ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY because of color or race is invalid and unenforceable under federal law.

**File Information:**

| | |
|---|---|
| Document Number: | 202000206703 |
| Receipt Number: | 20200807000579 |
| Recorded Date/Time: | August 10, 2020 09:48 AM |
| User: | Tineka S |
| Station: | CC08 |

**Record and Return To:**

Simplifile

---




**STATE OF TEXAS**
**COUNTY OF DALLAS**

**I hereby certify that this Instrument was** FILED **In the File Number sequence on the date/time printed hereon, and was duly** RECORDED **in the Official Records of Dallas County, Texas.**

John F. Warren
Dallas County Clerk
Dallas County, TX

# APPENDIX F

REPORTER'S RECORD
VOLUME 1 OF 1 VOLUME
TRIAL COURT CAUSE NO. DC-20-05864-A

| | | |
|---|---|---|
| 2999TC ACQUISITIONS, L.L.C., f/k/a MO 2999TC, L.L.C., PLAINTIFF, | ) | IN THE DISTRICT COURT |
| VS. | ) | DALLAS COUNTY, TEXAS |
| HNGH TURTLE CREEK, L.L.C., WILLIAM L. HUTCHINSON, VIPIN NAMBIAR, HN GREEN HOLLOW CAPITAL PARTNERS, L.L.C., 2999 TURTLE CREEK, L.L.C., and MADISON REALTY CAPITAL, L.P., DEFENDANTS. | ) | 14TH JUDICIAL DISTRICT |

PLAINTIFF'S SUPPLEMENTAL APPLICATION FOR TRO, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION

On the 3rd day of August, 2020, the following proceedings came on to be held in the above-titled and numbered cause before the Honorable Eric V. Moyé, Judge Presiding, held via Zoom in Dallas, Dallas County, Texas.

Proceedings reported by computerized stenotype machine.

DIANE L. ROBERT, CSR, RPR
TEXAS CSR NO. 2179
Expiration Date: 11/30/2021
Official Court Reporter of the 14th
Judicial District Court
Dallas County, Texas
600 Commerce Street, Dallas, Tx 75202
214-653-7298

APPEARANCES

REPRESENTING PLAINTIFF 2999TC ACQUISITIONS, L.L.C., f/k/a MO 2999TC, L.L.C.:

MS. ELIZABETH BRANDON
Texas Bar No. 24049580
ebrandon@reedsmith.com
MR. BRADLEY J. PURCELL
Texas Bar No. 24063965
bpurcell@reedsmith.com
REED SMITH LLP
2850 N. Harwood St., Suite 1500
Dallas, Texas 75201
Telephone: (469) 680.4200
Facsimile: (469) 680.4299

- and -

REPRESENTING DEFENDANT HNGH TURTLE CREEK, L.L.C., VIPIN NAMBIAR, WILLIAM L. HUTCHINSON, HN GREEN HOLLOW CAPITAL PARTNERS, L.L.C.:

MR. RUSTY J. O'KANE
Texas Bar No. 24088149
rusty.okane@wickphillips.com
WICK PHILLIPS GOULD & MARTIN, LLP
3131 McKinney Avenue, Suite 100
Dallas, Texas 75204
Telephone: (214) 692-6200
Facsimile: (214) 692-6255

- and -

REPRESENTING DEFENDANT 2999 TURTLE CREEK, L.L.C:

MR. DOUGLAS WADE CARVELL
HOGE & GAMEROS
6116 N. Central Expressway
Suite 1400
Dallas, Texas 75206
Telephone: 214-765-6000
E-mail: wcarvell@legaltexas.com

VOLUME 1

Plaintiff's Supplemental Application For TRO, Temporary Injunction, and Permanent Injunction

August 3, 2020


| | PAGE | VOL. |
|---|---|---|
| Appearances .................................... | 4 | 1 |
| Proceedings .................................... | 4 | 1 |
| Application for Temporary Restraining Order ....... | 4 | 1 |
| Argument by Ms. Brandon ........................... | 5 | 1 |
| Argument by Mr. Carvell ........................... | 13 | 1 |
| Response by Ms. Brandon ........................... | 15 | 1 |
| Argument by Mr. O'Kane ............................ | 19 | 1 |
| Reply by Ms. Brandon .............................. | 21 | 1 |
| Reply by Mr. Carvell .............................. | 23 | 1 |
| Reply by Mr. O'Kane ............................... | 24 | 1 |
| Discussion Regarding Bond ......................... | 24 | 1 |
| Argument by Ms. Brandon ........................... | 24 | 1 |
| Argument by Mr. Carvell ........................... | 25 | 1 |
| Argument by Mr. O'Kane ............................ | 26 | 1 |
| Reply by Ms. Brandon .............................. | 26 | 1 |
| Response by Mr. Carvell ........................... | 28 | 1 |
| Court's Ruling .................................... | 28 | 1 |
| Adjournment ....................................... | 30 | 1 |
| Reporter's Certificate ............................ | 31 | 1 |

P R O C E E D I N G S

(Open Court; Proceedings commenced at 10:31 a.m.)

THE COURT: We're on the record in 20-05864, 2999TC Acquisitions versus HNGH Turtle Creek.

May I have announcements, please. Plaintiff first.

MS. BRANDON: Good morning, Your Honor. Elizabeth Brandon for Plaintiff.

THE COURT: Good morning, Ms. Brandon.

MR. PURCELL: Pardon me. Also Bradley Purcell for Plaintiff, Your Honor.

MR. O'KANE: Good morning, Your Honor. Rusty O'Kane on behalf of the Green Hollow entities and the two individual Defendants, Bill Hutchinson and Vipin Nambiar.

THE COURT: All right.

MR. CARVELL: Good morning, Your Honor. Douglas Wade Carvell on behalf of the new Defendant, 2999 Turtle Creek, L.L.C.

THE COURT: Okay. I assume you have all talked meaningfully about this Application for Temporary Restraining Order, correct?

MS. BRANDON: Yes, Your Honor.

THE COURT: Okay. All right. I'll hear from you briefly, Counsel.

MS. BRANDON: Yes, Your Honor. We're here on a TRO to stop a foreclosure sale that is set for tomorrow.

The foreclosure is for property that's located at 2999 Turtle Creek in Dallas County. And I understand that the Court has read Plaintiff's Fourth Amended Petition and TRO Application.

We did submit --

THE COURT: Yes.

MS. BRANDON: -- a supplement this morning, and, Your Honor, I want to apologize for the late submission, but the reason --

THE COURT: I've not seen that. I know that it got filed just over an hour ago.

MS. BRANDON: Yes, Your Honor.

THE COURT: Tell me, first, why it was filed so late.

MS. BRANDON: The reason the supplement was filed late, Your Honor, is because it raises an issue of conflict regarding the Lender -- counsel for Lender --

THE COURT: When did that conflict reveal itself?

MS. BRANDON: The conflict revealed itself several weeks ago. We raised it with opposing counsel.

The opposing counsel --

THE COURT: Counsel, here's my concern:

Last -- I prepare -- I don't just show up and listen to what you-all say, I prepare in advance for these. And when you file something an hour before your hearing is set, that doesn't give me an opportunity to adequately prepare, and it also -- and I know you wouldn't do this, but it also looks like you're sandbagging opposing counsel, knowing about an issue for -- to use your word -- a couple of weeks and not bringing it to the -- to everyone's attention until literally the 11th hour. And so I -- I hope what's -- what is in the pleading that you filed this morning isn't the seminal dispositive issue in the case because if it is, it's not being considered.

So let's move on and just talk about the petition -- the Fourth Amended Original Petition itself.

MS. BRANDON: Yes, Your Honor.

Your Honor, may I at least --

THE COURT: No, I don't want to discuss that any further, Counsel.

MS. BRANDON: Yes, Your Honor.

And -- Well, there are three -- Let me just start with a little bit of background, Your Honor. My client, 2999 Acquisitions, which I'll refer to as

"Plaintiff" or "Borrower", entered into a 32.5 million dollar loan agreement with the Defendant 2999 Turtle Creek, L.L.C., which is a single-purpose entity that's owned by Madison Reality. And I'll refer to both 2999 Turtle Creek and Madison Reality as "Lender".

The remaining defendants, HNGH Turtle Creek and its principal, HN Green Hollow, entered into a side agreement with the Lender concerning the loan.

Your Honor may recall we were previously here on that agreement, the Participation Agreement, under which HN Defendants claimed to have rights as Lender -- quote "Lender" on our loan.

Following that hearing, HNGH produced a coppy of the Participation Agreement under the confines of a protective order.

Now, at the hearing -- the prior hearing, Your Honor, we asked the Court to enjoin HNGH from taking steps to foreclos- --

THE COURT: I remember that. I declined because the foreclosure was not imminent at that time.

MS. BRANDON: Yes, Your Honor.

And now the Lender has posted, and we ask the Court to enjoin the foreclosure due to the Lender's bad faith conduct as detailed in our Fourth Amended Petition.

There are a number of reasons why foreclosure should not proceed, but I will highlight three for purposes of this TRO hearing. Each of these reasons reveal a recurring pattern and practice by the Lender --

THE COURT: Okay. Counsel, -- Counsel, do me a favor. Don't --

MS. BRANDON: Yes, Your Honor.

THE COURT: -- read to me.

MS. BRANDON: Yes, Your Honor.

THE COURT: Don't read to me.

You said you're going to highlight three reasons. What's the first and the best?

MS. BRANDON: The first reason is that there's a dispute concerning the calculation of the interest reserve in an interest reserve account. And this calculation is the basis upon which the Lender has asserted we have defaulted on the loan.

THE COURT: Uh-huh.

MS. BRANDON: The second reason was the application and -- of interest -- regular interest on the payment of 2019 property taxes by HNGH which as, you know, already existing in our lawsuit we dispute that they had any authority to pay.

But the calculation of that interest, it

also bears on the Lender's basis for foreclosure is the second reason.

THE COURT: Okay. You're suggesting that they acted in bad faith by paying property taxes last year that they were not obliged to pay?

MS. BRANDON: We're saying that we -- that property taxes already have been paid as --

THE COURT: Okay. Hang on, because you changed my question.

Is it your position that the payment of property taxes by the Lender in 2019 was done in bad faith?

MS. BRANDON: The Lender did not pay the 2019 property taxes, Your Honor, but what I am saying --

THE COURT: I misunder- -- I misunderstood you. I thought you said a minute ago that -- that they paid -- that the 2019 property taxes were paid by one of the Defendants and they were not obligated to pay those. Did I misunderstand you?

MS. BRANDON: That's correct, but the Defendant --

THE COURT: Wait a minute, wait a minute, wait a minute, wait a minute, wait a minute.

I'm not -- Your answer "that's correct" confuses me.

MS. BRANDON: May I clarify --

THE COURT: I don't know if you're saying --

Actually, the way to be the most lucid is to just answer "yes" or "no."

Are you saying that the Defendant paid -- one of the Defendants paid property taxes in 2019?

MS. BRANDON: Yes.

THE COURT: Are you saying that they were not supposed to have paid those in 2019?

MS. BRANDON: Yes.

THE COURT: Are you saying that that is an element -- an example of their bad faith?

MS. BRANDON: Yes.

THE COURT: Okay. That's -- That's -- That's kind of novel, it seems to me.

How is -- How is making a payment that you're not supposed to make an example of bad faith?

MS. BRANDON: The Lender did not make the payment. The entity in which it had the side agreement made the payment without our approval but as to our obligation under the loan agreement with the Lender the property taxes were paid.

The Lender is taking the position that despite having property taxes paid as to it which is

what's obligated to take place under the loan agreement, it is still taking the position that property taxes are owed and excessive exorbitant interest on those property taxes are owed.

The only way the Lender forms that conclusion is based on a side agreement that -- that Plaintiff is not a party to; and, therefore, the Lender cannot rely on that as a basis on which to claim that the interest property taxes should have been paid.

THE COURT: That I -- That I get.

(Cellphone).

THE COURT: Excuse me just a second. I'm sorry.

What's the third reason?

MS. BRANDON: And what I was going to say in connection with the property tax payment, though, Plaintiff has been attempting to secure financing to take out both Lender and the other Defendants.

THE COURT: Why hasn't that happened since our last time all visiting here together?

MS. BRANDON: This goes to the Lender's bad faith conduct. The Lender has been withholding first the amounts for the interest reserve calculation; and, secondly, withheld the amount for the payoff until one week ago today. And then if -- to the extent Your

Honor would like to hear argument regarding the conflict issue which substantively arose --

THE COURT: No. No. No, I don't want -- No, I don't want to hear that, I don't want to hear that.

MS. BRANDON: I understand, Your Honor. I was just going to say --

THE COURT: Good. Let's get --

MS. BRANDON: -- issues arose Friday --

THE COURT: -- please stop interrupting me.

MS. BRANDON: -- that's why --

THE COURT: Please stop interrupting me.

What's the third reason?

MS. BRANDON: That was the third reason, Your Honor.

THE COURT: Okay.

Is it your position, Counsel, that with the revelation of the interest -- the calculation of the interest reserve now that you got last week that you -- that you are going to be in a position where you can do a refinance that takes these parties out?

MS. BRANDON: Yes, Your Honor.

THE COURT: And how long is that going to take?

MS. BRANDON: We already have an MOU signed up, which will take a few weeks --

THE COURT: All right.

MS. BRANDON: I -- I cannot definitely --

THE COURT: All right. I understand -- I understand that. I understand that. Okay.

All right. Let me hear from the Defense.

MR. CARVELL: Thank you, Your Honor.

For the -- For the Lender, the evidence you have, I don't know that the affidavit proves up the elements or the claims that are made in the petition which are breach of the duty of trust and fraud and fraudulent inducement.

THE COURT: Uh-huh.

MR. CARVELL: We do have four defaults. We have the property tax default, which has been due since February. We have the failure to maintain the interest reserve. We have a payment but we have two payment defaults, one in June and then the interest payment wasn't made for July. We also have interest payments due today, and those are 335,000-plus each.

So what we didn't hear from the Plaintiff is that they intend to make the August payment. They didn't talk about -- they -- And they didn't talk about bond, which is to say --

THE COURT: We're not -- We're not -- I wouldn't let them talk about bond just yet; I've got to make a determination --

MR. CARVELL: Thank you, Your Honor.

THE COURT: -- whether injunctive relief is due before I'm going to entertain a discussion about the bond.

MR. CARVELL: Thank you, Your Honor.

So dispute about the interest reserve I don't think it's -- the dispute is that they think additional money should have been applied in June. That doesn't take care of the July payment or the August payment.

And in terms of prepaying the property taxes, there's no question that the property taxes weren't paid by the Borrower, --

THE COURT: Were they paid --

MR. CARVELL: -- and the Borrower has an obligation to pay.

THE COURT: Were they paid?

MR. CARVELL: They were paid by the Participant. And it's an advance that we're allowed to make under the Deed of Trust to protect --

THE COURT: Sure.

MR. CARVELL: -- protect interest.

THE COURT: Uh-huh.

MR. CARVELL: To keep from getting foreclosed by the state.

So, Your Honor, that's -- there's just not evidence of fraud, fraudulent inducement or breach of du- -- breach of the Deed of Trust, and we have additional capital deed defaults that are not addressed by the Plaintiff.

THE COURT: How about that, Ms. Brandon? Payments -- Payments for the month of July and August which is apparently due today?

MS. BRANDON: Well, the -- once -- once they posted for foreclosure for July 6th we had been engaged in negotiations and discussions with Lender's counsel and had actually directed a investor/buyer to HNGH for purposes of negotiating a buy-out. But Lender's conduct in withholding the relevant information that we needed stalled those discussions and Lender refused to at least take down the foreclosure posting to allow those negotiations to go -- to proceed.

By withhold- --

THE COURT: What about the July payment and the payment that's due today?

MS. BRANDON: Well, the purposes of the Lender -- of the take-out financing was to take out the

entirety of the loan, the 32.5 --

THE COURT: I understand that.

MS. BRANDON: -- and the interest that was due.

THE COURT: Is your client prepared to make -- I assume that there is some amount that you acknowledge that is due and owing and is past due, correct?

MS. BRANDON: That's -- That is correct, Your Honor.

THE COURT: Your client prepared to make those payments immediately?

MS. BRANDON: To prevent the foreclosure from going forward my client would be in a position to pay some amount of that interest.

THE COURT: That didn't --

MS. BRANDON: And we made an offer.

THE COURT: That didn't answer my question. That didn't answer my question.

Is your client prepared today to make the payments that are past due, that are due for August and that are due for July?

MS. BRANDON: Your Honor, I'm having difficulty answering the question because I don't know the exact amounts the Lender is claiming is due.

We have asked for that information. We made an offer --

THE COURT: You got that information last week, correct?

MS. BRANDON: We get a number that totaled --

THE COURT: Okay. Counsel, come on. Listen --

MS. BRANDON: -- 3.3 million --

THE COURT: Wait a minute. Listen. I want you to stop what you're doing.

Every question that I ask you you're changing and answering a different question.

Now, the reason I've got the -- the reason I'm asking the questions I have is because I'm trying to get to the right decision. When you don't answer my question you aren't helping me. And effective advocacy is helping the Court to do what you want the Court to do.

If you don't know the answer, I got no problem with you're saying, "I don't know the answer." But when I ask you, "Is your client prepared to make the payment that is due today and the payment that was due in July," and you answer, "We're prepared to make a payment in order to -- if the foreclosure doesn't go

forward," that's not the question I'm asking you, and I don't want you -- I know you don't want me to perceive you as being evasive.

So do I need to ask the question again or do you want to say, "I don't know", or say, "No, my client's not prepared"?

MS. BRANDON: Your Honor, I am answering the question.

THE COURT: Counsel, if you were answering the question we wouldn't be having this dialogue. You are not answering the question I'm posing to you. And if you --

MS. BRANDON: Your Honor, --

THE COURT: -- want to just say, "Judge, I don't want to answer that question," or "I can't answer that question," or "My client has not given me authority to answer that question."

MS. BRANDON: We are prepared to make the payment of what we believe is owed, --

THE COURT: Okay.

MS. BRANDON: -- but the Lender has provided us different numbers. Even though --

THE COURT: I understand that. I got that, I got that, I got that, I got that.

How much do you believe is owed?

MS. BRANDON: We be- -- On the interest payment --

THE COURT: Uh-huh.

MS. BRANDON: That's due today and last month, we believe that number's closer to 20,000. We do not believe it is the 373,000 that opposing counsel has stated, but, in any event, we have asked the Lender to provide us the accounting -- the accounting information that Lender -- The payoff information the Lender gave us last week was one number for interest, one whole number of $3.3 million. That's what we were told was the interest collectively. It was not broken down, it was not, you know, itemized; so, there was no way to actually -- for us to make an assessment of how they were allocating interest, regular interest and the tax deferment interest.

THE COURT: Uh-huh. Okay.

Any other Defendants wish to chime in?

MR. O'KANE: Your Honor, Rusty O'Kane on behalf of the Green Hollow entities. The Green Hollow entities are the Participants under the loan documents. And the only thing that I would add is with respect to the three bases for the pursuit of the TRO, in terms of the dispute on calculation, there was a discussion last week and Borrower indicated that they were not in a

position to pay the amounts past due from July or August.

As Mr. Carvell said, there were multiple defaults stemming back from beginning February 1st through now. No payments have been made whether it be 20,000, or 300,000 per month, no payments have been made. In terms of the --

THE COURT: No payments since when? I'm sorry. Since February?

MR. O'KANE: Correct, February 1st.

THE COURT: Okay.

MR. O'KANE: With respect to the second issue in terms of the tax payment, you may recall at the last TRO hearing we provided -- we produced the -- that Participation Agreement. And that Participation Agreement which Plaintiff/Borrower has now, provides the ability to pay those property taxes.

THE COURT: Uh-huh.

MR. O'KANE: Those properties taxes were paid and that reimbursement -- and everybody agrees on that amount, and that was never reimbursed and that was never paid by Borrower.

So the taxes were permitted to be paid, they were paid on Lender --

THE COURT: I got that.

MR. O'KANE: I'm sorry?

THE COURT: What is the amount -- I said, "I got that". Thank you.

What is the amount that you assert should have been paid since February 1st?

MR. O'KANE: The -- In terms of the total, I believe the number was $3.7 million.

THE COURT: Okay.

MR. O'KANE: But the tax number was the undisputed amount and that was 345,000, and that was not paid either.

THE COURT: Ms. Brandon, do you agree that -- with Mr. O'Kane's recitation of those two figures?

MS. BRANDON: In -- No, Your Honor. I agree that those were the figures that they gave us a week ago on Monday, but we disagree --

THE COURT: That wasn't what I asked you.

No payments have been made since February 1st; is that right?

MS. BRANDON: That's -- That's correct. And there wasn't an additional payment due until June.

After the February 1st payment was made, in March my client asked the Lender for a forbearance restructure. Rather than engaging in good faith

discussions on the forbearance, that's when the Lender started diverting us to this unknown party HNGH.

THE COURT: But they were under no obligation to negotiate a forbearance, were they?

MS. BRANDON: They were under no obligation --

THE COURT: Okay. Let me --

MS. BRANDON: -- to negotiate a forbearance --

THE COURT: Let me ask you one more question. I thought that you were saying -- I thought you were about to say that there were no payments that were due after February 1st until June.

Were the payments supposed to be made monthly?

MS. BRANDON: No, Your Honor. The interest was --

THE COURT: Would -- So was there -- was there no -- was there no payment amount that was due in March?

MS. BRANDON: Correct, no payment amount due --

THE COURT: Nor April, nor May, correct?

MS. BRANDON: That's correct, Your Honor.

THE COURT: Mr. O'Kane, I'm sorry, I

thought -- it sounded to me when you said "no payments were made since February," it may have been my inappropriate leap, that they defaulted once again in March/April and May and June. But that is not the case according to Ms. Brandon. Is she correct?

MR. O'KANE: Yes, she is.

THE COURT: Hmm. Okay. All right.

MR. O'KANE: I -- If I may clarify one thing.

THE COURT: Well, that's pretty clear. I got that. I got that.

MS. BRANDON: Your Honor, may I address the Court?

THE COURT: Hang on for me just a second, please.

Is there a -- Does the Lender want the property or does the Lender want their money?

MR. CARVELL: Your Honor, my charge is proceed for the foreclosure.

THE COURT: Okay. Now, you heard me fussing at Ms. Brandon, and you don't want me to fuss at you.

MR. CARVELL: Correct.

THE COURT: I didn't ask you what your client instructed you to do. That is not the question

that I'm -- I want answered. I'll give you another chance to answer my question.

MR. CARVELL: Your Honor, I don't know --

THE COURT: That's a fair answer --

MR. CARVELL: I don't know how to answer that.

THE COURT: That's a fair answer.

Mr. O'Kane, the same question to you.

MR. O'KANE: The Participant wants to get paid.

THE COURT: Okay. All right.

My inclination -- My inclination is to enjoin the foreclosure for 30 days, give you-all the opportunity to do that, with the understanding that if we come back next month and we're in the same position, I'm going to be disinclined.

I've got, not a representation from Ms. Brandon, but her belief, which is just as good as far as I'm concerned, that they are working diligently to get to the position of being able to buy out the people that need to be bought out, and then they will continue on with their development of this property.

What do you think an appropriate bond is, Ms. Brandon?

MS. BRANDON: I believe one month of the

financing -- the maintenance costs for maintaining the loan, which we estimate to be somewhere -- Well, actually, we're using the numbers Lender provided us, about 20,000 for one month.

THE COURT: Okay. All right.

What does the defense think an appropriate bond is?

MR. CARVELL: Your Honor, for the Lender -- Again, we're missing the July payment of 335, the August payment of 335. On the loan, just as a matter of what the per diem is on the nondefault rate, it's $11,000 a day.

So if we're looking at two weeks for a TRO, then the appropriate bond would be, at a minimum, 156. If it's going to be for -- extended for another two weeks after that, it's 300 -- 300 or more.

THE COURT: Well, there's really no utility to extending it, is there? Because once -- once we're past the foreclosure tomorrow, there's no need to do anything other than -- If it's going to go forward it will go forward next month; isn't that right?

MR. CARVELL: That's correct, Your Honor. So for -- Again, for two week at the nondefault rate, it's 156, the default rate would be more than that, and, again, we're missing interest payments for today and

July at 350.

And to -- Again, Your Honor, to the extent we're entering an order, we would like a carve-out to be able to post and provide notices for a September sale as you suggest.

THE COURT: I think that's -- I think that's certainly appropriate. I'm --

Mr. O'Kane, what do you think an appropriate bond is?

MR. O'KANE: I would agree with Mr. Carvell.

THE COURT: Ms. Brandon, tell me why they're not right.

MS. BRANDON: Well, Your Honor, the one month of financing would essentially mean that there is no cost that they are incurring for this month to go forward. If we're covering --

THE COURT: You're telling me why you're right, but you're not telling me why they're wrong.

MS. BRANDON: The reason why we're -- I'm right on the --

THE COURT: No, no, no. I don't need you to tell me why you're right, I need you to tell me why they're wrong.

MS. BRANDON: Oh. They're wrong because

the -- the only costs that they will incur this month for extending this -- the TRO, the only cost they're going to face this month, real cost, is the cost for their servicing cost for maintaining the loan.

At this point the amounts of moneys that are already owed under the loan are owed under the loan, and what they have to pay, the Participant has to pay the financing and maintenance cost to keep the loan current so it can preserve its position.

The Lender is in no worse off shape than it already was. The only additional expense that's coming out of their pocket to make this loan still stand in a position where the Participant is able to preserve it, is the monthly maintenance cost to keep the loan serviced. So that's why the servicing cost we will eat that, cover that cost for this month, work out the buyout, take-out financing, and then if it doesn't -- if the parties are not able to reach some type of an agreement this month, well, then, they're going to be in the same -- they haven't lost any additional moneys because --

THE COURT: Yeah.

MS. BRANDON: -- the financing and servicing costs and fees have been covered for the month.

THE COURT: Defense? Last word?

MR. CARVELL: Your Honor, it's not a question of out-of-pocket. It's -- They're asking for -- to preserve the status quo, and to get that, to keep the parties in the status quo, we have the interest payments that are due. It's accruing interest, again, at $11,000 a day.

THE COURT: Yeah, but that's -- that's not -- that's not what a bond is for. A bond is to protect the Defendant in the event that the restraining orbed is improvidently granted.

So how are -- how are you damaged by waiting another 30 days?

MR. CARVELL: Your Honor, if we foreclose and the interest drain is stopped, we're able to go forward, but if that's the -- if that's the standard that Ms. Brandon has, then I guess that's what we'll go with.

THE COURT: All right. I'm going to set the bond at $25,000. I'm going to grant the TRO.

The TRO will -- it will -- it should specify -- And you-all will need to get together and draft something up on this. It should specify that the -- that the TRO will not prevent the Defendants from proceeding to process the foreclosure for next month.

Your client going to post the bond today, Counsel?

MS. BRANDON: I will work on that, Your Honor. I'll reach out to the client --

THE COURT: If they're not going to post -- If they don't post a bond, then the Defendants are going to be able to go forward with the foreclosure tomorrow.

MS. BRANDON: We'll take care of it, Your Honor.

THE COURT: Okey-dokey. That's what I wanted to hear.

Who's going to draft the order?

MS. BRANDON: We --

THE COURT: Ms. Brandon, --

MS. BRANDON: We're happy -- My apologies, Your Honor.

THE COURT: That's okay.

MS. BRANDON: I was just going to state we're happy to draft the order --

THE COURT: Groovy.

MS. BRANDON: -- and circulate it among defense counsel.

THE COURT: Okay. All righty. Anything else?

MR. O'KANE: Not from the Defendant. Not from me.

MR. CARVELL: Not at this time, Your Honor. Thank you.

THE COURT: Thank you very much. You are excused. Have a pleasant day.

MS. BRANDON: Thank you, Your Honor.

(Proceedings adjourned at 11:01 a.m.)

STATE OF TEXAS

COUNTY OF DALLAS

I, Diane L. Robert, Official Court Reporter in and for the 14th District Court of Dallas County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

WITNESS MY OFFICIAL HAND, on this the 12th day of August, 2020.

BY: /s/Diane L. Robert
Diane L. Robert, CSR
Texas CSR 2179
Official Court Reporter
14th District Court
Dallas County, Texas
600 Commerce Street
Dallas, Texas 75202
Telephone: 214.653.7298
Expiration: 11/30/2021
drobert@irareporting.com