**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **2999TC ACQUISITIONS, LLC f/k/a MO 2999TC, LLC, AND TIMOTHY L. BARTON** | § | |
| | § | |
| **Plaintiffs** | § | |
| | § | |
| **v.** | § | **Case No. 3:20-CV-3229** |
| | § | |
| **2999 TURTLE CREEK, LLC, HNGH TURTLE CREEK, LLC, HN GREEN HOLLOW CAPITAL PARTNERS, LLC, MADISON REALTY CAPITAL, LP, VIPIN NAMBIAR, JAMES G. GLASGOW, JR., MARC ZEGEN, AND JOSHUA ZEGEN** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFFS' RESPONSE TO DEFENDANT JAMES G. GLASGOW, JR.'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(2)**

Plaintiffs 2999TC Acquisitions, LLC f/k/a MO 2999 TC, LLC, and Timothy L. Barton (together, "***Plaintiffs***") file this *Response to Defendant James G. Glasgow, Jr.'s* ("***Glasgow***") *Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2)* (ECF No. 9) ("***Motion to Dismiss***"), and respectfully show the Court as follows:

## I. PROCEDURAL BACKGROUND

1. Plaintiffs filed their Original Complaint (Doc. 1) on October 22, 2020, alleging numerous claims against Glasgow, Vipin Nambiar ("***Nambiar***"), HN Green Hollow Capital Partners, LLC ("***Green Hollow***"), and HNGH Turtle Creek, LLC ("***HNGH***") (collectively, the "***Green Hollow Defendants***"), and Madison Capital Realty, LP ("***Madison***"), 2999 Turtle Creek, LLC ("***Turtle Creek***"), and two of Madison's principals, Joshua Zegen and Marc Zegen

(collectively, the "***Madison Defendants***"), for numerous causes of action for, *inter alia*, Defendants' theft of trade secrets, fraud, tortious interference, and conspiracy related to Madison and Turtle Creek's bad-faith sale of a participation interest in Plaintiffs' loan and deed of trust on real property in Texas in connection with the development of a luxury hotel project.

2. On November 25, 2020, Defendant Glasgow filed his Motion to Dismiss (Doc. 9) related to Plaintiffs' Original Complaint under Federal Rule of Civil Procedure 12(b)(2) on the basis of personal jurisdiction. Counsel for Plaintiffs and Defendants jointly agreed to extend Plaintiffs' deadline to respond to the Motion to Dismiss to December 30, 2020 (Doc. 16).

3. Because Rule 15(a)(1)(B) allows for amendment as a matter of course following a motion under Rule 12(b) within the same 21-day deadline as the deadline to respond to an opposed motion under Local Rule 7.1(e), Plaintiffs incorrectly believed that the deadline to file an amended complaint would likewise be acceptable through the extended deadline of December 30. Accordingly, to address and clarify certain misstatements and improper allegations of pleading defects in Glasgow's Motion to Dismiss, and to raise new issues that occurred since the filing of the Original Complaint, Plaintiffs filed their First Amended Complaint on December 28, 2020 (Doc. 30), which the Court struck for failure to seek leave (Doc. 31).

4. Plaintiffs' Motion for Leave to File their First Amended Complaint (Doc. 32) is now pending before the Court, which has not been decided as of the date of this Response. Plaintiffs have therefore addressed the Motion to Dismiss based on the Original Complaint with supplemental references to the Amended Complaint where applicable.

## II. SUMMARY

5. As shown herein, Plaintiffs' Original Complaint establishes a prima facie case for this Court's personal jurisdiction over Glasgow due to his tortious conduct that he purposefully

directed at the State of Texas, which he knew would cause harm to Barton, a Texas resident. Plaintiffs incorporate by reference the Affidavit of Timothy Barton ("***Barton Affidavit***"), and supporting exhibits, filed in the Appendix (Doc. 19) to Plaintiffs' Emergency Motion for Temporary Restraining Order (Doc. 18). For the reasons stated, not only has Glasgow established "minimum contacts" with the State of Texas, but this Court's jurisdiction over Glasgow would not offend any traditional notions of fair play and substantial justice or infringe upon his due process rights. Glasgow's Motion to Dismiss should be denied.

## III. BACKGROUND FACTS

6. Plaintiffs are borrower and guarantor under a deed of trust and security agreement ("***Loan***") with Turtle Creek on an exclusive parcel of land in Dallas, Texas ("***Land***"), on which Plaintiffs intended to develop a luxury hotel ("***Project***").[1] Plaintiffs initially borrowed a portion of the funds required to purchase the Land ($32.5 million) from 2999 Turtle Creek, LLC ("***Turtle Creek***") and its parent company Madison Realty Capital, LP ("***Madison***") with the subsequent goal of raising additional funds within 1-2 years after the Loan funds to complete the Project.[2] While attempting to raise these additional funds, Turtle Creek, through Madison, sold a "junior participation interest" ("***B Note***") in Plaintiffs' Loan for $7 million—approximately 20% of the Loan value.

7. Although the sale of a junior subordinate participation interest is relatively common among institutional lenders, this particular "junior subordinate participant" was not any ordinary institutional investor (*i.e.*, a party seeking to earn passive income as part of a larger investment portfolio). Through Madison, Turtle Creek knowingly sold this B Note to HNGH, a party who openly intended to compete with Plaintiffs and stage a hostile takeover of the Project for itself.

---

[1] *See* ECF No. 19, Ex. A ¶ 3.
[2] *See* ECF No. 19, Ex. A ¶¶ 4-5.

For context, a lender's sale of a participation interest to a competitor of the borrower has been held to be a bad faith transaction under New York law.[3] Thus, as a competitor, transferee/purchaser HNGH was not a proper transferee entity under the Deed of Trust, which plainly contemplates passive, institutional investors.[4]

8. Without Plaintiffs' knowledge, Turtle Creek entered into a secret agreement with HNGH ("***Participation Agreement***"), in which Turtle Creek gave significant rights of control to HNGH—effectively converting it from a "junior participant" to a "senior lender." These rights materially altered the terms of Plaintiffs' Loan with Turtle Creek and completely undermined the relationship Plaintiffs' *thought* they had with Turtle Creek and Madison.[5]

9. Before entering into this secret Participation Agreement, the principals of HNGH, Glasgow and Vipin Nambiar ("***Nambiar***") each met with Barton separately and pretended to be interested in becoming equity investors in the Project, inducing Barton to disclose confidential information about the Project that he would never have disclosed otherwise.[6] Despite their verbal agreements to keep this information confidential and to refrain from competing with the Project, Glasgow and Nambiar did just the opposite.[7]

10. In the Participation Agreement, HNGH acquired exclusive rights to communicate with Borrower in the event of any default, the right to veto Lender's sale of the Loan to any party HNGH did not approve, and the right to foreclose on the Land.[8] In the process, Madison cut a deal for itself and agreed to finance the Project for HNGH once it obtained control, and even agreed to

[3] The Loan is governed by New York law. *See* ECF No. 19, Ex. A-1 ¶ 16; *see Empresas Cablevision, S.A.B. de C.V. v. JPMorgan Chase Bank, N.A.*, 381 Fed. Appx. 117, 118 (2d Cir. 2010).
[4] *See* ECF No. 19, Ex. A-2 § 40.
[5] *See* ECF No. 19, Ex. A ¶¶ 22, 33.
[6] *See id.* at ¶¶ 6-14, 18-19.
[7] *See id.*
[8] *See* ECF No. 19, Ex. A-10 §§ 7, 8(d).

indemnify HNGH for any legal issues that might arise from the Participation Agreement.[9] In sum, this deal was so far from a commercially reasonable "junior subordinate participation interest" that it is implausible for Madison or HNGH to argue otherwise. In fact, the Participation Agreement itself is proof that Turtle Creek and Madison took affirmative action to destroy the benefit of the bargain contemplated under the original Loan.

11. Defendant Glasgow has been actively involved in all stages of this takeover attempt, from his initial communications with Madison about the B Note purchase,[10] to his meeting with Barton where he lied about his intentions of becoming an equity investor,[11] to negotiating the Participation Agreement to secure the right to foreclose on the Land,[12] to creating with Nambiar the entity that would execute the takeover scheme (HNGH). Plaintiffs have brought multiple claims against Glasgow in his individual capacity, including intentional theft of trade secrets under Federal and Texas law,[13] fraud,[14] fraud by nondisclosure,[15] conspiracy,[16] and tortious interference.[17] This Court may properly assert personal jurisdiction over Glasgow based on his intentional actions aimed at Texas that caused foreseeable harm to a Texas resident.

## IV. ARGUMENT & ANALYSIS

12. The due process clause of the Fourteenth Amendment, as interpreted by the Supreme Court, permits the exercise of personal jurisdiction over a nonresident defendant when "(1) that defendant has established 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial

---

[9] *See id.*, at § 7(e), Ex. A-12.
[10] *See* ECF No. 19, Ex. A ¶¶ 6-14.
[11] *See* ECF No. 19, Ex. A-10.
[12] *See id.*
[13] *See* ECF No. 1 § V.A, K.
[14] *See id.* at § V.D.
[15] *See id.* at § V.F.
[16] *See id.* at § V.H.
[17] *See id.* at § V.I-J.

justice.'" *Ruston Gas Turbines v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)). Because Texas's long-arm statute has been construed to extend to the limits of due process, the Court may bypass analyzing the reach of the long-arm statute and proceed directly to the due-process analysis. *Stroman Rlty., Inc. v. Wercinski*, 513 F.3d 476, 482 (5th Cir. 2008); *Nursery Decals & More, Inc. v. Neat Print, Inc.*, No. 3:19-CV-2606-B, 2020 U.S. Dist. LEXIS 63113, at *7 (N.D. Tex. Apr. 10, 2020).

13. In determining whether a plaintiff has established a prima facie case for personal jurisdiction over a defendant, a court may review any combination of recognized methods of discovery, including affidavits, to assist in the jurisdictional analysis. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.,* 517 F.3d 235 (5th Cir. 2008). A court must take uncontroverted allegations in the plaintiff's complaint as true, and any conflicting evidence in the parties' affidavits must be resolved in the plaintiff's favor. *Johnston v. Multidata*, 523 F.3d 602, 609 (5th Cir. 2008); *D.J. Invs. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985); *Nursery Decals*, 2020 U.S. Dist. LEXIS 63113, at *6. Proof by a preponderance of the evidence is not required. *Johnston*, 523 F.3d at 609.

14. Here, the Court's exercise of personal jurisdiction over Glasgow is proper because both prongs of the due process analysis are met. *First*, Glasgow established minimum contacts with Texas by purposefully directing his tortious conduct toward Texas, intending to take control of Texas real property, and knowing those activities would cause harm to a Texas resident. *Second*, this Court's personal jurisdiction over Glasgow would not offend any traditional notions of fair play and substantial justice because it is not burdensome for Glasgow to litigate this matter in Texas, Texas has a manifest interest in resolving claims concerning Texas real property, and Texas is the most efficient forum for resolving this controversy.

**A. Glasgow is subject to specific jurisdiction because he established minimum contacts by purposefully directing his fraudulent actions toward Texas.**

15. In cases of intentional torts, the first prong of the due process clause ("minimum contacts") is satisfied when the defendant's conduct is intentional, is expressly aimed at the forum state, and causes the plaintiff an injury that the defendant should have anticipated would be suffered in the forum state. *Calder v. Jones*, 465 U.S. 783, 789-90 (1984). When a defendant purposefully directs his activities at residents of the forum, he has "fair warning" that litigation may arise as a result of those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985).

16. Glasgow misrepresents the nature of the claims against him and seeks to hide behind the corporate identity of Green Hollow and HNGH. *See* Mot. to Dismiss at 6 ("Indeed, contacts by a corporate representative in his capacity as an officer of a corporation *are not counted as individual contacts* . . ."). In support of this proposition, Glasgow incorrectly cites three cases[18] that are inapplicable here because they all involve breach of contract claims against a company where the court ultimately declined to assert personal jurisdiction over the officer or employee. Here, however, Plaintiffs have not asserted any breach-of-contract case against HNGH or Green Hollow, but rather have brought direct actions for fraud, fraud-by-nondisclosure, conspiracy, and intentional theft of trade secrets against Glasgow personally. *See* Compl. § V, Claims for Relief (Counts 1, 4, 6, 8, 9, 10, 11, 13).

17. Under Texas and Supreme Court precedent, it is a well-established principle that corporate officers are primarily liable for their own torts and "their status as employees does not somehow insulate them from jurisdiction." *Calder*, 465 U.S. at 790 (holding that reporter and editor of allegedly defamatory magazine article were subject to personal jurisdiction); *see*

[18] *Gerritsen Beach Invs., Ltd. v. Jemal*, No. 3:08-CV-1192, 2009 WL 10704501, at *3 (N.D. Tex. Apr. 22, 2009) (emphasis added); *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985); *Brothers v. Print, Inc.*, No. 3:07-CV-0415, 2007 WL 3331974, at *8 (N.D. Tex. Nov. 8, 2007).

*Crithfield v. Boothe*, 343 S.W.3d 274, 287 (Tex. App.—Dallas 2011, no pet.) (refuting defendant's "fiduciary shield" argument, emphasizing that "[a] corporate officer is not protected from the exercise of specific jurisdiction, even if all of his contacts were performed in a corporate capacity, if the officer engaged in tortious or fraudulent conduct, directed at the forum state, for which he may be held personally liable").

18. Plaintiffs' Original Complaint sufficiently established the factual basis for this Court's specific personal jurisdiction over Glasgow based upon his intentionally tortious conduct aimed at obtaining Texas real property.[19] First, the Complaint and the Barton Affidavit describe a meeting between the Madison Defendants and Glasgow on October 24, 2019, in which the Madison Defendants offered Glasgow and Green Hollow the opportunity to purchase the participation interest in the Loan and Deed of Trust on the Land, located in Texas. Compl. ¶ 22.[20] One week later, the Madison Defendants and Glasgow met with Barton and collectively pretended that Glasgow was a prospective equity investor for the Project (located in Texas), which was not true, in order to induce Barton to reveal trade secrets about the Project. Compl. ¶¶ 23-27.[21] Glasgow used this information to compete with Barton by obtaining a controlling interest in the Project, executing a letter of intent only one week after the meeting. Compl. ¶ 28.[22] During November and December 2019, Glasgow was personally involved in numerous emails with Madison negotiating the terms of the B Note purchase, which focused heavily on what the Green

---

[19] While alleging no new facts, Plaintiffs' Amended Complaint more clearly articulates the basis for the Court's personal jurisdiction over Glasgow and summarizes the ways in which he purposely directed this conduct toward Texas. See Pls.' Am. Compl. ¶¶ 9, 15, 23, 25, 33.

[20] ECF No. 19, Ex. A ¶ 9, Ex. A-4 (Email from Glasgow to Nambiar reflecting Madison's B-Note offer on Oct. 24, 2019).

[21] *Id.* at ¶ 10-11.

[22] ECF No. 19, Ex. A-7 (Letter of Intent dated Nov. 15, 2019).

Hollow Defendants' returns would be, not if—but *when*—they foreclosed on the Loan (Compl. ¶ 31)[23], clearly evidencing Glasgow's intention to avail himself of Texas foreclosure laws.

19. In sum, by his representations and omissions, Glasgow tortiously misrepresented his intentions about investing in the Project, which is located in Texas, induced Barton (a Texas resident) to share confidential information, and used that information to obtain a controlling interest in the Loan with the ultimate goal of availing himself of Texas law to foreclose on Texas real property.

**B. This Court's personal jurisdiction over Glasgow would not offend traditional notions of fair play and substantial justice.**

20. Based on Glasgow's intentionally tortious conduct aimed at acquiring real property in Texas, this Court's assertion of jurisdiction over Glasgow easily meets the second "due process" prong of the personal jurisdiction analysis. In fact, once a plaintiff has established minimum contacts, only in "rare" cases will a court conclude that the exercise of personal jurisdiction over a defendant would offend notions of fair play and substantial justice. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999); *Signtronix, Inc. v. General Sign, Inc.*, No. 3:06-CV-2244-L, 2007 U.S. Dist. LEXIS 61743, at *26 (N.D. Tex. Aug. 22, 2007).

21. Moreover, after minimum contacts have been established, the burden shifts to the defendant to make a "compelling case" as to how the assertion of jurisdiction would be unfair. *Wein Air Alaska*, 195 F.3d at 215 (quoting *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 477 (1985)). The interests to be balanced are (1) the burden on the defendant having to litigate in the forum; (2) the forum state's interests in the lawsuit; (3) the plaintiff's interests in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; (5) and the state's shared interest in furthering fundamental social policies. *See id.* Here, Glasgow's

[23] ECF No. 19, Ex. A-22 (B-Note negotiation email thread among Defendants).

Motion to Dismiss did not argue that litigation in this forum would be unfairly burdensome nor could he plausibly do so.

22. As the Supreme Court has noted, states have a "manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors. *Burger King*, 471 U.S. at 473. This interest is especially prevalent in instances of fraudulent conduct committed against a resident of the forum state. *See Wein Air Alaska*, 195 F.3d at 215; *D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 548 (5th Cir. 1985). In such cases, the interests of the plaintiff and the forum state "justify even large burdens on the defendant." *See Wein Air Alaska*, 195 F.3d at 215. The *Burger King* Court (in 1985) also remarked at the ways in which "modern transportation and communication" have made it much less burdensome to defend oneself in a different state. *See Burger King*, 471 U.S. at 474. Thirty-five years and one pandemic later, this proposition is truer than ever.

23. Glasgow is represented by the same counsel who represents HNGH, Green Hollow, and Nambiar, parties who will presumably share common interests, defenses, and evidence throughout this litigation. Arguably, it would be more costly and burdensome for Glasgow to obtain separate counsel in New York to defend him as a standalone defendant in New York District Court. Plus, with the emergence of the COVID landscape that has ushered in new remote-litigation norms, such as Zoom depositions, hearings, and trials, Glasgow might never need to leave his home through the duration of this lawsuit in Texas. In any event, Glasgow will not be able to make the "compelling case" that he will be unfairly burdened by this Court's jurisdiction over him. *See Wein Air Alaska*, 195 F.3d at 215

24. In sum, Plaintiffs have met their burden to establish that this Court has specific personal jurisdiction over Defendant Glasgow due to his intentional, tortious conduct aimed

toward the State of Texas. In light of these minimum contacts, Glasgow will be unable to meet his burden to establish that his due process rights would be violated in any manner. Accordingly, taking all uncontroverted allegations in Plaintiffs' Complaint as true, and resolving any conflicting evidence in the parties' affidavits in the Plaintiffs' favor (*see Johnston*, 523 F.3d at 609), Plaintiffs have established a prima facie case for personal jurisdiction over Glasgow and his Motion to Dismiss should be denied.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that Defendant's Motion to Dismiss be denied and that Plaintiffs have such other and further relief to which they may be justly entitled.

Dated: December 30, 2020.

Respectfully submitted,

*/s/ G. Michael Gruber*
**G. Michael Gruber, Esq.**
Texas Bar No. 08555400
gruber.mike@dorsey.com
**J. Brian Vanderwoude, Esq.**
Texas Bar No. 24047558
vanderwoude.brian@dorsey.com
**Kelsey M. Taylor, Esq.**
Texas Bar No. 24098507
taylor.kelsey@dorsey.com
**DORSEY & WHITNEY LLP**
300 Crescent Court, Suite 400
Dallas, Texas 75201
(214) 981-9900 Phone
(214) 981-9901 Facsimile

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on December 30, 2020, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

*/s/ G. Michael Gruber*
G. Michael Gruber, Esq.