**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| 2999TC ACQUISITIONS, LLC f/k/a MO 2999 TC, LLC, AND TIMOTHY L. BARTON, *Plaintiffs*, | § | |
| v. | § | C.A. No. 3:20-CV-3229 |
| 2999 TURTLE CREEK, LLC, HNGH TURTLE CREEK, LLC, HN GREEN HOLLOW CAPITAL PARTNERS, LLC, MADISON REALTY CAPITAL, LP, VIPIN NAMBIAR, JAMES G. GLASGOW, JR., MARC ZEGEN, AND JOSHUA ZEGEN, *Defendants*. | § | |

**GREEN HOLLOW DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Defendants HNGH Turtle Creek, LLC ("HNGH"), HN Green Hollow Capital Partners, LLC ("Green Hollow"), Vipin Nambiar ("Nambiar"), and James G. Glasgow ("Glasgow") (collectively, the "Green Hollow Defendants") hereby file their Reply in Support of their Motion to Dismiss the claims against them in Plaintiffs' Original Complaint ("Complaint") under Federal Rule of Civil Procedure 12(b)(6).[1]

**SUMMARY OF REPLY**

Plaintiffs' factual recitation contains a shocking number of misrepresentations and distortions. Plaintiffs' seemingly pivot to a new set of allegations or theories each time they realize

[1] Glasgow—who lives and works in New York and has not availed himself of this forum—joins in this Response expressly subject to and without waiving his separate Rule 12(b)(2) Motion to Dismiss for lack of personal jurisdiction, which is incorporated herein by reference. (Doc. 9.). In accordance with the Court's December 28 Order (Doc. 29), Glasgow intends to file his Reply in support of his Rule 12(b)(2) motion on or before January 13, 2021.

their claims are legally barred. This federal suit is simply Plaintiffs' latest attempt to evade the consequences of their persistent defaults under a $32.5 million loan from 2999 Turtle Creek, LLC ("Lender"), following several rulings against the Borrower in a nearly identical state-court suit. Plaintiffs' claims should be dismissed in their entirety and re-pleading will not cure the defects. In fact, by attempting to file their "amended complaint" (in violation of Rule 15) the day before their Response was due, Plaintiffs virtually admitted that their Original Complaint—filed in October—is deficient. Plaintiffs' proposed amendment, however, offered no substantive changes and was nothing more than a transparent attempt to confuse the issues set for hearing before this Court on Monday, January 4, 2021, and the foreclosure scheduled for Tuesday, January 5, 2021.

To be clear, Plaintiffs assert 17 different causes of action in this lawsuit, but ***only one*** cause of action (Misappropriation of Trade Secrets under Defense of Trade Secrets Act) purports to confer federal question jurisdiction on the Court. There is no diversity jurisdiction, and the Misappropriation claim is subject to dismissal because Plaintiffs have no trade secrets, failed to take reasonable measures to protect the information at issue, and affirmatively consented to the transactions about which they now complaint. The remaining claims should likewise be dismissed because Plaintiffs do not state claims upon which relief could be granted, but also because they do not independently confer federal jurisdiction.

## ARGUMENTS AND AUTHORITIES

### A. Plaintiffs' Response wholly fails to address multiple factors for determining whether they have a valid claim for misappropriation of trade secrets.

#### 1. The information claimed by Plaintiffs does not constitute "trade secrets."

Plaintiffs argue that their purported trade secrets include information they provided to a lender to obtain a $32.5 million construction loan, which included "construction drawings, plans, contractor bids, the contract terms with [the international hotel brand with whom Plaintiffs had

contracted], balance sheets, pro formas, and projected returns." Response, p. 4.[2] These plans for a development project are not trade secrets, they are non-confidential business plans that are required to be disclosed to multiple sources—banks, city officials, Mandarin Oriental corporate officers, etc. *See, e.g., Thoroughbred Ventures, LLC v. Disman*, No. 4:18-CV-00318, 2018 WL 3752852, at *5 (E.D. Tex. Aug. 8, 2018) (Mazzant, J.) ("A trade secret includes compilations of data that the owner has taken steps to keep secret and that derive independent economic value.").

To constitute a trade secret, the information itself must be a unique set of compiled data that would not be available elsewhere. A trade secret may include business information, but only ***if*** the owner has taken reasonable measures to keep such information secret, that derives independent economic value from not being generally known to, and not being readily ascertainable by, another person who can obtain economic value from the disclosure or use of the information. 18 U.S.C. § 1836(b)(1); § 1839(3). Misappropriation is also only satisfied if disclosure of the trade secret is made, without consent, by a person who acquired the knowledge under circumstances giving rise to a duty to maintain its secrecy. *Id.* § 1839(5). Not only is the information not a trade secret, but also no such duty of confidentiality existed.[3]

Here, the identity of the investors and contractors that Plaintiffs were considering/communicating with to develop the Mandarin Oriental Hotel are not eligible for trade secret protection because relationships are not trade secrets. *Thoroughbred Ventures, LLC*, 2018

---

[2] While not contained in Plaintiffs' Complaint, Barton fails to mention that there were two components at issue—an equity raise and a construction loan. While he was raising equity, Barton was also raising a construction loan for which the Lender was competing. All meetings Barton had with the Green Hollow Defendants were related to this construction loan, which he is now tries to re-cast as equity discussions to conflate the issues and distort the record.

[3] With respect to any claim under the Texas Uniform Trade Secret Act, all of Plaintiffs' case citations on what constitutes a trade secret are prior to 2013, which carry little to no weight. *See, e.g., Seismic Wells, LLC v. Matthews*, No. 5:15–CV–148–C, 2016 WL 3390507, at *3 (N.D. Tex. Feb. 22, 2016) (finding plaintiffs' arguments relying entirely on the common law of trade secret misappropriation prior to 2013 unpersuasive in light of TUTSA's "modern definition of a trade secret").

WL 3752852, at *5 (citing *Aerosonic Corp. v. Trodyne Corp.*, 402 F.2d 223, 230 (5th Cir. 1968)). Additionally, as with any real estate development plan, construction drawings would necessarily be submitted to city officials to obtain permits, while any financial projections would be provided to potential investors and corporate officers of the Mandarin Oriental. In other words, the information being claimed as a trade secret constitutes client relationships or other standard information disseminated in any real estate deal. They are not "trade secrets."

**2. Barton did not take reasonable measures to protect his information and failed to obtain any confidentiality agreement before disclosing it.**

Barton's own conduct undermines any argument that the information constitutes a trade secret or that the information was obtained by "improper means." Barton took no measures to maintain confidentiality. He admits that he did not require Glasgow, Nambiar, or anyone else to sign non-disclosure or confidentiality agreements at any point. Response, p. 6. Instead, he relied on a purported "gentlemen's agreement." Response, p. 6; Compl., ¶ 24.[4] Such reliance, even if true (which it is not), is facially unreasonable.

At least one New York court has already addressed this same situation and found such "verbal" assurances insufficient. *See Art & Cook, Inc. v. Haber*, 416 F. Supp. 3d 191, 197 (E.D.N.Y. 2017). In *Haber*, the court denied a plaintiff's motion for preliminary injunction and found that plaintiff lacked a likelihood of success on the merits as to its trade secret misappropriation claim when plaintiff's protective measures amounted to "[plaintiff] stat[ing] that he spoke to Defendant many times about confidentiality, and Plaintiff allegedly asked Defendants to sign an employee handbook and non-disclosure agreement two years before Defendant's termination, though Defendant refused to sign them." *Id*. The Court also noted that while "Plaintiff

[4] It is worth noting that the Green Hollow Defendants vehemently dispute that any such "gentlemen's agreement" was in place or that they even met with Barton under the circumstances as he describes them.

took other steps to secure its information, such as utilizing a password-protected server, password-protected folders, and a third-party internet security company to protect its servers from outside hacking . . . . absent more . . . the Court cannot conclude that Plaintiff is likely to succeed on any such argument." *Id*. (internal citations omitted) (emphasis in original). In this case, Plaintiffs do not allege they took ***any*** of those steps.

In this case, Plaintiffs do not allege any set of facts that would suggest reasonable steps to protect confidentiality. They have not indicated where the purported trade secrets were stored, how they were secured, or who else had access to the information. As in *Haber*, Plaintiffs did not identify any password protections, written agreements, or other measures taken to protect secrecy. Plaintiffs' sole allegation is that Barton verbally asked Nambiar and Glasgow one time not to share certain information. Response, p. 6 ("before disclosing the trade secrets to the Green Hollow Defendants, Barton sought verbal agreements from Glasgow and Nambiar as a condition of disclosure."). As contrasted with cases offering trade secret protection, Plaintiffs here failed to identify any strictly controlled server or the use of confidentiality agreements. Accordingly, there are no set of facts alleged that would provide a claim under the Defense of Trade Secret Act or Texas Uniform Trade Secret Act. *See BCOWW Holdings, LLC v. Collins*, No. SA-17-CA-00379-FB, 2017 WL 3868184, at *15 & n.19 (W.D. Tex. Sept. 5, 2017) ("Courts in Texas and other states who have adopted this provision of the UTSA have concluded an employer fails to take reasonable steps to preserve secrecy in circumstances where the employer does not require its employees or third parties to sign a non-disclosure agreement, does not encrypt or otherwise protect its digital files, and does not mark its documents as confidential."); *see also Sortiumusa LLC v. Hunger*, No. 3:11–CV–1656–M, 2013 WL 11730655, at *12 (N.D. Tex. Mar. 31, 2013) (finding plaintiff's complaint alleging trade secret appropriation pursuant to the Georgia Trade Secrets Act was

"fatally deficient" as a matter of law where plaintiff did not require its vendors to execute confidentiality agreements and failed to mark any of its drawings as confidential).[5]

**B. Plaintiffs misstate the standard for pleading a fraud claim, wholly fail to address Rule 9, and fail to identify any actionable fraudulent conduct.**

On their fraud claim, Plaintiffs fail to cite the appropriate standard, relying instead on Rule 8 to suggest that they do not need to offer "detailed factual allegations" and instead only need to offer "plausible factual support for the allegations within the complaint." Response, p. 3. Their Response does not even mention Rule 9 and the Complaint fails to meet it. In alleging fraud, "a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). Rule 9 imposes a "heightened" pleading requirement for fraud. At a minimum, Plaintiffs must allege the "'who, what, where, when, and how' of the alleged fraud." *Laura Johnston Family Properties, Ltd. v. Allen Eng'g Contractor, Inc.*, 3:16-CV-03378-M, 2017 WL 6459529, at *3 (N.D. Tex. Dec. 18, 2017) (citing *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997). This particularity standard applies to Plaintiffs' statutory fraud claim, which they never even attempt to address. *See* Response, *generally*.

At best, Plaintiffs contend that Glasgow somehow knew that Barton was under a false impression at their New York meeting and that Nambiar met with Barton under false pretenses. Response, pp. 12-13. However, Plaintiffs do not actually identify any fraud and they certainly fail

[5] Plaintiffs also argue that, "Defendants point to no case where a trade secret was dismissed at the pleading stage for lack of a *written* agreement where a *verbal* confidentiality agreement was alleged. Response, p. 7 (emphasis in original). Although Plaintiffs offer no case law to support the claim, it is worth noting that Plaintiffs are arguing for injunctive relief. In this context, Plaintiffs have to meet the higher burden of showing a substantial likelihood of success on their claims to be entitled to injunctive relief. As cited above, several courts have denied motions for preliminary injunctions because movant failed to meet this burden when alleging trade secret misappropriation. *See Thoroughbred Ventures*, 2018 WL 3752852, at *7; *Haber*, 416 F. Supp. 3d at 197; *see also BCOWW Holdings*, 2017 WL 3868184, at *15 (recommending district court deny plaintiffs' request for preliminary injunction because plaintiff failed to take reasonable measures to protect its alleged trade secrets as "[plaintiff's] vendors were not even subject to an exclusivity agreement, and there is no evidence in the record to support a finding that they would have considered themselves under even an implied obligation of confidentiality.").

to provide sufficient factual detail about what Glasgow or Nambiar said, who they disclosed it to, when they disclosed it, or the specific terms of any investments they purportedly agreed to make. Plaintiffs' vague and indefinite allegations "as a matter of law provides no foundation for a claim of fraud." *Global Integrated*, 2009 WL 259360, at *9.

### C. Plaintiffs' claim for tortious interference fails because there was no independently tortious conduct—especially where Plaintiffs consented to the purchase and sale of a participation interest in the Note.

Plaintiffs' tortious interference claim relies on an argument that the Green Hollow Defendants interfered with Borrower's Loan Documents by negotiating and signing the Participation Agreement and somehow "[doing] everything in their power to trigger default under the Loan." Response, p. 15. In other words, Barton claims that somehow the Green Hollow Defendants, by merely buying a participation interest in a Loan, forced Barton not to pay his taxes, not to make his interest payments, and not to pay the balance of the Note when it matured in October. Even if true, it doesn't meet the elements of tortious interference.

The entire premise rests on an alleged improper Participation Agreement, but the simple fact remains that Borrower expressly granted Lender (in the Loan Documents) broad authority to sell such a participation interest to whomever Lender may select, on whatever terms and conditions Lender deems satisfactory, in its sole and absolute discretion, without Borrower's knowledge, input, or consent. Compl., Ex. B §§ 40–41. It is also worth noting that the Green Hollow Defendants' involvement only triggered if Plaintiffs defaulted under the Loan Documents. Therefore, the alleged "interference" was ***caused by Plaintiffs' own conduct*** by failing to fulfill their contractual obligations. Accordingly, there is no underlying tortious conduct that would permit this claim to move forward and it should be dismissed.

**D. Plaintiffs do not offer a single case to support their conspiracy claim and still fail to identify anything that would prove a "meeting of the minds" or objective plan between the various Defendants.**

Civil conspiracy is a derivative claim that must be dismissed if the Court dismisses the other tort claims. *See Kane v. Yancey*, No. 15-1861, 2016 WL 922243, at *5 (S.D. Tex. Feb. 16, 2016); *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 438 (Tex. 1997). "Plaintiffs believe that the entire negotiation process constitutes an 'overt unlawful act' by all Defendants." Response, p. 17. Plaintiffs again rely on the negotiation of the Participation Agreement to support the conspiracy claim. However, Plaintiffs' subjective belief is plainly contradicted by the fact that they consented to the sale of a participation interest in the Loan Documents. Compl., Ex. B §§ 40–41.

**E. Plaintiffs fail to plead any enforceable contract between Glasgow and Nambiar, on the one hand, and Plaintiffs, on the other.**

Plaintiffs admit or at least acknowledge their Original Complaint is insufficient on this point. Response, p. 18 ("To the extent the Court believes Plaintiffs' Original Complaint requires clarification on this point, Plaintiffs' Amended Complaint further explains the content and timing of these agreements."). As a matter of law, however, Plaintiffs still fail to identify a binding contractual obligation between Plaintiffs and Nambiar or Glasgow. Nothing in the Response clarifies the timing or details of the alleged oral promises, and such alleged promises are too indefinite to be enforceable, anyway. *See, e.g.*, *Richter, S.A. v. Bank of Am. Nat. Tr. & Sav. Ass'n,* 939 F.2d 1176, 1196 (5th Cir. 1991) (stating that, "the jury found that the Bank 'breached an oral contract . . . to negotiate in good faith toward a reasonable restructure of the . . . [w]inery debt" with the plaintiffs. However, we hold that even if such an agreement existed, Texas law would not enforce it, because it is too indefinite. And, whether a contract fails on this basis is a question of law.") (citing *Neeley v. Banker's Trust Co. of Texas,* 757 F.2d 621, 626 (5th Cir.1985) (reversing jury verdict under Texas law)). "If an alleged agreement is so indefinite as to make it impossible

for a court to fix the legal obligations and liabilities of the parties, it cannot constitute an enforceable contract." *Id*. (citing *University Nat'l Bank v. Ernst & Whinney,* 773 S.W.2d 707, 710 (Tex. App.—San Antonio 1989, no writ)). In this case, Plaintiffs fail to identify the specific terms of any alleged oral agreement or what each party was specifically obligated to do. Therefore, Plaintiffs' breach of contract claim fails and should be dismissed.

**F. Plaintiffs also fail to state any valid declaratory judgment claim regarding good faith and fair dealing.**

To succeed on their breach of the implied duty of good faith and fair dealing claim under New York law, Plaintiffs must prove that "defendant's actions 'so drastically undermined the contract that its fundamental objective—the creation of a viable cooperative—has been subverted." *Gillespie v. St. Regis Residence Club, New York Inc.,* 461 F. Supp. 3d 96, 107 (S.D.N.Y. 2020) (granting summary judgment in favor of defendants on plaintiffs' "claim for breach of the implied covenant of good faith and fair dealing because the plain language of the contract refutes [p]laintiffs' arguments that [d]efendants had a duty to support the rental or resale markets for their Club Interests."). *Id*. Further, to succeed on their breach of the implied duty of good faith and fair dealing claim, Plaintiffs must establish that, "defendant's actions 'so drastically undermined the contract that its fundamental objective—the creation of a viable cooperative—has been subverted." *Id.* (citation omitted).

In this case, under the plain language of the Loan Documents, the Green Hollow Defendants were involved as co-lenders and had no duty to support the Dallas hospitality market to ensure Plaintiffs did not default under the Note or Deed of Trust. Plaintiffs failed to plead any facts showing how the Green Hollow Defendants' actions affected the Dallas hospitality market so drastically as to subvert the fundamental objective of the Loan Documents. *See Gillespie,* 461 F. Supp. 3d at 107. In particular, Plaintiffs failed to plead any facts that would give rise to a claim

that the Green Hollow Defendants had a duty to ensure Plaintiffs did not default. At best, Plaintiffs are blaming the Green Hollow Defendants for factors outside of their control, including poor market conditions for hotels during the COVID-19 pandemic or Plaintiffs' refusal to pay their bills when due. Regardless, Plaintiffs have not pleaded any facts demonstrating an actual breach of the duty of good faith and fair dealing—especially where the thrust of the allegation centers around negotiating ang signing the Participation Agreement ***that Plaintiffs consented to***. Compl., Ex. B §§ 40–41. Accordingly, this claim should be dismissed.

**CONCLUSION**

The Green Hollow Defendants respectfully request that the Court dismiss the claims against them in the Complaint under Federal Rule of Civil Procedure 12(b)(6). The Green Hollow Defendants further request all other relief to which they may be entitled.

Dated: January 1, 2021

Respectfully Submitted,

*/s/ Rusty J. O'Kane*
Rusty J. O'Kane
State Bar No. 24088149
*Rusty.Okane@wickphillips.com*
Zachary C. Farrar
State Bar No. 24093418
*Zachary.Farrar@wickphillips.com*
**WICK PHILLIPS GOULD & MARIN LLP**
3131 McKinney Avenue, Suite 100
Dallas, Texas 75204
(214) 692-6200 (phone)
(214) 692-6255 (fax)

***Attorneys for Defendants HNGH Turtle Creek, LLC, HN Green Hollow Capital Partners, LLC, Vipin Nambiar, and James G. Glasgow***

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served upon counsel of record through the Court's ECF system on January 1, 2021.

G. Michael Gruber, Esq.
J. Brian Vanderwoude, Esq.
**DORSEY & WHITNEY LLP**
300 Crescent Court, Suite 400
Dallas, Texas 75201
*gruber.mike@dorsey.com*
*vanderwoude.brian@dorsey.com*

*/s/ Rusty J. O'Kane*
Rusty J. O'Kane