IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| 2999TC ACQUISITIONS, LLC f/k/a MO 2999 TC, LLC, and TIMOTHY L. BARTON, | § | |
| Plaintiffs, | § | |
| v. | § | Case No. 3:20-cv-3229-S-BT |
| 2999 TURTLE CREEK, LLC, HNGH TURTLE CREEK, LLC, HN GREEN HOLLOW CAPITAL PARTNERS, LLC, MADISON REALTY CAPITAL, LP, VIPIN NAMBIAR, JAMES G. GLASGOW, JR., MARC ZEGEN, AND JOSHUA ZEGEN, | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are (1) a "Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)" (ECF No. 10) filed by Defendants HNGH Turtle Creek, LLC, HN Green Hollow Capital Partners, LLC, Vipin Nambiar, and James G. Glasgow (the "Green Hollow Defendants") and (2) an "Emergency Motion for Temporary Restraining Order and Application for a Preliminary Injunction" (ECF No. 17) filed by Plaintiffs 2999TC Acquisitions, LLC and Timothy L. Barton. For the following reasons, and as stated on the record at the conclusion of the January 4, 2021 hearing on the motions, the Court should find and conclude that the allegations in Plaintiffs' First Amended Complaint are insufficient to state a federal trade-secrets

claim and decline to exercise supplemental jurisdiction over any state-law claims. Therefore, the Court should GRANT the Green Hollow Defendants' motion and dismiss Plaintiffs' claims without prejudice. In the absence of any claim over which it can or should exercise jurisdiction, the Court should decline to enter any order with respect to Plaintiffs' emergency motion for injunctive relief.

## Background

This lawsuit arises out of a $32.5 million loan (the "Loan") from 2999 Turtle Creek, LLC (the "Lender") to Timothy Barton and 2999TC Acquisitions, LLC for construction of a hotel and residential project on Turtle Creek Boulevard (the "Project"). Lender initiated foreclosure proceedings last year and, on November 20, 2020, filed a notice of foreclosure with the sale set to occur, January 5, 2021. By their "Emergency Motion for Temporary Restraining Order and Application for a Preliminary Injunction," Plaintiffs seek to prevent the foreclosure sale.

In their First Amended Complaint, Plaintiffs allege that they are the owners of trade secrets related to the Project, "including but not limited to, financial projections for the Project, the total amount of capital Plaintiffs intended to raise, the amount of capital Lender and Madison expected to contribute to the Project, the amount of debt the Project would incur and which Plaintiffs had already incurred, including and especially the capital structure for the Project, including the amount Plaintiff Barton had personally leveraged, the identity of the Project's Investors, contractor bids, the terms of the International Hotel contract, and designs and plans for the entire development." Am. Compl. 26 ¶ 67 (ECF No. 32-

1).[1] Plaintiffs further allege that Defendants Nambiar and Glasgow wrongfully obtained these trade secrets, used the protected information to obtain a participation interest in the Loan, and then sabotaged the Project by causing investors to back out and by "manufacturing defaults in the midst of a global pandemic in order to foreclose on the Land and take control of the Project." *Id.* 26-27 ¶ 71. Based on this conduct, Plaintiffs assert a claim against the Green Hollow Defendants and others for misappropriation of trade secrets under the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836, *et seq*. *Id.* 26-27 ¶¶ 67-74. Plaintiffs also assert various state-law claims against the Green Hollow Defendants and others, but the trade-secrets claim is the only federal claim alleged. Plaintiffs do not allege there is diversity jurisdiction.

The Green Hollow Defendants filed a motion to dismiss the claims against them under Federal Rule of Civil Procedure 12(b)(6). *See* Mot. Dismiss. They argue Plaintiffs' federal trade-secrets claim fails because, among other things, Plaintiffs have not plausibly pleaded a protectable trade secret. The Green Hollow Defendants further argue that the entire case should be dismissed because, without the trade-secrets claim, there is no basis for federal jurisdiction. Mot. Dismiss 15.

The parties fully briefed and, at a hearing on January 4, 2021, argued the Green Hollow Defendants' motion to dismiss, as well as Plaintiffs' motion for preliminary injunctive relief. The motions are, thus, ripe for determination.

[1] The undersigned granted Plaintiffs leave to file their First Amended Complaint on January 4, 2021. *See* E. Order (ECF No. 41).

**Motion to Dismiss**

Legal Standards

When deciding a 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citations omitted). To survive a Rule 12(b)(6) motion, therefore, a plaintiff's complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555).

This pleading standard does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Where the facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has stopped short of showing that the plaintiff is plausibly entitled to relief. *Id.* at 678 (citing *Twombly*, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, a court may not look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (citation omitted). However, the pleadings, for the purpose of determining a Rule 12(b)(6) motion, include documents attached to the pleadings and to the motion to dismiss so long as they "are referred to in the plaintiff's complaint and are central to [his] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

## Analysis

To state a claim under the DTSA, Plaintiffs must allege (1) the existence of a trade secret, (2) misappropriation of that trade secret, and (3) use in interstate commerce. 18 U.S.C. § 1836(b)(1); *Phazr, Inc. v. Ramakrishna*, 2020 WL 5526554, at *3 (N.D. Tex. Sept. 14, 2020) (citing *Marek Brother Sys., Inc. v. Enriquez*, 2019 WL 3322162, at *3 (N.D. Tex. July 24, 2019)). A "trade secret" is information that (1) the owner has taken reasonable measures to keep secret and (2) derives independent economic value from not being generally known or readily ascertainable through proper means. *See* 18 U.S.C. § 1839(3). Examples of trade secrets include "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations,

program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes." *Id.*

Here, Plaintiffs allege that they are the owners of trade secrets related to the Project, "including but not limited to, financial projections for the Project, the total amount of capital Plaintiffs intended to raise, the amount of capital Lender and Madison expected to contribute to the Project, the amount of debt the Project would incur and which Plaintiffs had already incurred, including and especially the capital structure for the Project, including the amount Plaintiff Barton had personally leveraged, the identity of the Project's Investors, contractor bids, the terms of the International Hotel contract, and designs and plans for the entire development." Am. Compl. 26 ¶ 67. Assuming without deciding that Plaintiffs' alleged trade secrets constitute the type of information covered by the DTSA, Plaintiffs' claim fails because they do not allege that they took reasonable measures to keep such information secret.

Plaintiffs allege they "have made and continue to make reasonable efforts to maintain the secrecy of their Trade Secrets by refusing to provide this information to any third parties who were not bona fide prospective investors." *Id.* ¶ 70. And as to Defendants Glasgow and Nambiar, Plaintiffs aver Barton disclosed the alleged trade secrets only after Glasgow and Nambiar "verbally agreed to keep confidential all information disclosed" during separate meetings to "pitch" the Project. *Id.* 10 ¶ 26; *see also id.* 14-15 ¶ 38. According to Plaintiffs, they knew Glasgow to be a "real estate investor," believed him to be "a viable candidate as a potential equity

investor," and "before, during, and after the pitch, Barton made clear that the information being presented was confidential and not to be used to compete with the Project." *Id.* 10 ¶ 26; *see also id.* 11 ¶ 27 ("Based upon Barton's belief that Glasgow was a bona fide investor, Barton revealed information about this capital structure and strategy to Glasgow. . . . Prior to this meeting, Barton had not previously disclosed this information to Madison or any other person, and only did so due to Glasgow's verbal confidentiality agreement and Barton's belief that disclosure would further the economic interests of the Project."). Similarly, Barton believed Nambiar was a potential equity investor in the Project and "[b]efore, during, and after the meeting, Barton informed Nambiar that the information about the Project was confidential and proprietary." *Id.* 14 ¶¶ 36, 38. Plaintiffs allege that "[b]efore the presentation, Nambiar agreed to keep the information confidential and not to use any information to compete with the Project." *Id.* 14-15 ¶ 38. And "Barton would not have shared any information regarding the Project with Nambiar but for his representations that he would keep the information confidential and Barton's belief that disclosing the information would further the Project's economic interests." *Id.* 15 ¶ 38.

Plaintiffs, who claim Barton is an experienced real-estate developer himself, *see id.* 2 ¶ 3, do not allege that Barton took any other measures to protect the alleged trade secrets. They do not, for example, allege that the secret information was marked confidential, kept in locked cabinets, or stored on secure servers. Indeed, they do not allege any facts regarding where the purported trade secrets

were stored; how they were secured; or who else had access to the information. Plaintiffs also do not allege that they ever required Glasgow, Nambiar, or anyone else, to sign a written non-disclosure or confidentiality agreement before Barton shared this allegedly secret information. *See Computer Scis. Corp. v. Tata Consultancy Servs. Ltd.*, 2020 WL 2487057, at *4 n.2 (N.D. Tex. Feb. 7, 2020) (finding plaintiff adequately alleged that purported trade secret was entitled to protection by pleading it took reasonable measures under the circumstances by "using technological and physical security systems, limiting access and use of [the information], marking [the information] as confidential and proprietary, and imposing strict confidentiality, non-disclosure and non-use requirements on those with access to [the information]"), *adopted by* 2020 WL 1428941 (N.D. Tex. Mar. 24, 2020); *see also ATS Grp., LLC v. Legacy Tank & Indus. Servs. LLC*, 407 F. Supp. 3d 1186, 1199 (W.D. Okla. 2019) (holding that employer's complaint against its former employees sufficiently alleged that employer took reasonable steps to protect the secrecy of its trade secrets, as element of claim for misappropriation of trade secret in violation of DTSA, by asserting that its employee handbook required employees to protect the confidentiality of company trade secrets, access to which was password protected and limited to those whose company role required it).

Plaintiffs' sole allegation regarding reasonable measures is that Barton verbally asked Nambiar and Glasgow one time each not to share the information he disclosed during the pitch meeting. These facts fall far short of those necessary for the Court to even infer that Plaintiffs took reasonable measures to keep the

information secret. As such, Plaintiffs fail to sufficiently allege the existence of a trade secret required to state a claim under the DTSA. *See Gov't Emps. Ins. Co. v. Nealey*, 262 F. Supp. 3d 153, 162, 167 (E.D. Pa. 2017) (citing cases) (granting Rule 12(b)(6) motion to dismiss DTSA claim because the complaint failed to sufficiently allege reasonable measures had been taken to protect trade secret). Therefore, the Court should GRANT the Green Hollow Defendants' motion to dismiss the federal trade-secrets claim.

The Court also should decline to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims. When the federal claims are dismissed at an early stage of the litigation, the district court has a "powerful reason to choose not to continue to exercise jurisdiction." *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 161 (5th Cir. 2011) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988)). Indeed, the general rule in the Fifth Circuit is that a court should decline to exercise jurisdiction over remaining state-law claims when all the federal-law claims are eliminated before trial. *Brookshire Brothers Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009); *see also Parker & Parsley Petroleum Co. v. Dresser*, 972 F.2d 580, 585 (5th Cir. 1992) (citing *Wong v. Stripling,* 881 F.2d 200, 204 (5th Cir. 1989)) ("Our general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed.").

**Preliminary Injunctive Relief**

Legal Standards and Analysis

A preliminary injunction is an "extraordinary remedy" which should be granted only if the movant has clearly carried its burden of persuasion. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (quoting 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2948 (2d ed. 1995)) (stating a preliminary injunction is a "drastic remedy" that "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." (emphasis in the original)). In deciding whether to issue a preliminary injunction, a district court considers the following: (1) the applicant's likelihood of success on the merits; (2) whether there exists a substantial threat of irreparable harm if the injunction is not granted; (3) whether the threatened injury outweighs any harm that the injunction might cause to the defendant; and (4) whether granting the injunction will serve the public interest. *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 288 (5th Cir. 2012) (citing *Tex. Med. Providers Performing Abortion Servs. v. Lakey,* 667 F.3d 570, 574 (5th Cir. 2012)). The same four-factor test also applies to temporary restraining orders, because "[a] TRO is simply a highly accelerated and temporary form of preliminary injunctive relief." *Horner v. Am. Airlines, Inc.*, 2017 WL 978100, at *1 (N.D. Tex. Mar. 13, 2017) (Fitzwater, J.) (citations and internal quotation marks omitted).

A district court must satisfy itself that it has jurisdiction in order to validly enter a preliminary injunction. *See Enter. Int'l, Inc. v. Corporacion Estatal*

*Petrolera Ecuatoriana*, 762 F.2d 464, 471 (5th Cir. 1985) (holding district court should not have issued preliminary injunction without determining whether it had jurisdiction first). In this case, in the absence of any claim over which it can or should exercise jurisdiction, the Court should decline to enter any order with respect to Plaintiffs' request for preliminary injunctive relief.

**Recommendation**

The Court should GRANT the Green Hollow Defendants' "Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)" (ECF No. 10) and dismiss Plaintiffs' lawsuit without prejudice. The Court should decline to enter any order with respect to Plaintiffs' "Emergency Motion for Temporary Restraining Order and Application for Preliminary Injunction" (ECF No. 17).

**SO RECOMMENDED.**

January 4, 2021.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk is directed to serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 14 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation will bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the findings, conclusions, and recommendation within 14 days after being served with a copy will bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).