**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **2999TC ACQUISITIONS, LLC f/k/a MO 2999TC, LLC, AND TIMOTHY L. BARTON** | § | |
| **Plaintiffs** | § | |
| **v.** | § | **Case No. 3:20-CV-3229** |
| **2999 TURTLE CREEK, LLC, MADISON REALTY CAPITAL, LP, MARC ZEGEN, AND JOSHUA ZEGEN** | § | |
| **Defendants.** | § | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS MADISON REALTY CAPITAL, LP, MARC ZEGEN, AND JOSHUA ZEGEN'S MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2)**

Plaintiffs 2999TC Acquisitions, LLC f/k/a MO 2999 TC, LLC, and Timothy L. Barton (together, "***Plaintiffs***") file this *Response* ("***Response***") *to Defendants Madison Realty Capital, LP, Marc Zegen, and Joshua Zegen's* (collectively, "***Defendants***") *Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2)* (Doc. 55) ("***Motion to Dismiss***"), and respectfully show the Court as follows:

## I. PROCEDURAL BACKGROUND

1. Plaintiffs 2999TC Acquisitions, LLC f/k/a MO 2999TC, LLC ("***2999TC***" or "***Borrower***"), and Timothy L. Barton ("***Barton***" or "***Guarantor***") filed their Original Complaint (Doc. 1) on October 22, 2020, alleging numerous claims against Defendants Madison Realty Capital, LP ("***Madison***"), 2999 Turtle Creek, LLC ("***Turtle Creek***"), and two of Madison's principals, Joshua Zegen and Marc Zegen (the "***Zegens***"), for numerous causes of action for Defendants' theft of trade secrets, fraud, and conspiracy related to Madison and Turtle Creek's bad-faith sale of a purported junior subordinate participation interest in Plaintiffs' loan and deed

of trust on real property in Texas related to the development of a luxury hotel and branded residence. After Plaintiffs moved for leave, the Court permitted Plaintiffs to file their First Amended Complaint on January 4, 2021. Plaintiffs' Original and First Amended Complaints included four additional defendants, HNGH Turtle Creek, LLC, HN Green Hollow Capital Partners, LLC, Vipin Nambiar, and James Glasgow (collectively, the "***Green Hollow Parties***").

2. On January 5, 2021, Plaintiffs dismissed the Green Hollow Parties with prejudice after reaching an out-of-court settlement. Doc. 46.

3. On January 29, 2021, in lieu of an answer, Defendants filed a Motion to Dismiss (Doc. 55) related to Plaintiffs' First Amended Complaint under Federal Rule of Civil Procedure 12(b)(2), challenging this Court's personal jurisdiction over Madison, and Marc Zegen and Joshua Zegen (collectively, the "***Zegens***").[1] Because Rule 15(a)(1)(B) allows for amendment as a matter of course within 21 days following a motion under Rule 12(b), Plaintiffs timely filed their Second Amended Complaint (Doc. 60) ("***Complaint***") on February 19, 2021, to clarify additional issues raised in Defendants' Motion to Dismiss and update the pleadings to reflect the dismissal of the Green Hollow Parties.

## II. SUMMARY

4. As shown herein, Plaintiffs' Complaint establishes a prima facie case for this Court's personal jurisdiction over Madison and the Zegens due to their tortious conduct that they purposefully directed at the State of Texas, which they knew would cause harm to Barton, a Texas resident. Plaintiffs incorporate by reference the Affidavit of Timothy Barton ("***Barton Affidavit***"), and supporting exhibits, filed in the Appendix (Doc. 19) to Plaintiffs' Emergency Motion for Temporary Restraining Order (Doc. 18). For the reasons stated, not only have Defendants

[1] Defendant Turtle Creek does not challenge personal jurisdiction.

established "minimum contacts" with the State of Texas, but this Court's jurisdiction over Defendants would not offend any traditional notions of fair play and substantial justice or infringe upon their due process rights. Defendants' Motion to Dismiss should be denied.

## III. BACKGROUND FACTS

5. Plaintiffs are Borrower and Guarantor under a deed of trust and security agreement ("***Loan***") with Turtle Creek on an exclusive parcel of land in Dallas, Texas ("***Land***"), on which Plaintiffs intended to develop a luxury hotel ("***Project***").[2] Plaintiffs initially borrowed a portion of the funds required to purchase the Land ($32.5 million) from Lender through its parent company Madison with the subsequent goal of raising additional funds within 1-2 years after the Loan funds to complete the Project.[3] While attempting to raise these additional funds, Turtle Creek, through Madison and its principals, the Zegens, sold a "junior participation interest" ("***B-Note***") in Plaintiffs' Loan for $7 million—approximately 20% of the Loan value.

6. Although the sale of a junior subordinate participation interest is relatively common among institutional lenders, this particular "junior subordinate participant" was not any ordinary institutional investor (*i.e.*, a party seeking to earn passive income as part of a larger investment portfolio). Through Madison, Turtle Creek knowingly sold this B-Note to HNGH, a party who intended to compete with Plaintiffs and stage a hostile takeover of the Project for itself—a fact Defendants knew about but concealed from Plaintiffs.

7. A lender's sale of a participation interest to a competitor of the borrower has been held to be a bad faith transaction under New York law.[4] Thus, as a competitor,

---

[2] *See* ECF No. 19, Ex. A ¶ 3.
[3] *See* ECF No. 19, Ex. A ¶¶ 4-5.
[4] The Loan is governed by New York law. *See* ECF No. 19, Ex. A-1 ¶ 16; *see Empresas Cablevision, S.A.B. de C.V. v. JPMorgan Chase Bank, N.A.*, 381 Fed. Appx. 117, 118 (2d Cir. 2010).

transferee/purchaser HNGH was not a proper transferee entity under the Deed of Trust, which plainly contemplates passive, institutional investors.[5]

8. Without Plaintiffs' knowledge, Turtle Creek entered into a secret agreement with HNGH ("***Participation Agreement***"), in which Turtle Creek gave significant rights of control to HNGH—effectively converting it from a "junior participant" to a "senior lender." These rights materially altered the terms of Plaintiffs' Loan with Turtle Creek and completely undermined the relationship Plaintiffs' *thought* they had with Turtle Creek and Madison.[6]

9. Before entering into this secret Participation Agreement, Defendants and one principals of HNGH, James Glasgow ("***Glasgow***") met with Barton and pretended that Glasgow was interested in becoming equity investors in the Project, inducing Barton to disclose confidential information about the Project that he would never have disclosed otherwise.[7]

10. Through the Participation Agreement, Defendants gave HNGH exclusive rights to communicate with Borrower in the event of any default, the right to veto Lender's sale of the Loan to any party HNGH did not approve, and the right to foreclose on the Land.[8] In the process, Madison cut a deal for itself and agreed to finance the Project for HNGH once it obtained control, and even agreed to indemnify HNGH for any legal issues that might arise from the Participation Agreement.[9] In sum, this deal was so far from a commercially reasonable "junior subordinate participation interest" that it is implausible for Madison or HNGH to argue otherwise. In fact, the Participation Agreement itself is proof that Turtle Creek and Madison took affirmative action to destroy the benefit of the bargain contemplated under the original Loan.

---

[5] *See* ECF No. 19, Ex. A-2 § 40.
[6] *See* ECF No. 19, Ex. A ¶¶ 22, 33.
[7] *See id.* at ¶¶ 6-14, 18-19.
[8] *See* ECF No. 19, Ex. A-10 §§ 7, 8(d).
[9] *See id.*, at § 7(e), Ex. A-12.

11. Madison and the Zegens have been actively involved in all stages of this takeover attempt, from their initial communications with Glasgow and the Green Hollow Parties about the B Note purchase,[10] to their meeting with Barton in which they lied about Glasgow's intentions of becoming an equity investor,[11] to negotiating the Participation Agreement to secure the Green Hollow Parties' right to foreclose on the Land.[12] Plaintiffs have brought multiple claims against Madison and the Zegens in their individual capacities, including intentional theft of trade secrets under Federal and Texas law,[13] fraud,[14] fraud by nondisclosure,[15] and conspiracy.[16] This Court may properly assert personal jurisdiction over Madison and the Zegens based on their intentional actions aimed at Texas that caused foreseeable harm to a Texas resident.

## IV. ARGUMENT & ANALYSIS

12. The due process clause of the Fourteenth Amendment, as interpreted by the Supreme Court, permits the exercise of personal jurisdiction over a nonresident defendant when "(1) that defendant has established 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Ruston Gas Turbines v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)). Because Texas's long-arm statute has been construed to extend to the limits of due process, the Court may bypass analyzing the reach of the long-arm statute and proceed directly to the due-process analysis. *Stroman Rlty., Inc. v. Wercinski*, 513 F.3d 476, 482 (5th Cir. 2008); *Nursery Decals & More, Inc. v. Neat Print, Inc.*, No. 3:19-CV-2606-B, 2020 U.S. Dist. LEXIS 63113, at *7 (N.D. Tex. Apr. 10, 2020).

---

[10] *See* ECF No. 19, Ex. A ¶¶ 6-14.
[11] *See* ECF No. 19, Ex. A-10.
[12] *See id.*
[13] *See* ECF No. 60 § V.A, G.
[14] *See id.* at § V.D.
[15] *See id.* at § V.E.
[16] *See id.* at § V.F.

13. In determining whether a plaintiff has established a prima facie case for personal jurisdiction over a defendant, a court may review any combination of recognized methods of discovery, including affidavits, to assist in the jurisdictional analysis. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235 (5th Cir. 2008). A court must take uncontroverted allegations in the plaintiff's complaint as true, and any conflicting evidence in the parties' affidavits must be resolved in the plaintiff's favor. *Johnston v. Multidata*, 523 F.3d 602, 609 (5th Cir. 2008); *D.J. Invs. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985); *Nursery Decals*, 2020 U.S. Dist. LEXIS 63113, at *6. Proof by a preponderance of the evidence is not required. *Johnston*, 523 F.3d at 609.

14. Here, the Court's exercise of personal jurisdiction over Madison and the Zegens is proper because both prongs of the due process analysis are met. *First*, Madison and the Zegens established minimum contacts with Texas by purposefully directing their tortious conduct toward Texas, conspiring with the Green Hollow Parties about Texas real property, and knowing those activities would cause harm to a Texas resident. *Second*, this Court's personal jurisdiction over Madison and the Zegens would not offend any traditional notions of fair play and substantial justice because it is not burdensome for them to litigate this matter in Texas, Texas has a manifest interest in resolving claims concerning Texas real property, and Texas is the most efficient forum for resolving this controversy.

**A. Madison and the Zegens are subject to specific jurisdiction because they established minimum contacts by purposefully directing his fraudulent actions toward Texas.**

15. In cases of intentional torts, the first prong of the due process clause ("minimum contacts") is satisfied when the defendant's conduct is intentional, is expressly aimed at the forum state, and causes the plaintiff an injury that the defendant should have anticipated would be suffered in the forum state. *Calder v. Jones*, 465 U.S. 783, 789-90 (1984). When a defendant

purposefully directs his activities at residents of the forum, he has "fair warning" that litigation may arise as a result of those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985).

16. Under Texas and Supreme Court precedent, it is a well-established principle that corporate officers are primarily liable for their own torts and "their status as employees does not somehow insulate them from jurisdiction." *Calder*, 465 U.S. at 790 (holding that reporter and editor of allegedly defamatory magazine article were subject to personal jurisdiction); *see Crithfield v. Boothe*, 343 S.W.3d 274, 287 (Tex. App.—Dallas 2011, no pet.).

17. Based upon Defendants intentionally tortious conduct, the Complaint itself states the basis for the Court's personal jurisdiction over Defendants:

> **The Court has specific personal jurisdiction over the nonresident Defendants, Turtle Creek, and Madison because they entered into negotiations for Madison and Turtle Creek's sale of a participation interest to Green Hollow and HNGH, which was memorialized by a subsequent letter of intent and agreement regarding real property located in Texas**. Moreover, Turtle Creek has already availed itself of Texas law by attempting to foreclose on the Texas property and by bringing suit against Defendant Barton in Texas court. **Additionally, the Court has specific personal jurisdiction over all Defendants because Defendants intentionally directed their tortious conduct toward the State of Texas, knowing that their conduct would cause harm to a Texas resident.**

Compl. ¶ 16.

18. In addition, Plaintiffs' Complaint sufficiently sets forth the factual allegations and evidence supporting this Court's specific personal jurisdiction over Madison and the Zegens based upon their intentionally tortious conduct and conspiracy concerning Texas real property. First, the Complaint and the Barton Affidavit describe a meeting between the Defendants and Glasgow on October 24, 2019, in which Defendants offered Glasgow and the Green Hollow Parties the opportunity to purchase a participation interest in the Loan and Deed of Trust on the Land, located

in Texas. Compl. ¶ 24 & Ex. D.[17] Less than a week later, Josh Zegen, on behalf of Madison, called Barton and told him to drop everything to come to the Madison office in New York to meet with Glasgow, whom he represented as a prospective equity investor. Compl. ¶ 25. Marc Zegen, on behalf of Madison, exchanged emails with Barton's company regarding this meeting. Compl. Ex. D.

19. The Defendants and Glasgow met with Barton, whom they knew to be a Texas resident, and collectively pretended that Glasgow was a prospective equity investor for the Project (located in Texas), which was not true, in order to induce Barton to reveal trade secrets about the Project. Compl. ¶¶ 26-31.[18] Glasgow and the Green Hollow Parties used this information to obtain a controlling interest in the Project from Lender and Madison, executing a letter of intent only one week after the meeting. Compl. ¶ 32 & Ex. F (Madison itself was a party to the Letter of Intent).[19] During November and December 2019, Defendants were personally involved in numerous emails with the Green Hollow Parties negotiating the terms of the B-Note purchase, which focused heavily on what the Green Hollow Parties' returns would be, not if—but *when*—they foreclosed on the Loan (Compl. ¶¶ 32, 35 & Ex. G)[20], clearly evidencing Defendants intention to use Texas foreclosure laws to achieve the goal of the conspiracy, i.e., the transfer of the Land to the Green Hollow Parties.

20. In sum, by their representations and omissions, Madison and the Zegens fraudulently misrepresented his Glasgow's intentions about investing in the Project, which is located in Texas, induced Barton (a Texas resident) to share confidential information, and used

[17] ECF No. 19, Ex. A ¶ 9, Ex. A-4 (Email from Glasgow to Nambiar reflecting Madison's B-Note offer on Oct. 24, 2019).
[18] *Id.* at ¶ 10-11.
[19] ECF No. 19, Ex. A-7 (Letter of Intent dated Nov. 15, 2019).
[20] ECF No. 19, Ex. A-22 (B-Note negotiation email thread among Defendants).

that information to help the Green Hollow Parties obtain a controlling interest in the Loan with the ultimate goal of using Texas law to foreclose on Texas real property. Because these parties are individually responsible for their own torts and cannot shoehorn their fraudulent conduct solely under the umbrella of Turtle Creek (see *Calder*, 465 U.S. at 790), this Court may properly exercise personal jurisdiction over Madison and the Zegens in this matter.

**B. This Court's personal jurisdiction over Madison and the Zegens would not offend traditional notions of fair play and substantial justice.**

21. Based on Defendants' intentionally tortious conduct aimed at assisting the Green Hollow Parties to acquire real property in Texas, this Court's assertion of jurisdiction over Madison and the Zewgens easily meets the second "due process" prong of the personal jurisdiction analysis. In fact, once a plaintiff has established minimum contacts, only in "rare" cases will a court conclude that the exercise of personal jurisdiction over a defendant would offend notions of fair play and substantial justice. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999); *Signtronix, Inc. v. General Sign, Inc.*, No. 3:06-CV-2244-L, 2007 U.S. Dist. LEXIS 61743, at *26 (N.D. Tex. Aug. 22, 2007).

22. Moreover, after minimum contacts have been established, the burden shifts to the defendant to make a "compelling case" as to how the assertion of jurisdiction would be unfair. *Wein Air Alaska*, 195 F.3d at 215 (quoting *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 477 (1985)). The interests to be balanced are (1) the burden on the defendant having to litigate in the forum; (2) the forum state's interests in the lawsuit; (3) the plaintiff's interests in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; (5) and the state's shared interest in furthering fundamental social policies. *See id.* Here, Defendants' Motion to Dismiss did not argue that litigation in this forum would be unfairly burdensome nor could they plausibly do so.

23. As the Supreme Court has noted, states have a "manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors. *Burger King*, 471 U.S. at 473. This interest is especially prevalent in instances of fraudulent conduct committed against a resident of the forum state. *See Wein Air Alaska*, 195 F.3d at 215; *D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 548 (5th Cir. 1985). In such cases, the interests of the plaintiff and the forum state "justify even large burdens on the defendant." *See Wein Air Alaska*, 195 F.3d at 215. The *Burger King* Court (in 1985) also remarked at the ways in which "modern transportation and communication" have made it much less burdensome to defend oneself in a different state. *See Burger King*, 471 U.S. at 474. Thirty-five years and one pandemic later, this proposition is truer than ever.

24. Madison and the Zegens are represented by the same counsel who represents Turtle Creek, parties who will presumably share common interests, defenses, and evidence throughout this litigation. Arguably, it would be more costly and burdensome for Madison and the Zegens to obtain separate counsel in New York to defend them in a separate action in New York District Court. Plus, with the emergence of the COVID-19 landscape that has ushered in new remote-litigation norms, such as Zoom depositions, hearings, and trials, these Defendants might never need to leave home through the duration of this lawsuit in Texas. In any event, Madison and the Zegens will not be able to make the "compelling case" that they will be unfairly burdened by this Court's jurisdiction over them. *See Wein Air Alaska*, 195 F.3d at 215

25. In sum, Plaintiffs have met their burden to establish that this Court has specific personal jurisdiction over Madison and the Zegens due to their intentional, tortious conduct aimed toward the State of Texas. In light of these minimum contacts, Madison and the Zegens will be unable to meet their burden to establish that their due process rights would be violated in any

manner. Accordingly, taking all uncontroverted allegations in Plaintiffs' Complaint as true, and resolving any conflicting evidence in the parties' affidavits in the Plaintiffs' favor (*see Johnston*, 523 F.3d at 609), Plaintiffs have established a prima facie case for this Court's personal jurisdiction over Madison and the Zegens and their Motion to Dismiss should be denied.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that Defendant's Motion to Dismiss be denied and that Plaintiffs have such other and further relief to which they may be justly entitled.

Dated: February 19, 2021.

Respectfully submitted,

*/s/ G. Michael Gruber*
**G. Michael Gruber, Esq.**
Texas Bar No. 08555400
gruber.mike@dorsey.com
**J. Brian Vanderwoude, Esq.**
Texas Bar No. 24047558
vanderwoude.brian@dorsey.com
**Kelsey M. Taylor, Esq.**
Texas Bar No. 24098507
taylor.kelsey@dorsey.com
**DORSEY & WHITNEY LLP**
300 Crescent Court, Suite 400
Dallas, Texas 75201
(214) 981-9900 Phone
(214) 981-9901 Facsimile

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2021, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

*/s/ G. Michael Gruber*
G. Michael Gruber, Esq.