**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **2999TC ACQUISITIONS, LLC F/K/A MO 2999 TC, LLC, AND TIMOTHY L. BARTON,** | § | |
| ***Plaintiffs,*** | § | |
| **v.** | § | **No. 3:20-CV-3229** |
| **2999 TURTLE CREEK, LLC, MADISON REALTY CAPITAL, LP, MARC ZEGEN, AND JOSHUA ZEGEN,** | § | |
| ***Defendants.*** | § | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

Defendants 2999 Turtle Creek LLC, Madison Realty Capital, LP, Marc Zegen, and Joshua Zegen ("Defendants")[1] file their Reply Brief in Support of Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6) (the "Motion") and respectfully state as follows:

**<u>REPLY IN SUPPORT OF RULE 12(B)(6) MOTION TO DISMISS</u>**

Of all the claims made in the now third iteration of their Complaint, Plaintiffs allege only a single cause of action (Misappropriation of Trade Secrets under Defense of Trade Secrets Act) that could confer federal question jurisdiction. That claim fails because, as this Court previously observed, Plaintiffs do not allege a trade secret or a misappropriation, did not take any measures to protect their secrets, and consented to (if not actively participated in) the information's wider dissemination.

[1] Defendants Madison Realty Capital, LP, Marc Zegen, and Joshua Zegen join this Reply subject to and without waiving their separate Motion to Dismiss under Rule 12(b)(2).

The remaining claims should likewise be dismissed because they do not state claims upon which relief could be granted and because they do not independently confer federal jurisdiction.

The Court previously found that Plaintiffs' only federal claim (for trade secrets) failed and that the Court should not exercise supplement jurisdiction over the remaining state-law claims. Nothing has changed, and, respectfully, the Court should dismiss the Complaint.

### A. Plaintiffs' Response, like the Complaint, fails to address multiple factors for misappropriation of trade secrets.

At a minimum, Plaintiffs must allege the existence of both a trade secret and misappropriation.[2] They do neither.

#### 1. The information claimed by Plaintiffs does not constitute "trade secrets."

A "trade secret" is information that the owner has taken reasonable measures to keep secret and that derives independent economic value from not being generally known or readily ascertainable through proper means.[3]

Plaintiffs argue that their purported trade secrets include construction drawings, plans, contractor bids, contract terms, balance sheets, *pro formas*, projected returns, and capital structure.[4] Such ordinary business information might possibly rise to the level of trade secret, but only if the owner has taken reasonable measures to keep such information secret, and if it derives independent economic value from not being generally known to, and not being readily ascertainable by, another person who can obtain economic value from the disclosure or use of the

---

[2] *See* 18 U.S.C. § 1836(b)(1); *Phazr, Inc. v. Ramakrishna*, Case No. 3:19-CV-01188, 2020 WL 5526554, *3 (N.D. Tex. Sept. 14, 2020) (citing *Marek Brother Sys., Inc. v. Enriquez*, Case No. 3:19-CV-01082, 2019 WL 3322162, *3 (N.D. Tex. July 24, 2019)); *see also* Findings, Conclusions, and Recommendation of the United States Magistrate Judge [Dkt. No. 45], p. 5.

[3] *See* 18 U.S.C. § 1839(3). Examples of trade secrets include "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes. *See id*; *see also* Findings, Conclusions, and Recommendation of the United States Magistrate Judge [Dkt. No. 45], p. 5.

[4] *See* Response, p. 4.

information.[5] The plans for a development described by Plaintiffs are on their face *not* trade secrets; they are, rather, non-confidential business plans that are required to be disclosed to multiple sources, including the Lender, local government, the franchisor, etc.[6] Likewise, the identity of investors, contractors, and capital structure are not trade secrets because relationships are not trade secrets.[7]

### 2. Plaintiffs did not take measures to protect their allegedly confidential information.

#### a. Plaintiffs did not protect their allegedly confidential information.

Initially, Plaintiffs took no adequate measures to maintain confidentiality when they freely disclosed the alleged confidential information, eschewed non-disclosure agreements, and now admit that, at best, they allegedly obtained a "verbal confidentiality agreement."[8] Such agreements, even if obtained, are insufficient protections.[9]

Plaintiffs have not alleged that anyone at all was required or even asked to sign a written non-disclosure or confidentiality agreement, or that that they used technological and physical security systems, limited access and use of the information, marked the information as confidential

---

5 *See* 18 U.S.C. §§ 1836(b)(1), 1839(3).

6 *See, e.g.*, *Thoroughbred Ventures, LLC v. Disman*, No. 4:18-CV-00318, 2018 WL 3752852, at *5 (E.D. Tex. Aug. 8, 2018) ("A trade secret includes compilations of data that the owner has taken steps to keep secret and that derive independent economic value.").

7 *Thoroughbred Ventures, LLC*, 2018 WL 3752852, at *5 ("Customer relationships do not qualify as trade secrets just because a company invests time and money to cultivate those relationships.").

8 *See* Response, pp. 5–6; Complaint, ¶¶ 27, 29.

9 *See Art & Cook, Inc. v. Haber*, 416 F. Supp. 3d 191, 197 (E.D.N.Y. 2017) (denying temporary injunction where the plaintiff "stated that he spoke to Defendant many times about confidentiality, and Plaintiff allegedly asked Defendant to sign an employee handbook and non-disclosure agreement two years before Defendant's termination, though Defendant refused to sign them. The Court struggles to find that these efforts constitute 'reasonable measures' to protect valuable trade secrets.") (record citation omitted).

and proprietary, or imposed strict confidentiality, non-disclosure, or non-use requirements on those with access to the information.[10]

In their Second Amended Complaint, Plaintiffs dutifully aver for the first time that their servers are in a locked room and hard copies are in a locked drawer,[11] but they aver immediately before that that their "capital structure and strategy is shared only with those the developer believes to be sincere investors, as those investors would expect to know how their investment would be used."[12] There is, of course, no allegation that such investors signed confidentiality agreements or that the data on the servers (as opposed to the physical servers) is protected in any way.

There are no allegations, for example, that Plaintiffs marked their documents as confidential, or used a password-protected server or folders, or used a third party security company to protect its servers from external hacking, or required restrictive covenants, or have ever litigated to prevent disclosure of alleged confidential information, or have ever encrypted anything, or even have an employee manual with confidentiality provisions or non-disclosure agreements.[13] Absent any efforts at protection, Plaintiffs' lip service regarding trade secret protection is insufficient.

---

10 *See Computer Sciences Corp. v. Tata Consultancy Servs. Ltd.*, Civil Action No. 3:19-CV-970-X(BH), 2020 WL 2487057, at *4 n.2 (N.D. Tex. Feb. 7, 2020), adopted by 2020 WL 1428941 (N.D. Tex. Mar. 24, 2020); *see also* Findings, Conclusions, and Recommendation of the United States Magistrate Judge [Dkt. No. 45], p. 8.

11 *See* Complaint, ¶ 28.

12 *See* Complaint, ¶ 28.

13 *See, e.g.*, *Haber*, 416 F. Supp. 3d at 197 ("The Court recognizes that Plaintiff took other steps to secure its information, such as utilizing a password protected server, password-protected folders, and a third party internet security company to protect its servers from outside hacking. These measures certainly provide an argument that Plaintiff took reasonable measures to protect its purported trade secrets such that they should be afforded DTSA protection. However, absent more—and in the face of the failings discussed above—the Court cannot conclude that Plaintiff is likely to succeed on any such argument. *Cf. Wrap-NPack, Inc. v. Eisenberg*, No. 04-cv-4887, 2007 WL 952069, at *9 (E.D.N.Y. Mar. 29, 2007) (finding that the plaintiff implemented "significant safeguards" to protect trade secret information and conferring trade secret protection under New York state law where the plaintiff utilized not only password protection, but also restrictive covenants, an employee manual with confidentiality provisions, litigation to prevent disclosure of confidential information, and memoranda concerning confidentiality); *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*, No. 15-cv-211, 2016 WL 5338550, at *6 (S.D.N.Y. Sept. 23, 2016) (finding the owner of a trade secret to have taken reasonable measures to keep the information secret under the DTSA where the owner utilized "strictly controlled servers" and "confidentiality provisions and limitations")

**b. Plaintiffs consented to dissemination, and agreed to aid in dissemination, of the alleged confidential information.**

Even if the Plaintiffs alone were not the unguarded source of information,[14] Plaintiffs expressly authorized Lender – in its "sole and absolute distraction" – to share the alleged trade secret information with any party who expressed any interest in purchasing a participation interest in the loan.[15] Far from controlling or protecting their information, Plaintiffs agreed and consented that the Lender could, in its sole and absolute discretion, distribute "confidential information" to *any* actual participant or potential participant, agreeing specifically that:

> Borrower grants to Beneficiary, and shall cause each Guarantor and other person or party associated or connected with this Deed of Trust or the Collateral therefore to grant to Beneficiary the right to distribute on a confidential basis financial and other information concerning Borrower, each such Guarantor and other person or party and the property encumbered by this Deed of Trust and any other pertinent information with respect to this Deed of Trust to any party who has purchased a participation interest in this Deed of Trust who has expressed an interest in purchasing any such interest in this Deed of Trust.
>
> On a confidential basis, Beneficiary may provide <u>to any actual or potential purchaser, transferee, assignee, servicer, participant or investor</u> or any rating agency, all documents and information which Beneficiary now has or may hereafter acquire relating to the Loan, Borrower, Guarantor any other party to the Loan or the Property which shall have been furnished by or on behalf of Borrower, Guarantor or any other party to the Loan, as Beneficiary in its discretion determines is desirable.[16]

---

(emphases added); *see also BCOWW Holdings, LLC v. Collins*, No. SA-17-CA-00379-FB, 2017 WL 3868184, at *15 & n.19 (W.D. Tex. Sept. 5, 2017) ("Courts in Texas and other states who have adopted this provision of the UTSA have concluded an employer fails to take reasonable steps to preserve secrecy in circumstances where the employer does not require its employees or third parties to sign a non-disclosure agreement, does not encrypt or otherwise protect its digital files, and does not mark its documents as confidential."); *Sortiumusa LLC v. Hunger*, No. 3:11–CV–1656–M, 2013 WL 11730655, at *12 (N.D. Tex. Mar. 31, 2013) (finding plaintiff's complaint alleging trade secret appropriation pursuant to the Georgia Trade Secrets Act was "fatally deficient" as a matter of law where plaintiff did not require its vendors to execute confidentiality agreements and failed to mark any of its drawings as confidential).

14 *See infra*, pp. 6-7.

15 *See* Deed of Trust, p. 28, § 40 (Complaint, Exhibit "B," p. 91)

16 Deed of Trust, p. 28, § 40 (Complaint, Exhibit "B," p. 91) (emphasis added).

The allegations in the Complaint themselves establish that each of the Former Defendants was a potential "participant or investor," and that Plaintiffs authorized them to receive – nay, agreed to assist in transmitting[17] – the alleged confidential information.

### 3. To the extent there are trade secrets, Defendants did not misappropriate them.

Misappropriation is also only satisfied if disclosure of the trade secret is made, without consent, by a person who acquired the knowledge under circumstances giving rise to a duty to maintain its secrecy.[18]

Plaintiffs' allegations regarding disclosure are that *Plaintiff Barton alone* disclosed confidential information to third parties.[19] In fact, in the Factual Background in the Complaint, there is no allegation that Defendants disclosed or misappropriated any of Plaintiffs' trade secrets.[20]

---

[17] *See* Deed of Trust, pp. 27–28, § 40 (Complaint, Exhibit "B," pp. 91-92) ("Borrower shall cooperate with Beneficiary with the same, including providing such information and documents as Beneficiary may reasonably request.").

[18] *See* 18 U.S.C. § 1839(5).

[19] *See, e.g.*, Complaint ¶ 28 ("During the meeting, *Barton disclosed information*…; ¶ 29 ("*Barton revealed information* about this …; [s]pecifically, *Barton disclosed*…") (emphases added); ¶ 39 ("As part of that meeting, *Barton* again shared confidential and proprietary information….") (emphasis added); ¶ 48 ("Glasgow and Nambiar were well placed to create this takeover plan after having acquired Plaintiffs' confidential information *from their meetings with Barton*.") (emphasis added). Some of the alleged trade secret information was in fact *only* known to Barton, and not (at least until he disclosed it himself) to Defendants. *See* Complaint ¶ 29 ("Barton had not previously disclosed this information to Madison or any other person….").

[20] *See* Complaint, ¶¶ 18–67. This is perhaps unsurprising. Though not evidence herein, Plaintiff Timothy Barton testified under oath in the Texas state courts that Plaintiffs did not believe Defendants had used or disseminated any allegedly confidential information. *See* Deposition of Timothy Barton, dated October 28, 2020, p. 203:17–24 ("Q. Okay. You don't allege misappropriation of trade secrets against the lender here. Correct? It's just against HNGH, HN Green Hollow Capital Partners, Nambiar -- A. Yeah, I was going to correct that. I was going to say, Wade, you know, the truth is all that stuff is a requirement of the loan or the lender, so -- Q. So you're not alleging misappropriation of trade secrets against the lender? A. At this time, no, because we don't believe that they took that information and gave it to a third party."); *id.*, p. 204:11–14 ("Q. And at least right now, you don't have evidence that it was disseminated without authority? A. I do not, sir. We're not alleging that."); *id.*, 211:16-19 ("A. Yeah, I see that, but I don't understand why we're going into your disclosing of this information because we are not filing anything against you for disseminating information or using it.").

Where, as here, Plaintiffs, rather than Defendants, disclosed the allegedly confidential information, there is no and can be no misappropriation.

Because Plaintiffs fail to allege the existence of any trade secrets or any misappropriation, the claim under the DTSA fails and should be dismissed.[21]

**B. Plaintiffs provide no reason for the Court to assert supplemental jurisdiction.**

Because the DTSA claim is the sole basis for federal question jurisdiction, and because that claim fails for the reasons previously determined by the Court and as stated herein, it is "unnecessary" for the Court to analyze any of Plaintiffs' state-law claims, and the entire case should be dismissed.[22]

**C. Plaintiffs' state law claims likewise fail to state claims for relief.**[23]

**1. Plaintiffs do not allege a violation of the duty of good faith or fair dealing or a breach of the Deed of Trust.**

Plaintiffs claim that Defendants somehow breached a duty of good faith and fair dealing under the Deed of Trust by complying with its terms – in by (i) entering the Participation Agreement which was specifically authorized by the Deed of Trust, (ii) declaring defaults when the Borrower (undisputedly) defaulted on the loan by failing to pay taxes, by failing to make interest payments, and failing to pay off the Note when it matured by its own terms, and (iii) not

---

[21] *See Gov't Emps. Ins. Co. v. Nealey*, 262 F. Supp. 3d 153, 162, 167 (E.D. Pa. 2017) (granting Rule 12(b)(6) motion to dismiss DTSA claim because the complaint failed to sufficiently allege reasonable measures had been taken to protect trade secret, and citing additional cases).

[22] *See Enochs v. Lampasas Cnty.*, 641 F.3d 155, 161 (5th Cir. 2011) (noting that when federal claims are dismissed at an early stage of the litigation, the district court has a "powerful reason to choose not to continue to exercise jurisdiction.") (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988)); *Brookshire Brothers Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009) (noting the "general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial"); *see also Parker & Parsley Petro. Co. v. Dresser*, 972 F.2d 580, 585 (5th Cir. 1992) ("Our general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed."); *see also* Findings, Conclusions, and Recommendation of the United States Magistrate Judge [Dkt. No. 45], p. 4.

[23] *Cf.,* Order Denying Plaintiff's Application for Temporary Restraining Injunction, entered in the State Trial Court Case on August 20, 2020.

renegotiating when it had no duty to do so.[24] Given Plaintiffs' explicit agreements in the Deed of Trust, and Defendants' adherence to the terms of the Deed of Trust, there is no breach.[25]

**2. Plaintiffs do not meet the standard for pleading any of their fraud counts.**

Federal Rule of Civil Procedure 9 imposes a "heightened" pleading requirement for fraud, requiring that "a party must state with particularity the circumstances constituting fraud or mistake."[26] As stated in the Motion, Plaintiffs do not allege sufficient misrepresentations or reliance, or any basis for a "duty to disclose." In fact, with respect to the Participation Agreement, Plaintiffs waived any rights to notice.[27] The fraud claims should be dismissed.

**3. Plaintiffs have not stated a claim for conspiracy.**

The Complaint's rote recitation of the elements of conspiracy, without more, do not adequately allege a claim.[28] Moreover, the claim fails because it is derivative, and must be dismissed if the Court dismisses the other tort claims.[29]

**4. Plaintiffs do not state a claim under the Texas Uniform Trade Secrets Act ("TUTSA").**

Plaintiffs' state-law trade secret claims fail for the same reasons as do their DTSA claims. Plaintiffs fail to allege either a trade secret (as the information is not trade secret information, they failed to take reasonable measures to protect the information, and have not explained how it has

---

[24] *See* Complaint, ¶¶ 78–82, 84–88.

[25] Deed of Trust, p. 28, § 40 (Complaint, Exhibit "B," p. 91); *see also Dalton v. Educational Testing Serv.*, 87 N.Y.2d 384, 389, 663 N.E.2d 289, 291 (N.Y 1995) (finding "no obligation can be implied that 'would be inconsistent with other terms of the contractual relationship'")[25]

[26] *See* FED. R. CIV. P. 9(b).

[27] *See* Deed of Trust, p. 29, § 41 (Complaint, Exhibit "B," p. 92).

[28] *See* Complaint, ¶¶ 110–115; *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[29] *See Kane v. Yancey*, No. 15-1861, 2016 WL 922243, at *5 (S.D. Tex. Feb. 16, 2016); *American Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 438 (Tex. 1997).

independent economic value) or a misappropriation (because the only allegations are that *Plaintiffs* freely made additional disclosures to third parties, not Defendants).[30]

**5. Plaintiffs fail to state any valid declaratory judgment claim.**

Plaintiffs' claims under the Declaratory Judgment Act each seek a declaration regarding the meaning and effect of the Loan Documents. As the Court interprets the unambiguous Loan Documents as a matter of law, and terms of those Loan Documents explicitly preclude the relief Plaintiffs seek, the declaratory judgment claims should be dismissed.[31]

Even still, each of the claims fail on their own.

Under the Loan Documents, Plaintiffs explicitly agreed that the Lender could sell participation interests "on terms and conditions satisfactory to Beneficiary in its sole and absolute discretion,"[32] because Plaintiffs broadly waived any rights to notice or consent, including as to the sale of a participation interest.[33] The Participation Agreement fully complies with the Loan Documents, and it *does not alter at all*, much less "materially alter[ ]," any of Plaintiffs' obligations (principal, interest, payment, etc.).[34] Likewise, a sale of the loan documents, as contemplated thereunder, is not invalid.

Equally infirm is the Plaintiffs' allegation that they were not in payment default under the loan documents at a time when they did not timely pay *ad valorem* taxes, when they quit making payments, when the Note was accelerated, and when they failed to pay the Note when fully

---

30 *See supra*, pp. 2–6.

31 *See, e.g.*, *Summers v. PennyMac Corp.*, No. 3:12-CV-01235, 2012 WL 5944943, at *8 (N.D. Tex. Nov. 28, 2012) (dismissing a request for declaratory judgment under Rule 12(b)(6) because the declaration sought was "contradicted by the Note [and] Security Instrument").

32 *See* Deed of Trust, p. 28, § 40 (Complaint, Exhibit "B," p. 91).

33 *See* Deed of Trust, p. 29, § 41 (Complaint, Exhibit "B," p. 92).

34 *See* Complaint, ¶ 131.

matured by its own terms.

Plaintiffs' performance under the loan documents has never been objectively impossible;[35] Plaintiffs have always just determined to pay other expenses instead of their obligations under the Loan Documents.

Finally, the claim that the assignment of the Loan Documents is both unworkable (as Plaintiffs have voluntarily dismissed the assignees – necessary parties – from the case with prejudice) and because Plaintiffs agreed that the loan could be freely assigned in the sole discretion of the Lender.[36]

There are no justiciable controversies where, as here, the unambiguous Loan Documents speak for themselves. Each of the declaratory judgment claims should be dismissed.[37]

**CONCLUSION AND PRAYER FOR RELIEF**

WHEREFORE Defendants 2999 Turtle Creek, LLC, Madison Realty Capital, LP, Marc Zegen, and Joshua Zegen respectfully request (i) that the Court dismiss the Complaint in its entirety, (ii) that because the deficiencies may not be cured and Plaintiffs have already amended their Complaint two times, that the dismissal be without leave for any additional amendments, and (iii) grant any and all further relief to which Defendants may be entitled.

---

35 *See Grayson v. Grayson Armature Large Motor Div., Inc.*, 14-09-00748-CV, 2010 WL 2361432, at *5 (Tex. App.—Houston [14th Dist.] June 15, 2010, pet. denied) (mem op.); *see also D2 Excavating, Inc. v. Thompson Thrift Constr., Inc.*, Case No. 19-40745, 2020 WL 5227470, at *3 (5th Cir. Sept. 2, 2020) ("The default rule in Texas, dating back to a case interpreting an 1899 contract to construct a building in San Antonio, is that the party doing the work bears the risk that it will end up being more difficult than anticipated unless the contract shifts that risk to the buyer of the services. This default rule flows from the basic contract principle that 'where one agrees to do, for a fixed sum, a thing possible to be performed, he will not be excused or become entitled to additional compensation, because unforeseen difficulties are encountered.'") (citations omitted).

36 *See* Deed of Trust, § 40, p.28 (Complaint, Exhibit "B," p. 91).

37 *See, e.g.*, *Summers v. PennyMac Corp.*, No. 3:12-CV-01235, 2012 WL 5944943, at *8 (N.D. Tex. Nov. 28, 2012) (dismissing a request for declaratory judgment under Rule 12(b)(6) because the declaration sought was "contradicted by the Note [and] Security Instrument").

Dated: March 5, 2021

Respectfully Submitted,

*/s/ Charles W. Gameros, Jr., P.C.*
Charles W. Gameros, Jr., P.C.
State Bar No. 00796596
Douglas Wade Carvell, P.C.
State Bar No. 00796316

**HOGE & GAMEROS, L.L.P.**
6116 North Central Expressway, Suite 1400
Dallas, Texas 75206
Telephone: (214) 765-6002
Telecopier: (214) 559-4905
Email: BGameros@LegalTexas.com
WCarvell@LegalTexas.com

**ATTORNEYS FOR DEFENDANTS 2999 TURTLE CREEK, LLC, MADISON REALTY CAPITAL, LP, MARC ZEGEN, AND JOSHUA ZEGEN**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served upon the following parties listed below in the matter indicated on March 5, 2021.

**VIA ELECTRONIC SERVICE**
G. Michael Gruber
J. Brian Vanderwoude
Kelsey M. Taylor
**DORSEY & WHITNEY LLP**
300 Crescent Court, Suite 400
Dallas, Texas 75201
Telephone: (214) 981-9900
Facsimile: (214) 981-9901
E-Mail: gruber.mike@dorsey.com
vanderwoude.brian@dorsey.com
taylor.kelsey@dorsey.com

*/s/ Charles W. Gameros, Jr., P.C.*
Charles W. Gameros, Jr., P.C.