IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| 2999TC ACQUISITIONS, LLC f/k/a § <br> MO 2999 TC, LLC, and § <br> TIMOTHY L. BARTON, § <br> § <br> Plaintiffs, § <br> § <br> v. § <br> § <br> 2999 TURTLE CREEK, LLC, § <br> MADISON REALTY CAPITAL, LP, § <br> MARC ZEGEN, AND JOSHUA ZEGEN, § <br> § <br> Defendants. § | | Case No. 3:20-cv-3229-S-BT |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are (1) a "Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)" (ECF No. 52), filed by all remaining Defendants, and (2) a "Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(2)" (ECF No. 54), filed by Defendants Madison Realty Capital, LP (Madison), Marc Zegen, and Joshua Zegen. For the following reasons, the Court should GRANT Defendants' Rule 12(b)(6) motion with respect to Plaintiffs' federal trade-secrets claim, DISMISS that claim against Defendants with prejudice, and DECLINE to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims. Additionally, because the Court lacks jurisdiction over Plaintiffs' remaining claims, it should DENY as moot Madison, Marc Zegen, and Joshua Zegen's Rule 12(b)(2) motion.

1

## Background

This lawsuit arises out of a $32.5 million loan (the "Loan") from Defendant 2999 Turtle Creek, LLC (the "Lender") to Plaintiffs Timothy Barton and 2999TC Acquisitions, LLC for construction of a hotel and residential project on Turtle Creek Boulevard in Dallas, Texas (the "Project"). The Loan was a one-year note, "intended solely for the purchase of the Land, . . . to be repaid by subsequent investment for the entire Project, approximately $365 million in debt and equity— for which Madison held first right of refusal to be the construction lender for an estimated construction loan of approximately $250 million." 2d Am. Compl. 7 ¶ 20 (ECF No. 60). Plaintiffs "leveraged substantially all of their available assets" to contribute $17.5 million in equity at closing, allegedly "in reliance upon representations by Madison, through its principals Josh and Marc Zegen, that Madison would assist in securing investors for the $100 million equity portion of the Project." *Id*. But Plaintiffs allege Madison, through Marc and Joshua Zegen, "and its special purpose entity, Lender," never intended to assist in raising any capital. *Id*. at 7-8 ¶ 22. Rather, Madison intended to sell a portion of the Loan, the "B-Note," to another real-estate developer and assign the remainder to an outside bank. *Id*. at 8 ¶ 22.

On October 24, 2019, "Madison, through Josh . . . and Marc Zegen, expressly offered [former Defendants] Glasgow and Green Hollow the opportunity to purchase the B-Note on the Project," at a meeting in New York City. *Id*. at 8-9 ¶ 24. One week later, Barton received a phone call from Joshua Zegen asking him to

2

attend a meeting in New York with Glasgow, "whom [Joshua and Marc Zegen] represented to be a 'prospective equity investor' for the Project." *Id.* at 9 ¶ 25. Barton agreed and met with Glasgow and Joshua Zegen at Madison's office in New York City on November 4, 2019. *Id.* at 9 ¶ 26. Defendants did not disclose to Barton that they had already offered Glasgow the B-Note, and Barton presented "his pitch for the entire $100 million equity offering." *Id.* at 9-10 ¶ 26.

Before the presentation, Glasgow verbally agreed to keep all information disclosed at the meeting confidential. *Id.* at 10 ¶ 27. During the meeting, Barton disclosed his construction drawings, plans, contractor bids, the contract terms with the International Hotel, balance sheets, pro formas, projected returns, and capital structure (collectively, the "trade secrets"). *Id.* at 10 ¶ 28. Barton also disclosed that "he had leveraged substantially 'everything he owned' in order to purchase the Land and would be using part of the $100 million capital raise to recoup approximately $12 million of the funds he invested." *Id.* at 11 ¶ 29. Plaintiffs allege "[d]ue to the confidential nature of the Trade Secrets, only Barton and one of his employees had access to [them] and, when not in use, electronic data was stored on servers in a locked room, and hard copies were stored in locked cabinets." *Id.* at 11 ¶ 28. Barton had a similar meeting on January 16, 2020, with Nambiar to discuss his potential investment in the Project. *Id.* at 14 ¶ 39. Nambiar also did not disclose that he "was already involved in negotiations with Defendants for the purpose of purchasing the B-Note." *Id.* at 14 ¶ 38. Then on January 24, 2020, the Lender closed on the purchase of the B-Note with Glasgow and Nambiar's

3

company, HNGH, for $7 million. *Id*. at 15-16 ¶ 42-43. And Lender sold the balance of its interest in the Loan to Axos Bank in a Repurchase Loan Agreement. *Id*. at 17 ¶ 46.

Plaintiffs failed to timely pay property taxes on the Project by January 31, 2020, and attempted to arrange a payment plan, but delays resulting from COVID-19 restrictions "quickly halted the negotiation process with Dallas County." *Id*. at 19 ¶ 50. Plaintiffs received a demand letter from HNGH's counsel for the tax payment on April 6, 2020. *Id*. at 20 ¶ 53. Thereafter, Lender attempted to foreclose on the land in August 2020. *Id*. at 24 ¶ 62. Lender again filed a notice of foreclosure against 2999TC Acquisitions, LLC on November 20, 2020, with the sale to occur on January 5, 2021. *Id*. at 25 ¶ 65. Subsequently, Plaintiffs filed an "Emergency Motion for Temporary Restraining Order and Application for a Preliminary Injunction," (ECF No. 17) on December 22, 2020, to prevent the foreclosure sale. The Court held a hearing on the motion, and Plaintiffs settled with Vipin Nambiar, James G. Glasgow, Jr., HN Green Hollow Capital Partners, LLC, and HNGH Turtle Creek, LLC (the "Green Hollow Parties"). On February 19, 2021, Plaintiffs filed their Second Amended Complaint against the remaining Defendants, continuing to assert a claim against them for misappropriation of trade secrets under the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836, *et seq*. 2d Am. Compl. 26-28 ¶¶ 68-76. In addition to the trade-secrets claim, the only federal claim, Plaintiffs assert various state-law claims. However, Plaintiffs plead only federal-question jurisdiction and do not allege there is diversity jurisdiction. *Id*. at 5 ¶¶ 14-15 ("The

4

Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 . . . ."). For that reason, the Court did not require Plaintiffs to remedy their Second Amended Complaint's deficient citizenship allegations. *See id.* at 2-3 ¶¶ 3, 5-6 (failing to properly allege a limited partnership and a limited liability company's citizenship).

Defendants Madison, Marc Zegen, and Joshua Zegen filed a Rule 12(b)(2) motion to dismiss, arguing they are not subject to personal jurisdiction in Texas. And all remaining Defendants filed a Rule 12(b)(6) motion to dismiss, arguing that Plaintiffs fail to state a claim under the DTSA—the sole basis for federal jurisdiction. As a result, Defendants contend, the Court should dismiss the entire case because without the trade-secrets claim, there is no basis for federal jurisdiction. Both motions are fully briefed and ripe for determination.

## Legal Standard

When deciding a 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citations omitted). To survive a Rule 12(b)(6) motion, therefore, a plaintiff's complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In*

5

*re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555).

This pleading standard does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the plaintiff is plausibly entitled to relief. *Id.* at 678 (citing *Twombly*, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, a court may not look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (citation omitted). However, the pleadings, for the purpose of determining a Rule 12(b)(6) motion, include documents attached to the pleadings and to the motion to dismiss so long as they "are referred to in the plaintiff's complaint and are central to [his] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir.

6

2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

## Analysis

Plaintiffs fail to state a DTSA claim. To state a claim under the DTSA, Plaintiffs must allege (1) the existence of a trade secret, (2) misappropriation of that trade secret, and (3) use in interstate commerce. 18 U.S.C. § 1836(b)(1); *Phazr, Inc. v. Ramakrishna*, No. 3:19-cv-01188-X, 2020 WL 5526554, at *3 (N.D. Tex. Sept. 14, 2020) (citing *Marek Brother Sys., Inc. v. Enriquez*, No. 3:19-cv-01082, 2019 WL 3322162, at *3 (N.D. Tex. July 24, 2019)). The parties only dispute the sufficiency of Plaintiffs' allegations concerning the existence-of-a-trade-secret and misappropriation elements. The Court finds Plaintiffs' DTSA claim fails because they do not plausibly plead that misappropriation, as defined by the statute, occurred.

Concerning the existence-of-a-trade-secret element, Defendants argue Plaintiffs' allegations are deficient because they have not alleged they "took reasonable measures to protect their information." Defs.' 12(b)(6) Br. 16 (ECF No. 53). Plaintiffs respond that their Second Amended Complaint "describes the reasonable measures that Plaintiffs took to keep the information secret" and that "a holder of a trade secret 'may divulge his information to a limited extent without destroying its status as a trade secret' in situations where disclosure is 'limited' and 'communicated to further economic interests.'" Pls.' 12(b)(6) Resp. 5 (ECF No. 62).

The Court finds Plaintiffs' allegations concerning the measures they took to keep the information secret are sufficient to survive Defendants' motion.

A "trade secret" is information that (1) the owner has taken reasonable measures to keep secret and (2) derives independent economic value from not being generally known or readily ascertainable through proper means. *See* 18 U.S.C. § 1839(3). Examples of trade secrets include "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes." *Id*. "Information that is public knowledge or generally known cannot be a trade secret, and '[i]f an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished.'" *Richter v. Carnival Corp.*, No. 3:18-cv-2172-N, 2019 WL 5894213, at *7 (N.D. Tex. Nov. 12, 2019) (Godbey, J.) (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984)) (dismissing plaintiff's misappropriation-of-trade-secrets claim because she "fail[ed] to establish that she maintained the secrecy of her alleged trade secret").

In their Second Amended Complaint, Plaintiffs allege that "before, during, and after the pitch, Barton made clear that the information being presented was confidential and not to be used to compete with the Project" and that "[b]efore the presentation, Glasgow and Nambiar verbally agreed to keep confidential all information disclosed at the meeting." 2d Am. Compl. 10 ¶ 27; 15 ¶ 40. Plaintiffs

8

assert that but for Glasgow and Nambiar's representations that they would keep the information confidential, Barton would not have disclosed it. *Id.* at 11 ¶ 29; 15 ¶ 40. And Plaintiffs further allege that "[d]ue to the confidential nature of the Trade Secrets, only Barton and one of his employees had access to the Trade Secrets and, when not in use, electronic data was stored on servers in a locked room, and hard copies were stored in locked cabinets." *Id.* at 11 ¶ 28.

Indeed, "a holder may divulge his information to a limited extent without destroying its status as a trade secret"—particularly where "disclosure to others is made to further the holder's economic interests." *Metallurgical Indus. Inc. v. Fourtek, Inc.*, 790 F.2d 1195, 1200 (5th Cir. 1986). And "[a]n express contractual provision is not required to establish a duty of confidentiality," though "the absence of an agreement restricting disclosure of information is a factor the court may consider." *EEMSO, Inc. v. Compex Techs., Inc.*, No. 3:05-cv-0897-P, 2006 WL 2583174, at *7 (N.D. Tex. Aug. 31, 2006) (citing *Hollomon v. O. Mustad & Sons (USA), Inc.,* 196 F. Supp. 2d 450, 459 (E.D. Tex. 2002)). Thus, assuming without deciding that Plaintiffs' alleged trade secrets constitute the type of information covered by the DTSA, the Court finds Plaintiffs' Second Amended Complaint sufficiently alleges that Plaintiffs took reasonable measures to keep such information secret. *See Broidy Cap. Mgmt. LLC v. Muzin*, No. 19-cv-0150 (DLF), 2020 WL 1536350, at *12 (D.D.C. Mar. 31, 2020) ("And Broidy has likewise shown that he has taken reasonable measures to keep such information secret, such as maintaining the information 'on secured servers that are protected by passwords,

9

firewalls, and antivirus software.'"); *Comput. Scis. Corp. v. Tata Consultancy Servs. Ltd.*, No. 3:19-cv-970-X(BH), 2020 WL 2487057, at *4 n.2 (N.D. Tex. Feb. 7, 2020) (finding plaintiff adequately alleged that purported trade secret was entitled to protection by pleading it took reasonable measures under the circumstances by "using technological and physical security systems, limiting access and use of [the information], marking [the information] as confidential and proprietary, and imposing strict confidentiality, non-disclosure and non-use requirements on those with access to [the information]"), *adopted by* No. 19-cv-00970-X, 2020 WL 1428941 (N.D. Tex. Mar. 24, 2020)).

Regarding the misappropriation element, Defendants argue Plaintiffs "do not allege Defendants misappropriated any trade secret" because Plaintiffs allege "*only . . . Barton* [himself] disclosed [the] confidential information to third parties" and "Plaintiffs expressly authorized Lender [2999 Turtle Creek, LLC] to share the alleged trade secret information with any party who expressed an interest in purchasing a participation interest in the loan." Defs.' 12(b)(6) Br. 14-15. Plaintiffs respond that though Barton disclosed the trade secrets at his meetings with Defendants, Defendants misappropriated Plaintiffs' trade secrets "through numerous 'improper means,' including intentional misrepresentations, fraudulent nondisclosures, and breaches of confidentiality agreements" because they "misrepresented Glasgow's [and Nambiar's] identity and intentions and then sat through Barton's pitch for the entire $100 million equity offering even though they had already been in talks with the Green Hollow Parties for the B-Note sale." Pls.'

10

12(b)(6) Resp. 12. And, Plaintiffs contend, "[a]lthough Section 40 of the Deed of Trust permitted Lender [2999 Turtle Creek, LLC] to disclose certain information to prospective participants, the Complaint and the language of the Deed of Trust make clear that the Green Hollow Parties were never the type of 'participants' contemplated as proper recipients of Plaintiffs' confidential information." *Id.* at 7-8. The Court finds Plaintiffs fail to allege misappropriation occurred.

"Misappropriation" under the DTSA means:

(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(B) disclosure or use of a trade secret of another without express or implied consent by a person who—

   (i) used improper means to acquire knowledge of the trade secret;

   (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—

      (I) derived from or through a person who had used improper means to acquire the trade secret;

      (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or

      (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or

11

>> (iii) before a material change of the position of the person, knew or had reason to know that—
>>
>>> (I) the trade secret was a trade secret; and
>>>
>>> (II) knowledge of the trade secret had been acquired by accident or mistake[.]

18 U.S.C. § 1839(5). And "improper means" include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means," but do not "include reverse engineering, independent derivation, or any other lawful means of acquisition." *Id*. § 1839(6); *accord Comput. Scis. Corp.*, 2020 WL 2487057, at *5.

Here, Defendants' argument that Plaintiffs fail to allege a "misappropriation" because they only plead that Barton himself disclosed the trade secrets is unavailing since the DTSA defines "misappropriation" to include instances where trade secrets are acquired by improper means, irrespective of the discloser's identity. *See* 18 U.S.C. § 1839(5)(A). But, concerning Defendants' second argument that Plaintiffs expressly authorized 2999 Turtle Creek, LLC to share the alleged trade-secret information, the Court finds Plaintiffs have not alleged Defendants misappropriated the trade secrets because, according to the Second Amended Complaint, Defendants acquired the trade secrets by lawful means and disclosed them with Plaintiffs' express permission.

12

"Misappropriation" requires a person to knowingly acquire a trade secret by "improper means" or to disclose a trade secret without express or implied consent. *Id.* § 1839(5). The DTSA defines "improper means" to specifically exclude "any other lawful means of acquisition." *Id.* § 1839(6). Section 40 of the Deed of Trust, attached as Exhibit B to Plaintiffs' Second Amended Complaint, provides:

> Borrower [MO 2999TC, LLC,] acknowledges that Beneficiary [2999 Turtle Creek LLC] may sell and assign participation interests or other types of interests in this Deed of Trust to one or more domestic or foreign banks, insurance companies, pension funds, trusts or other institutional lenders or other persons, parties or investors (including, but not limited to, grantor trusts, owner trusts, special purpose corporations, REMICs, real estate investment trusts or other similar or comparable investment vehicles as may be selected by Beneficiary in its sole and absolute discretion) on terms and conditions satisfactory to Beneficiary in its sole and absolute discretion. Borrower grants to Beneficiary, and shall cause each Guarantor and other person or party associated or connected with this Deed of Trust or the Collateral therefore to grant to Beneficiary the right to distribute on a confidential basis financial and other information concerning Borrower, each such Guarantor and other person or party and the property encumbered by this Deed of Trust and any other pertinent information with respect to this Deed of Trust to any party who has purchased a participation interest in this Deed of Trust who has expressed an interest in purchasing any such interest in this Deed of Trust.
>
> On a confidential basis, Beneficiary may provide to any actual or potential purchaser, transferee, assignee, servicer, participant or investor or any rating agency, all documents and information which Beneficiary now has or may hereafter acquire relating to the Loan, Borrower, Guarantor any other party to the Loan or the Property which shall have been furnished by or on behalf of Borrow, Guarantor or any other party to the Loan, as

13

> Beneficiary in its discretion determines is desirable. Borrower shall cooperate with Beneficiary with the same, including providing such information and documents as Beneficiary may reasonably request.

2d Am. Compl. 91. Thus, the Deed of Trust's terms specifically permit Defendant 2999 Turtle Creek, LLC, with which Plaintiffs allege Defendants Madison, Marc Zegen, and Joshua Zegen are affiliated,[1] *id.* at 2-3 ¶¶ 5-8, "the right to distribute on a confidential basis [Plaintiffs'] financial and other information . . . to any party who has purchased a participation interest in this Deed of Trust" or "who has expressed an interest in purchasing any such interest." *Id.* at 91. Further, 2999 Turtle Creek, LLC "may provide to any actual or potential purchaser, transferee, assignee, servicer, participant or investor or any rating agency, all documents and information which [it] now has or may hereafter acquire relating to the Loan, Borrower, Guarantor any other party to the Loan or the Property . . . , as [it] in its discretion determines is desirable." *Id.* Therefore, because the Deed of Trust permits Defendants to disclose Plaintiffs' alleged trade secrets related to any potential purchaser, participant, or investor, Defendants acquired the trade secrets by lawful, not improper, means as a result of entering into the loan agreement and disclosed them to the Green Hollow Parties with Plaintiffs' permission as set forth in the Deed of Trust.

---

[1] Plaintiffs allege Marc Zegen and Joshua Zegen are principals of Madison and that Madison created 2999 Turtle Creek, LLC, a special-purpose entity, to be the lender for the project. 2d Am. Compl. 7 ¶¶ 19-20.

Nevertheless, Plaintiffs contend section 40 of the Deed of Trust did not permit Defendants to disclose their trade secrets and sell a participation interest to the Green Hollow Parties because "under New York law,[2] the sale of a participation interest to a competitor of the borrower is considered bad faith," "a violation of 'the covenant of good faith and fair dealing automatically implied by law' in the contract," and "does away with the 'fruits' of the contract." Pls.' 12(b)(6) Resp. 9 (citing *Empresas Cablevisión, S.A.B. de C.V. v. JPMorgan Chase Bank, N.A.*, 680 F. Supp. 2d 625, 633 (S.D.N.Y.), *aff'd and remanded*, 381 F. App'x 117, 117-18 (2d Cir. 2010)). But *Empresas Cablevisión* does not stand for the proposition that it is a violation of the covenant of good faith and fair dealing to sell a participation interest to a competitor, as Plaintiffs represent. Instead, it indicates that a lender would breach the covenant of good faith and fair dealing when selling a participation interest to a borrower's competitor over the borrower's express prohibition after the borrower specifically contracted for the ability to veto assignments to avoid competitors obtaining an interest in the loan. *See Empresas Cablevisión*, 680 F. Supp. 2d at 631-32; *see also In re BH Sutton Mezz LLC*, No. AP 16-01187 (SHL), 2016 WL 8352445, at *30 (Bankr. S.D.N.Y. Dec. 1, 2016) (citing *Empresas Cablevisión*, 680 F. Supp. 2d at 632) ("The Debtors cite [*Empresas Cablevisión*] to support the proposition that a contract party can

---

[2] Section 54 of the Deed of Trust provides "[t]he parties have elected to have this Deed of Trust and their rights and obligations hereunder construed and enforced in accordance with the internal laws of the state of New York without application or regard to any conflict of laws or related principals." 2d Am. Compl. 94.

15

violate the implied covenant of good faith and fair dealing even when technically in compliance with the contract. But [that] case[] . . . [is] inapposite because [it] involved an active attempt to make an 'end-run' around [a] clear prohibition[] in a contract."). No such veto provision exists in this case.

In *Empresas Cablevisión*, Cablevisión entered into a loan agreement with JPMorgan to finance the acquisition of Bestel, a company that operated the third largest fiber-optic network in Mexico. *Empresas Cablevisión*, 680 F. Supp. 2d at 626. Cablevisión and JPMorgan's agreement "restrict[ed] JPMorgan's ability to transfer its obligations and rights as lender to another party in the form of an 'assignment,'" specifying that "the loan [could not] be assigned without Cablevisión's prior written consent." *Id.* at 627. But "'participations' in the loan . . . , unlike assignments, [could] be made without the borrower's consent." *Id.* While JPMorgan agreed to assign 90% of the loan to Banco Inbursa, a Mexican bank controlled by Carlos Slim Helú, who also held a controlling interest in Telmex, Cablevisión's competitor, Cablevisión did not consent. *Id.* at 627-28. Therefore, JPMorgan instead granted Inbursa a 90% interest in the form of a "participation." *Id.* at 628-29. As a result, Cablevisión sought to enjoin JPMorgan from transferring the interest to Inbursa, because the "Participation Agreement is for all relevant purposes a disguised but unconsented-to assignment that breaches" the parties' agreement or "at a minimum, . . . so subverts the purposes underling Cablevisión's right to veto assignments of the loan as to breach the [implied] covenant of good faith and fair dealing." *Id.* at 630-31. The court concluded that Cablevisión showed

a likelihood of success on the merits of its claim that JPMorgan breached the covenant of good faith and fair dealing under the loan agreement because JPMorgan "gave Inbursa much of the substance of the forbidden assignment and purposefully undercut what JPMorgan knew the assignment veto was designed to prevent." *Id.* at 632. Thus, Cablevisión was entitled to an injunction because "[w]hen a party has expressly negotiated for and received the right to veto certain transactions with which it disagreed before those transactions commenced, . . . the only way to render [such a] provision truly viable is to enforce it." *Id.* at 633 (internal quotation marks omitted) (quoting *Wisdom Imp. Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 114 (2d Cir. 2003)) (citing *CDC Grp. PLC v. Cogentrix Energy, Inc.*, 354 F. Supp. 2d 387, 393-94 (S.D.N.Y. 2005)).

Here, Plaintiffs negotiated for no such provision. Rather, section 40 of the Deed of Trust permits 2999 Turtle Creek, LLC to "assign participation interests or other types of interests in [the] Deed of Trust . . . on terms and conditions satisfactory to [it] in its sole and absolute discretion." 2d Am. Compl. 91. And "courts have . . . held that a party does not breach the covenant of good faith and fair dealing when, as is the case here, it was 'acting in [its] own self-interest consistent with [its] rights under [the] contract . . . .'" *In re BH Sutton Mezz LLC*, 2016 WL 8352445, at *30 (citing *Ray Legal Consulting Grp. v. DiJoseph*, 37 F. Supp. 3d 704, 726 (S.D.N.Y. 2014) ("Defendants did not violate the implied covenant of good faith and fair dealing by acting in [their] own self-interest consistent with [their] rights under a contract."); *Suthers v. Amgen Inc.*, 441 F.

17

Supp. 2d 478, 485 (S.D.N.Y. 2006) ("Plaintiffs have no support for the broad proposition that an entity violates the implied covenant of good faith and fair dealing by acting in its own self-interest consistent with its rights under a contract. Indeed, courts have refused attempts to impose liability on a party that engaged in conduct permitted by a contract, even when such conduct is allegedly unreasonable.")). Plaintiffs, therefore, fail to state a misappropriation-of-trade-secrets claim because, on the facts as alleged, Defendants acquired Plaintiffs' trade secrets by lawful means and disclosed them to the Green Hollow Parties with Plaintiffs' permission as set forth in the Deed of Trust. Though Plaintiffs do not now request leave to amend their Second Amended Complaint, they have already amended their complaint twice, demonstrating further amendment would be futile. *See Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 379 (5th Cir. 2014) (citations omitted) ("Because two prior amendments were granted and allowing a third would have been futile, we conclude that the district court did not abuse its discretion by denying Marucci's motion to amend."); *Fin. Acquisition Partners LP v. Blackwell,* 440 F.3d 278, 291 (5th Cir. 2006) ("Plaintiffs had three attempts to produce a sufficient complaint. The [district] court dismissed the complaint and denied leave to amend only after the third insufficient attempt."); *ABC Arbitrage Plaintiffs Grp. v. Tchuruk,* 291 F.3d 336, 362 (5th Cir. 2002) (holding that it was not an abuse of discretion to deny plaintiffs a third opportunity to sufficiently state a claim). Accordingly, the District Court should dismiss Plaintiffs' misappropriation-of-trade-secrets claim with prejudice.

Because the Court should dismiss Plaintiffs' only federal claim, it should decline to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims. According to the Fifth Circuit, "[t]he general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all the federal-law claims are eliminated before trial . . . ." *Brookshire Brothers Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009) (citing *Batiste v. Island Recs. Inc.,* 179 F.3d 217, 227 (5th Cir. 1999)); *see also Parker & Parsley Petroleum Co. v. Dresser*, 972 F.2d 580, 585 (5th Cir. 1992) (citing *Wong v. Stripling,* 881 F.2d 200, 204 (5th Cir. 1989)) ("Our general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed."). Further, when the federal claims are dismissed at an early stage of the litigation, the district court has a "powerful reason to choose not to continue to exercise jurisdiction." *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 161 (5th Cir. 2011) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988)). Accordingly, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims.

## Recommendation

For the foregoing reasons, the Court should GRANT Defendants' Rule 12(b)(6) motion (ECF No. 52) with respect to Plaintiffs' federal trade-secrets claim, DISMISS that claim against Defendants with prejudice, and DECLINE to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims. Additionally, because the Court lacks jurisdiction over Plaintiffs' remaining claims, it should

DENY as moot Defendant Madison, Marc Zegen, and Joshua Zegen's Rule 12(b)(2) motion (ECF No. 54).

**SO RECOMMENDED.**

July 6, 2021.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk is directed to serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 14 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation will bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the findings, conclusions, and recommendation within 14 days after being served with a copy will bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).